UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: APR 1 0 2018

United States of America,

–v–

Robert Pizarro & Juan Rivera,

Defendants.

17-CR-151 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

In advance of trial, Defendants Robert Pizarro and Juan Rivera move the Court for severance. As originally filed, the Defendants' motion sought severance of one count of the five-count Indictment against them. On April 4, 2018, the Grand Jury returned a Superseding Indictment against the Defendants, charging them with nine counts. In response, the Court issued an Order indicating its assumption that Defendants "wish to apply their severance arguments to Counts 7, 8, and 9 of the Superseding Indictment" and stating that "the Court intends to treat the briefing on the motion" as if it had been made with respect to the Superseding Indictment. Dkt. No. 58. No objections were made to this approach and the Court now resolves the severance motion.

Additionally, Defendants move the Court to suppress certain evidence. Both Defendants move to suppress cell site location information obtained as a result of orders issued pursuant to the Stored Communications Act, and Pizarro moves to suppress evidence uncovered during a search of a 2007 GMC Yukon pursuant to a warrant.

The Court orally denied the motions at a conference on April 9, 2018. This opinion explains the reasoning of that conclusion.

1

## I. Background

On March 6, 2017, the Grand Jury returned a five-count Indictment against Robert Pizarro and Juan Rivera. Dkt. No. 2. On April 4, 2018, the Grand Jury returned a nine-count Superseding Indictment against the Defendants. Dkt. No. 57.

Counts One through Six of the Superseding Indictment are charged against both Defendants, and center on events from 2016. Count One charges the Defendants with conspiracy to commit kidnapping, specifying that the overt act was the September 20, 2016 kidnapping of Victim-1 (identified elsewhere as Robert Bishun) from an auto body shop in the Bronx ("the Shop"), and his subsequent murder by strangulation using a plastic zip-tie, in violation of 18 U.S.C. §§ 1201(a)(1) and (c). Count Two charges the above events as the substantive offense of kidnapping resulting in death, in violation of 18 U.S.C. §§ 1201(a)(1) and 2. Count Three charges both Defendants with murder of a witness to prevent reporting to law enforcement, alleging that Pizarro and Rivera killed Bishun after attempting to rob him at the Shop with the intent to prevent his communication to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a Federal offense, in violation of 18 U.S.C. §§ 1512(a)(1)(C) and 2. Counts Four and Five are Hobbs Act Robbery charges, with Count Four alleging a conspiracy stemming from the Defendants' agreement with each other and others to rob Bishun at the Shop, and Count Five presenting the substantive charge of attempted robbery, both in violation of 18 U.S.C. § 1951. Finally, Count Six charges Defendants with possession of a firearm in furtherance of the alleged 2016 attempted robbery, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), and 2.

Counts Seven through Nine are charged only against Pizarro, and focus on the alleged robbery of the same victim, Bishun, at the same shop in January of 2015. Count Seven charges

2

Pizarro with conspiracy to commit Hobbs Act Robbery, specifically, of having agreed with another person to rob Bishun at the Shop, in violation of 18 U.S.C. § 1951. Count Eight is the substantive version of the same. Count Nine charges Pizarro with possession of a firearm in furtherance of the alleged 2015 robbery.

On September 26, 2016, the Government sought and obtained an order under the Stored Communications Act ("SCA") requiring Sprint PCS to provide historical cell site location information reflecting the cell towers and sectors utilized in routing any phone, text, or data communication to and from the cellphone assigned a certain phone number, allegedly Pizarro's cellphone, from September 1, 2016 through September 26, 2016. On October 26, 2016, the Government sought and obtained an order requiring AT&T, Sprint/Nextel, T-Mobile, Metro PCS, U.S. Cellular, and Verizon Wireless to provide historical cell tower log information, including records identifying any wireless telephone call utilizing the cell tower servicing calls at particular locations and times. In November 2016, the Government sought and obtained two more orders requiring certain service providers to provide historical cell site location information for other phone numbers and for broader periods of time. Finally, in February 2017, the Government sought and obtained an order pursuant to the SCA requiring certain providers to provide historical cell tower log information, including records identifying any wireless telephone call utilizing the cell towers servicing calls during two specific 10 minute periods near two specific locations.

On March 15, 2017, Magistrate Judge Barbara Moses signed a warrant permitting the search of a particular 2007 GMC Yukon purportedly utilized by Pizarro on September 20, 2016. The subsequent search of the vehicle recovered items including a winter hat and mask, gloves, GPS device, vehicle registration documents, and a loaded firearm.

3

The Government contends that it will establish at trial – through witness testimony, physical evidence (including video, DNA, and fingerprint evidence), and documentary evidence – that Pizarro, with the help of others, first robbed Bishun on January 24, 2015, while Bishun was inside Bishun's auto body shop ("the Shop"); that Pizarro, Rivera, and others later strategically staked out the Shop using the GMC Yukon on multiple occasions in 2016 prior to September 20; and that on September 20, 2016, the Defendants drove to the Shop in the GMC Yukon, entered the Shop, restrained Bishun and two other victims with plastic cable ties (also known as "zip ties"), and then kidnapped Bishun from the Shop and murdered him by strangling him with cable ties, leaving him in the backseat of his own car.

The Court addresses each motion in turn.

## II. Motion to Sever

As described above, Defendants move to sever Counts Seven, Eight, and Nine of the Superseding Indictment, which are the charges brought only against Robert Pizarro and which stem from the alleged 2015 robbery. Because Defendants' reply brief makes clear that both Pizarro and Rivera move for severance of these counts, *see* Defendants' Reply ("Reply"), Dkt. No. 52, at 1, the Court separately analyzes the motion as to each Defendant.

### A. Pizarro's Motion to Sever Fails under Rule 8

Federal Rule of Criminal Procedure 8 governs joinder of offenses and defendants. Subsection (a) states that the "indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged…are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Subsection (b) allows the indictment to charge multiple

defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b).

Defendants argue that "[i]n multi-defendant cases, challenges to joinder of offenses and joinder of defendants are uniformly assessed under Rule 8(b) rather than 8(a)." Memorandum in Support ("Br."), Dkt. No. 50, at 4 (citing *United States v. Turoff*, 853 F.2d 1037, 1043 (2d Cir. 1988)); *accord United States v. Attanasio*, 870 F.2d 809, 814 (2d Cir. 1989). However, as the Government notes in opposition, this broad conception of the scope of Rule 8(b) is not clearly established in the law. *See* The Government's Response to the Defendants' Omnibus Motions ("Opp."), Dkt. No. 51, at 5, n.4. While not settling the question, the Second Circuit has signaled that "Rule 8(a) standards apply to a defendant in a multi-defendant trial who seeks severance of counts in which he is the only defendant charged." *United States v. Biaggi*, 909 F.2d 662, 676 (2d Cir. 1990).

Analyzing Pizarro's motion under Rule 8(a) hews closer to the distinction created by the Federal Rules. As Judge Motley stated in *Biaggi*, Rule 8(a) is intended to govern joinder of offenses, and the mere existence of a co-defendant charged in other counts should not require that all motions to sever an offense then proceed under subsection (b). *See United States v. Biaggi*, 705 F. Supp. 852, 854-55 (S.D.N.Y. 1988), *aff'd*, 909 F.2d 662; *accord United States v. Clemente*, 494 F. Supp. 1310 (S.D.N.Y. 1980), *aff'd on other grounds sub nom. Fiumara v. United States*, 727 F.2d 209 (2d Cir. 1984). In contrast to the Court's treatment of Rivera's motion below, if the movant is the only defendant named in the count he or she seeks to sever, as is the case with Pizarro, Rule 8(a) provides the governing standard.

Under Rule 8(a), the Court considers whether Counts Seven, Eight, and Nine – the subject of the motion to sever – are "of the same or similar character" as the other counts. Fed. R.

Crim. P. 8(a). Rule 8(a) does not require "too precise an identity between the character of the offenses." *United States v. Werner*, 620 F.2d 922, 929 (2d Cir. 1980). In fact, for the purposes of Rule 8(a)'s liberal standard, "similar charges include those that are somewhat alike, or those having a general likeness to each other." *United States v. Rivera*, 546 F.3d 245, 253 (2d Cir. 2008) (internal quotation marks, citation, and alterations omitted). Counts may be joined when they have "sufficient logical connection" to one another. *United States v. Ruiz*, 894 F.2d 501, 505 (2d Cir. 1990). The Superseding Indictment here meets this standard.

The 2015 Robbery and 2016 Robbery, as alleged by the Government, share many similar characteristics. In both incidents, two masked and armed men, one of whom was allegedly Pizarro, targeted the same location (the Shop), and robbed or attempted to rob the same victim (Bishun), restraining those inside of the Shop with plastic cable ties, and either attempting to remove or actually removing Bishun from the premises. These many common threads, as alleged by the Government, establish the "similar character" of Counts Seven, Eight, and Nine to the other counts charged in the Indictment.

Defendants, perhaps because they assume the joinder will be analyzed under Rule 8(b), offer no argument or case law supporting the contention that these common facts are insufficient to establish a proper joinder of offenses under Rule 8(a). In any event, under the Rule 8(a) standard, joinder is proper.

## B. Rivera's Motion to Sever Fails under Rule 8

Unlike Pizarro's motion to sever, Rivera's motion is properly considered under the standard of Rule 8(b). Recall the broad principle discussed above and stated by the Second Circuit in cases such as *Turoff* and *Attanasio* – that in a multi-defendant, multi-count case, Rule 8(b) applies. That principle maintains its force if the movant is *not* charged in the counts subject

6

to the joinder analysis. The logic underpinning the limitation placed on this broad principle when the movant is the only named defendant in that count, as described by Judge Motley in *Biaggi* and recounted above, does not clearly apply to the situation in which the movant is a *co-defendant* charged in other counts, but not the subject counts. The Government presents no support in the law for deviating from the default principle of applying Rule 8(b) in a situation in which the movant is not charged in the subject counts, and the Court's own research reveals none as well. Accordingly, the Court applies Rule 8(b) and its attendant standards to Rivera's motion.

Under Rule 8(b), joinder is only appropriate if two conspiracies constitute the "same series of acts or transactions." Fed. R. Crim. P. 8(b). The Second Circuit has interpreted this language to mean that "joinder is proper where two or more persons' criminal acts are 'unified by some substantial identity of facts or participants,' or 'arise out of a common plan or scheme.'" *United States v. Cervone*, 907 F.2d 332, 341 (2d Cir. 1990) (quoting *Attanasio*, 870 F.2d at 815). "Whether the joinder of defendants in two conspiracies is warranted must be determined on a case-by-case basis." *United States v. Rittweger*, 524 F.3d 171, 178 (2d Cir. 2008) (Sotomayor, J.). "Unless the standards set out in Rule 8(b) are met, a motion for severance should be granted even absent a showing of prejudice." *United States v. Feyrer*, 333 F.3d 110, 113 (2d Cir. 2003) (citation omitted). The Second Circuit applies "a 'commonsense rule' to decide whether, in light of the factual overlap among charges, joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice to either or both of the defendants resulting from the joinder." *United States v. Shellef*, 507 F.3d 82, 98 (citing *Turoff*, 853 F.2d at 1044).

Importantly, under Rule 8(b) the Court must look only to the four corners of the indictment in determining whether joinder is proper. While there are cases in the Rule 8(a)

context that suggest the Court can rely on the Government's pre-trial representations as well, *see, e.g.*, *United States v. Ajlouny*, 629 F.2d 830, 842 (2d Cir. 1980); *United States v. Pena*, 932 F. Supp. 2d 464, 466 (S.D.N.Y. 2013); *United States v. Ezeobi*, No. 10-CR-669 (DLC), 2011 WL 3625662, at *1 (S.D.N.Y. Aug. 17, 2011), that reasoning has not been extended to Rule 8(b). In contrast, the Second Circuit has cautioned that "the plain language of Rule 8(b) does not appear to allow for consideration of pre-trial representations not contained in the indictment, just as the language of the rule does not allow for the consideration of evidence at trial." *Rittweger*, 524 F.3d at 178, n.3; *see also United States v. Bonventre*, 646 F. App'x 73, 80 (2d Cir. 2016). Following this admonition, many district courts in this Circuit have limited joinder analysis under Rule 8(b) to the contents of the indictment. *See, e.g.*, *United States v. Tuzman*, No. 15-CR-536 (PGG), 2017 WL 4785459, at *5 (S.D.N.Y. Oct. 19, 2017); *United States v. Parrilla*, No. 13-CR-360 (AJN), 2014 WL 1621487, at *12 (S.D.N.Y. Apr. 22, 2014); *United States v. Yaron*, No. 10-CR-383 (GBD), 2011 WL 3279054, at *7 (S.D.N.Y. July 28, 2011); *United States v. Ohle*, 678 F. Supp. 2d 215, 228 (S.D.N.Y. 2010) (Sand, J.); *United States v. Rajaratnam*, 753 F. Supp. 2d 299, 306 (S.D.N.Y. 2010) (Holwell, J.); *United States v. Stein*, No. 05-CR-888 (LAK), 2008 WL 2971586, at *1 (S.D.N.Y. July 31, 2008). The Court follows that authority here.

Applying this standard, the Court concludes that the Superseding Indictment demonstrates "a common scheme or plan sufficient to satisfy [Rule 8(b).]" *Id.* at 9. The counts focusing on the alleged 2015 incident all include the information that Pizarro robbed Victim-1 at the Shop (or agreed to do so, or possessed a firearm in furtherance of such an act). The counts focusing on the alleged 2016 incident also include Pizarro as a defendant, name Victim-1 as the object and victim of the 2016 attempted robbery and murder, and place the location at "the Shop," the same auto body shop in the Bronx. This factual overlap in the allegations that are

contained within the Superseding Indictment is sufficient to establish that the acts are "unified by some substantial identity of facts or participants." *Attanasio*, 870 F.2d at 815.

While it is true that "two separate transactions do not constitute a series within the meaning of Rule 8(b) merely because they are of a similar character or involve one or more common participants," *United States v. Lech*, 161 F.R.D. 255, 256 (S.D.N.Y. 1995) (Sotomayor, J.) (internal quotation marks and citation omitted), the Second Circuit has stated that finding a "substantial identity of facts or participants" may be resolved by inquiring as to whether "a reasonable person would easily recognize the common factual elements that permit joinder...." *Turoff*, 853 F.2d at 1044. Here, a reasonable person analyzing the Superseding Indictment would notice that the two incidents occurred only 18 months apart and involve an overlapping alleged perpetrator, an overlapping victim, and an overlapping nature and location of the crime, and would understand why these would be tried together. *Cf. Yaron*, 2011 WL 3279054, at *7-9 (severing two conspiracy counts alleging fraud in contracting because the only common elements were the defendants who had awarded the contracts and their desire for kickbacks); *United States v. Greenfield*, No. 01-CR-401 (AGS), 2001 WL 1230538, at *3 (S.D.N.Y. Oct. 16, 2001) (severing defendants where the only connection between counts of insurance fraud was a common desire to obtain insurance proceeds through fraud but where there was no unifying purpose).

Finally, although not determinative, even if the Court were to consider prejudice under its Rule 8 analysis, as detailed below with respect to Rule 14, the prejudice here would be insufficient to counsel in favor of severance.

For the foregoing reasons, Defendant Rivera's motion pursuant to Rule 8(b) to sever Counts Seven, Eight, and Nine is DENIED.

## C. Defendants' Motion to Sever Also Fails under Rule 14

Alternatively, Defendants argue that the counts stemming from the 2015 robbery should be severed under Rule 14(a). Federal Rule of Criminal Procedure 14(a) states that "[i]f the joinder of offenses or defendants in an indictment…appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). Under Rule 14, severance is warranted if there is "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). To prevail, the movant must show "not simply some prejudice but *substantial* prejudice." *United States v. Sampson*, 385 F.3d 183, 190 (2d Cir. 2004) (internal quotation marks and citation omitted; emphasis in original). The Second Circuit has noted that "[t]he principles that guide the district court's consideration of a motion for severance usually counsel denial." *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993). Even if the defendant were to establish a serious risk of prejudice, "less drastic measures [than severance], such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539 (citation omitted).

The crux of Defendants' argument under Rule 14 is that evidence related to the 2015 crimes would be inadmissible at trial on the 2016 crimes under Federal Rules of Evidence 401, 403, and 404(b). Defendants make three arguments. First, Defendants argue that introduction of the 2015 evidence would be inadmissible "propensity evidence" under Rule 404(b), implying that if Pizarro robbed Bishun in 2015, he is more likely to have done the same in 2016. Br. at 8-9; Reply at 4-5. Second, Defendants argue that even if the Government were able to establish

10

that the evidence would be introduced for a permissible purpose, it should still be excluded under Rule 403 because its relevance would be outweighed by prejudice. Reply at 5-6. Third, Defendants contend that a joint trial poses the danger of a conviction on the 2016 robbery based on cumulative evidence from the 2015 allegation, posing an unfair prejudice. Reply at 7. These arguments, considered separately and taken together, are insufficient to require severance under Rule 14(a).

### 1. Relevance

That joinder of the claims here is permissible is easily seen by considering whether, if the Court were to sever the 2015 crimes from the 2016 crimes, evidence of the 2015 crimes would still be admissible at a trial on the 2016 crimes. To begin with, the Court concludes that it may be relevant as direct evidence or permissible under Rule 404(b).

### a. Direct Evidence

First, evidence of the 2015 crimes may be admissible as direct evidence of the crimes charged. The Second Circuit has held that "other acts" evidence is admissible as direct evidence, and not considered under Rule 404(b) if it (i) "arose out of the same transaction or series of transactions as the charged offense," (ii) "is inextricably intertwined with the evidence regarding the charged offense," or (iii) "is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (citation omitted); *see also United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994) (noting that evidence of other "bad acts" may be admitted "to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense"). The evidence that Pizarro and a co-conspirator were allegedly able to obtain nearly $15,000 from an earlier robbery of Bishun at the Shop would be directly relevant to establish the Defendants' familiarity with Bishun and the

11

Shop, and provide background for why they believed robbing him again would be lucrative. Accordingly, it appears evidence relating to the 2015 events could be admitted as direct evidence that is necessary to complete the story of the 2016 crimes.

### b. Rule 404(b)

Alternatively, the evidence would be admissible under Rule 404(b) of the Federal Rules of Evidence. Evidence offered for a purpose other than to prove the defendant's bad character or criminal propensity, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," is admissible as long as it also meets the standards set forth in Rule 401 and 403. *See* Fed. R. Evid. 404(b); *United States v. Mickens*, 926 F.2d 1323, 1328-29 (2d Cir. 1991). The Second Circuit takes "an inclusionary approach," allowing evidence "for any purpose other than to show a defendant's criminal propensity." *United States v. Lombardozzi*, 491 F.3d 61, 78 (2d Cir. 2007) (internal quotation marks and citations omitted).

Evidence of the 2015 acts would be admissible in a trial on the 2016 acts for a number of non-propensity "proper purposes." First, as described above, evidence related to Pizarro's involvement in the 2015 crimes is likely relevant to the Defendants' motive or intent under Rule 404(b)(2) because it helps explain why Pizarro allegedly returned in 2016 to attempt a robbery of the same person and location. The evidence is also relevant to how Rivera, working with Pizarro, would have become familiar with the prospect of a large windfall from robbing the Shop, and would be admissible as to his motive as well.

Moreover, the evidence may also be admissible under other proper purposes listed in 404(b)(2). For example, the 2015 robbery allegedly demonstrates Pizarro's familiarity with the Shop and Bishun and how best to plan or prepare to execute another robbery, or that, relatedly, it

shows that Pizarro and Rivera recognized the opportunity they had to commit the 2016 crimes because of Pizarro's past success in gathering the necessary tools and forming the necessary plan to successfully rob Bishun. Finally, the evidence may also be admissible as evidence of identity, as the similarities between the *modus operandi* of the two alleged crimes – staking out the same location and target, using the same means of restraint and concealing of identity, using the same number of people, and using handguns – could provide evidence that the crimes were committed by the same person. *Cf. United States v. Speed*, 272 F. App'x 88, 92 (2d Cir. 2008) (not abuse of discretion to admit evidence showing older robbery conviction as relevant to defendant's identity where robberies "shared certain distinctive methods…including using a ski mask, wearing dark clothes and gloves, and planning to steal the victim's vehicle for the getaway").

For the foregoing reasons, evidence proffered in support of the alleged 2015 crimes would be highly relevant to the jury's task by generally completing the story for the alleged 2016 crimes or by elucidating motive, intent, preparation, opportunity, familiarity or identity.

### 2. Prejudice

Given the highly probative nature of the evidence – for both direct and permissible 404(b) purposes – the Court must consider whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403.

The first proffered grounds for prejudice is simply that it would be inadmissible propensity evidence under Rule 404(b). Br. at 8-9. For the reasons outlined above, it would not. Defendants also assert that a joint trial poses the danger of conviction on the 2016 crimes based on cumulative evidence. Reply at 7. Traditionally, the unfair prejudice contemplated by Rule 403 focuses on whether the evidence of uncharged acts involves criminal conduct that is *more* inflammatory than the crimes charged in the indictment. *See United States v. Baez*, 349 F.3d 90,

94 (2d Cir. 2003) (citing *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999)). By contrast, here the 2015 evidence is far less inflammatory than the 2016 charge of kidnapping and murder by strangulation.

Moreover, and crucially, limiting instructions to the jury would be sufficient to mitigate any risk of spillover prejudice to Rivera, or the risk to Pizarro that the jury would interpret the 2015 evidence as relevant to his propensity to commit the 2016 crimes or use it as cumulative evidence to fill in any gaps missing in the Government's evidence on the 2016 crimes. The Second Circuit has recognized that severance is designed to address the risk that the jury will view the evidence cumulatively, but has commented that "when the accused's conduct on several separate occasions can properly be examined in detail, the objection disappears, and the only consideration is whether the trial as a whole may not become too confused for the jury." *Werner*, 620 F.2d at 929 (quotation omitted). Given that the two alleged robberies, although they involve common factual elements sufficient for joinder, are 18 months apart, that one results in Bishun's death but not the other, and that Rivera is only alleged to have been involved in one, there is no reason to doubt that the jury will be able to keep the two related events compartmentalized in their heads and appropriately consider the evidence presented for each without improperly considering the evidence cumulatively. *See, e.g.*, *Ezeobi*, 2011 WL 3625662, at *2 ("The Court may presume that the jury is capable of understanding and following limiting instructions provided during the course of and at the conclusion of the trial with regard to the manner in which it may use evidence."); *United States v. Santiago*, 174 F. Supp. 2d 16, 23 (S.D.N.Y. 2001) ("[L]imiting instructions to the jury have emerged as the preferred device for curing any prejudicial spillover that may result from a multi-defendant, multi-count trial."). The jury will be instructed to consider the evidence only for a permissible purpose, and to consider each count

14

and each defendant separately. The parties may submit with their requests to charge any proposed limiting instructions to be given during the course of the trial or at the final charge.

In sum, severance under Rule 14 presents the "extremely difficult burden" of showing a defendant would be so prejudiced by joinder that he would be denied a fair trial. *United States v. Casamento*, 887 F.2d 1141, 1149-50 (2d Cir. 1989) (citation omitted). A defendant must show "not simply some prejudice but *substantial* prejudice." *Sampson*, 385 F.3d at 190 (citation omitted; emphasis in original). Given that if the charges were severed, the evidence of the 2015 crimes would almost certainly be admissible under Rules 401, 403, and 404(b), and that any risk of prejudice can be effectively mitigated by an appropriate limiting instruction, the Court DENIES Defendants' motions for severance under Rule 14.

## III. Motion to Suppress Cell Site Location Information Is Denied

Defendants move to suppress cell site location information collected pursuant to orders sought and issued under the SCA for a total of six telephone numbers. Defendants argue that the standard under the SCA – that there were "reasonable grounds to believe" that the information requested is "relevant and material to an ongoing investigation" – does not satisfy the Fourth Amendment's probable cause requirement, and that the SCA is unconstitutional as a result. Br. at 9-13. Alternatively, Defendants argue that even if the SCA were constitutional, the facts contained in the applications for the SCA orders did not even meet the lower SCA standard. *Id.* at 13-14. Albeit with a different set of facts, the constitutional question Defendants present is currently pending before the Supreme Court in *Carpenter v. United States*, Dkt. No. 16-402.

The Court need not reach the constitutional question here because Defendants have not established their standing to challenge evidence obtained pursuant to the SCA orders. "When considering a claimed violation of Fourth Amendment rights, the burden is on the defendant to

establish that his own rights under the Fourth Amendment were violated." *United States v. Paulino*, 850 F.2d 93, 96 (2d Cir. 1988). To satisfy this burden, a defendant must submit an "affidavit from someone with personal knowledge demonstrating sufficient facts to show that he had a legally cognizable privacy interest in the searched premises at the time of the search." *United States v. Ruggiero*, 824 F. Supp. 379, 391 (S.D.N.Y. 1993), *aff'd*, 44 F.3d 1102 (2d Cir. 1995) (citing *Rawlings v. Kentucky*, 448 U.S. 98 (1980)). The anticipated argument by the Government at trial that some of the phone numbers belonged to the Defendants does not lend them standing. *See, e.g.*, *United States v. Watson*, 404 F.3d 163, 166 (2d Cir. 2005).

Defendants have not submitted an affidavit demonstrating their privacy interest in the subject numbers. Courts addressing this issue in the context of historical cellular location information have held that standing must be established by the defendants. *See United States v. Dore*, 586 F. App'x 42, 46 (2d Cir. 2014); *United States v. Walker*, No. 16-CR-567 (JSR), Mem. Op. at 3-4 (S.D.N.Y. Mar. 8, 2017) (attached as Opp., Ex. C). Defendants may recognize their lack of standing, as it appears they abandoned their argument regarding the cell site location information by not addressing the argument in their reply. *See, e.g.*, *AIG Glob. Secs. Lending Corp. v. Bank of Am. Secs. LLC*, 646 F. Supp. 2d 385, 411 (S.D.N.Y. 2009) (deeming argument abandoned by failing to defend in reply brief); *Fu Da Int'l Ltd. v. Kohl's Dept. Stores, Inc.*, No. 08-CV-5164 (HB), 2009 WL 151727, at *3 (S.D.N.Y. Jan. 21, 2009) (same). In any event, Defendants present the Court with no reason to believe they have standing to assert their challenge.

Defendants argue in the alternative that the application for the SCA orders fails to meet the lower "specific and articulable" standard of the SCA. *See* 18 U.S.C. § 2703(d). Even assuming *arguendo* that the Government's applications in support of the SCA orders did not

meet this standard, the SCA does not allow for suppression as a judicial remedy or sanction for nonconstitutional violations of the Act. *See* 18 U.S.C. § 2708; *accord United States v. Carpenter*, 819 F.3d 880, 890 (6th Cir. 2016) ("[S]uppression of evidence is not among the remedies available under the Stored Communications Act."), *cert. granted*, 137 S. Ct. 2211 (2017).

Accordingly, because the Defendants fail to establish their standing to challenge the orders on constitutional grounds and cannot seek suppression for a statutory violation, the motion to suppress is DENIED.

## IV. Pizarro's Motion to Suppress Contents of 2007 GMC Yukon Is Denied

Finally, Pizarro moves to suppress evidence discovered during a search of a 2007 GMC Yukon, performed pursuant to a warrant issued by Magistrate Judge Barbara Moses. Pizarro argues that the warrant was not supported by probable cause due to staleness and because the Affidavit contained false statements and material omissions. Br. at 16-21.

### A. Factual Background

On March 15, 2017, Special Agent Joseph Mercurio of the Drug Enforcement Administration submitted the Affidavit in support of an application for a warrant to search the GMC Yukon. Opp., Ex. D. That same day, Judge Moses issued a search warrant for the vehicle.

The Affidavit details Pizarro's alleged involvement in both the 2015 robbery and 2016 attempted robbery/murder. With respect to the 2015 robbery, the Affidavit describes how two men entered the Shop, brandished a gun, bound Bishun with zip ties, and stole approximately $15,000. The Affidavit also mentions that a fingerprint matched to Pizarro was found on a Home Depot bag containing zip ties found at the Shop after the robbery, and how surveillance footage from a local Home Depot from in or about January 2015 showed an individual resembling Pizarro purchasing zip ties prior to the robbery. *Id.* at 4. As for the 2016 attempted

robbery and murder, the Affidavit describes how two masked men entered the Shop, brandished a gun, bound Bishun and others with zip ties, and demanded money. *Id.* The Affidavit continues to describe how the masked robbers arrived at the Shop in a black SUV that resembled the GMC Yukon, and attests that surveillance video, a mobile license plate reader, and cell site data, considered together, established probable cause to believe both that Pizarro used the GMC Yukon to conduct surveillance on the Shop on a number of days in the month prior to the 2016 attempted robbery/murder and that Pizarro was present at the incident. *Id.* at 5-7.

Additionally, the Affidavit provided relevant information about Pizarro's use of the GMC Yukon over time. First, the Affidavit described how cell site location data for Pizarro in the month leading up to the 2016 event indicated his presence in the vicinity of the Shop on many of the same days the GMC Yukon was parked in the area. Second, it described how the vehicle was also observed parked in the vicinity of Pizarro's residence on a number of occasions between September 18, 2016 (when an NYPD summons was issued to the vehicle) and March 13, 2017 (when Special Agent Mercurio observed Pizarro driving the GMC Yukon), indicating Pizarro's continuing use of the vehicle. *Id.* at 6-7. Finally, Mercurio swore that in September 2016 the GMC Yukon was registered to an ex-girlfriend of Pizarro's, and that at the time of the Affidavit, the registration had been changed to Atia Jackson, believed to be another romantic partner of Pizarro. *Id.* at 6.

Mercurio attested that based on his "experience, training, and familiarity with robbery, kidnapping, and firearms offenses, as well as the use of vehicles to facilitate these offenses," he believed that "criminals often store instrumentalities of these offenses in their vehicles," including "firearms, restraints such as zip ties, dark clothing, masks, and gloves in their vehicles. *Id.* at 7. Mercurio continued that he was aware "that vehicles often have global positioning

18

system ('GPS') and other geolocation devices, which record their locations, among other things," and that "these GPS devices may record locations for months afterwards." *Id.*

Based on the Affidavit, Judge Moses issued a warrant for the GMC Yukon allowing law enforcement officers to seize "[e]vidence concerning ownership and use of the Subject Vehicle," "[i]tems that may be used to restrain or threaten individuals, including without limitation, cords, zip ties, firearms, and other weapons," and "[i]tems similar to those worn by the robbers in the kidnapping of Robert Bishun on or about September 20, 2016, including without limitation masks, gloves, hats, dark clothing, and boots." *Id.* at Attachment A.

On March 16, 2017, after Pizarro was taken into custody, law enforcement officers searched the GMC Yukon pursuant to the warrant and recovered a loaded handgun, gloves, a mask, a GPS device, vehicle registration and insurance documents, traffic and parking tickets, and receipts.

### B. Analysis

When deciding whether a search warrant was supported by probable cause, a court must determine whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998) (quoting *Illinois v. Gates*, 62 U.S. 213, 238 (1983)). The Affidavit in support of the warrant application "must be read as a whole, and construed realistically," and a reviewing court must "resolve any doubt about the existence of probable cause in favor of upholding the warrant." *Id.* (citations omitted). The issuing magistrate's probable cause determination receives "considerable deference." *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007) (citing *Gates*, 62 U.S. at 238-39).

"The determination of whether information presented in support of an application is sufficiently current to support a finding of probable cause is one that must be made on the basis

of the facts of each case." *United States v. Martino*, 664 F.2d 860, 867 (2d Cir. 1981). "While there is no bright line rule of staleness the facts in an affidavit supporting a search warrant must be sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search and not simply as of some time in the past." *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993). The key question is "whether is it reasonable to believe that the evidence sought is still in the location where it is sought, or whether so long a period of time has passed as to make it doubtful that the evidence is still there." *United States v. Salomon-Mendez*, 992 F. Supp. 2d 340, 347 (S.D.N.Y. 2014) (internal quotation marks and citation omitted). However, "when the supporting facts present a picture of continuing conduct or an ongoing activity…the passage of time between the last described act and the presentation of evidence becomes less significant." *United States v. Singh*, 390 F.3d 168, 181 (2d Cir. 2004) (quotation omitted). "Moreover, the passage of time is not controlling and is but one factor to be considered, along with the kind of property sought and the nature of the criminal activity, in resolving the issue of probable cause for a search warrant." *Id.* at 181-82.

Reading the Affidavit as a whole, the Court concludes that the warrant was supported by probable cause. Pizarro argues that it is "patently unreasonable to expect that the instruments used in a robbery, kidnapping and murder, would be present in a vehicle allegedly used in the crime, six months after the fact." Br. at 16. But this statement artificially constricts and misrepresents the statements contained within Mercurio's Affidavit. As a preliminary matter, the application also specifically sought registration papers for the vehicle, which are generally kept within the glove compartment or elsewhere within the vehicle, and are "unlikely to be removed

from a car at any point when the car is still in use." *Salomon-Mendez*, 992 F. Supp. 2d at 348 & n.3.

Moreover, while Pizarro argues that it is unreasonable for the Magistrate Judge to have believed that the sought items – such as those which "may be used to restrain or threaten individuals" or items "similar to those worn by the robbers" – would have still been in the vehicle six months after the attempted robbery and murder, as the Government convincingly argues, Pizarro had no reason to believe any of those items would be traced back to the alleged crimes. As no firearm was discharged in the commission of the offense, there would be no ballistics evidence. Because Bishun was strangled, there would be no blood on Pizarro's clothing, which were fairly generic and would not be easily identified by any bystanders or eyewitnesses. And the discovered documents, registration papers, and receipts, as well as the undiscovered zip ties, are not incriminating on their face, and only become incriminating evidence when combined with other evidence in this case. Additionally, the Magistrate Judge may have reasonably inferred that evidence might still be in the vehicle six months later because of the allegations in the Affidavit of Pizarro's continued use of the GMC Yukon after Bishun's murder.

Pizarro argues that whether he had "reason to believe" the items could be traced back to the crimes is irrelevant to the probable cause assessment. Reply a 9, n.5. He offers no support for this contention. In reality, whether Pizarro would have been motivated to move these "transitory" items – which is his argument – is partially dependent on whether he believed they were incriminatory, and drawing inferences of that nature is part of what a Magistrate Judge must do when evaluating a warrant application. *See Gates*, 462 U.S. at 240 ("The essential protection of the warrant requirement of the Fourth Amendment...is in requiring that the usual

inferences which reasonable men draw from evidence be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." (internal quotation marks, citation, and alteration omitted)).

Finally, Mercurio's Affidavit statement that vehicles "often" contain GPS, taken with the totality of the allegations, provides an additional basis for believing that there "is a fair probability that…evidence of a crime will be found in a particular place." *Salameh*, 152 F.3d at 113. Pizarro requests a *Franks* hearing, having labeled Mercurio's statement that vehicles "often have GPS" that can "record locations for months" a "misleading representation and omission." Br. at 20. However, in order to merit a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), the defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and that "the allegedly false statement is necessary to the finding of probable cause." *Id.* at 155-56. Pizarro can establish neither prong here. His conclusory allegations cannot support a *Franks* challenge as a matter of law. *See Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994) ("Unsupported conclusory allegations of falsehood or material omission cannot support a *Franks* challenge; to mandate a hearing, the plaintiff must make specific allegations accompanied by an offer of proof."). Nor are the GPS-related statements of Mercurio necessary to finding probable cause here; the remainder of the Affidavit is sufficient to uphold the Magistrate Judge's decision.

In sum, reading the Affidavit as a whole, the probable cause determination was fairly made. The Affidavit articulated sufficient particular facts to believe there was a "fair probability that contraband or evidence of a crime" would be found in the GMC Yukon.

22

Even assuming that the warrant had not been adequately supported by probable cause, the warrant certainly falls within the "good faith exception." Under the circumstances described above, law enforcement officers demonstrated good faith in relying on the search warrant issued by Judge Moses. This is not a case where an application was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *United States v. Leon*, 468 U.S. 897, 923 (1984) (internal quotation marks and citation omitted), nor has Pizarro presented any evidence beyond mere speculation that law enforcement conduct was "sufficiently deliberate" and "sufficiently culpable" to warrant exclusion. *Herring v. United States*, 555 U.S. 135, 144 (2009).

## V. Conclusion

For the foregoing reasons, the Court DENIES Defendants' motion to sever and motions to suppress. This Order resolves Dkt. Nos. 43 & 48.

The parties may submit any proposed limiting instructions in light of the Court's severance ruling with their requests to charge.

SO ORDERED.

Dated: April __10__, 2018
      New York, New York

                                   ALISON J. NATHAN
                            United States District Judge