# CARLA SANDERSON

ATTORNEY  NY, NJ, SDNY, EDNY

260 MADISON AVENUE | T 646.499.3818
NEW YORK, NEW YORK 10016 | F 646.499.3814
carla@carlasandersonlaw.com | carlasandersonlaw.com

May 2, 2018

BY ECF
The Honorable Alison J. Nathan
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

    Re: *United States v. Pizarro*, *Rivera* 17 Cr. 151 (AJN)

Dear Judge Nathan,

  On behalf of both defendants, we write seeking an Order from the Court, requiring the government to disclose additional *Brady* material relating to the Bishun homicide.

  On December 11, 2017, among numerous other items, the Government produced a recording of a conversation and text messages involving a confidential informant ("CI-1") and one Gabriel Guillen. The Government advised that during the "<u>course of meetings and text message exchanges</u>," in substance and in part, Guillen had disclosed to CI-1 that Guillen and others were involved in the murder of Robert Bishun. Notably, this disclosure came as part of a broader discovery letter that contained nine other items and was not flagged as *Brady* material. See letter dated December 11, 2017 attached at Exhibit A.

  Thereafter, on January 25, 2018, the government provided a letter dealing directly with the Guillen information. In this letter, the Government reiterated that "[Gabriel Guillen] stated to CI-1 in the <u>course of meetings and text messages exchanges</u>, in substance and in part, that [Gabriel Guillen] and others were involved in the murder of Robert Bishun. However, in this letter the Government asserted that CI-1 had falsified the text messages. The Government made no mention of the "<u>meetings</u>" wherein the Bishun murder was discussed by Guillen. See letter dated January 25, 2018 attached at Exhibit B.

  On February 4, 2018, the defendants demanded *Brady* and *Giglio* materials related to this issue. See letter dated February 4, 2018 attached at Exhibit C.

  On February 8, 2018, the Government responded to the defendants' *Brady* and *Giglio* demand. In this correspondence the Government advanced that the during a debriefing on January 23, 2018, CI-1 advised that he had falsified the text messages regarding the murder of Robert Bishun he previously claimed had come from Guillen. The

Government again made no mention of the "meetings" in which Guillen and CI-1 had discussed the Bishun murder. See letter dated February 8, 2018 attached at Exhibit D.

Also on February 8, 2018, the Government advised Gabriel Guillen that information provided by CI-1 regarding a conversation CI-1 had with Guillen about the murder of Bishun was cited in an application seeking historical cell site information and submitted to Magistrate Judge Kevin N. Fox on October 28, 2016. (Guillen has been indicted in this District under Docket Number 17-512)

On April 16, 2016, the Government filed its motions *in limine*. In its motions the Government concedes that during the course of the investigation into the Bishun murder, the Government sought and obtained search warrants for various evidence, including historical cell site and cell tower data which set forth the Government's beliefs about the possible involvement of Merlin Alston (and individual against whom Bishun was set to testify) and Gabriel Guillen. *See* Government Motions *in Limine* filed April 16, 2018 ECF Dkt. No. 66 at page 35.

On April 16, 2018, the defendants again sent a demand to the Government seeking *Brady* and *Giglio* information. See letter dated April 16, 2018 attached at Exhibit E.

By way of letter dated April 27, the government advised that it would be providing no further information. See letter dated April 27, 2018 attached at Exhibit F.

The defendants now seek an Order from the Court directing the Government to provide a more robust disclosure regarding the information provided by CI-1, including but not limited to reports created by Government agents at the time the Government was provided with the related information through today. The defense requests this *Brady* information so that it may make an independent assessment of this information. *See Mendez v. Artuz*, 2000 U.S. Dist. LEXIS 8841, No. 98 Civ. 2652 (LMM) (A), 2000 WL 722613, at *14 (S.D.N.Y. June 6, 2000), *report and recommendation adopted by Mendez v. Artuz*, 2000 U.S. Dist. LEXIS 11527, 2000 WL 1154320 (S.D.N.Y. Aug. 14, 2000), *aff'd by Mendez v. Artuz*, 303 F.3d 411 (2d Cir. 2002) ("If the evidence is favorable to the accused, * * * then it must be disclosed, even if the prosecution believes the evidence is not thoroughly reliable."). As it stands the limited scope of the Government's disclosure prevents the defense from further investigating or making use of *Brady* evidence.

The defense seeks the following information under the Government's *Brady* and *Giglio* obligations:

1. The underlying affidavits and supporting documentation in which the Government sought and obtained search warrants for various evidence, including historical cell site and cell tower data which set forth the Government's beliefs about the possible involvement of Merlin Alston, Gabriel Guillen or any other individual;

2. A copy of the application seeking historical cell site information submitted to Magistrate Judge Kevin N. Fox on October 28, 2016, that cites to a conversation CI-1 had with Gabriel Guillen about the Bishun murder;

3. The identity of CI-1 and the length of time CI-1 had been a confidential informant and/or cooperating witness, and whether this individual was paid for his assistance;

4. The names of law enforcement personnel CI-1 provided information to relating to the Bishun homicide;

5. The dates and times the text messages between CI-1's phone(s) and Guillen's phone(s) were sent and received;

6. DD5s, ROIs, and any and all reports reflecting the debriefings of CI-1 when CI-1 provided the government with information about the Bishun homicide;

7. DD5s, ROIs, and any and all reports reflecting the investigation into CI-1 and/or Guillen relating to the Bishun homicide;

8. DD5s, ROIs, and any and all reports reflecting the debriefing of CI-1 and/or Guillen when CI-1 admitted to creating and sending the text messages;

9. Copies of the full text message conversations for all text message conversations between CI-1 and Guillen;

10. Any other text messages, emails, electronic communications, Instagram posts, and social media posts referencing the death of Bishun;

11. The ability to inspect the phones that sent and received the text messages;

12. Any and all phone records obtained as a result of the investigation into CI-1 and or Guillen for the Bishun homicide;

13. Information in the Government's possession that CI-1 or Guillen knew Pizarro or Rivera? If so, what is their relationship?

14. Did CI-1 have a cooperation agreement? Does CI-1 still have a cooperation agreement?

Without the information requested herein the defense cannot provide effective assistance of counsel pursuant to the Sixth Amendment.

Respectfully,

/s

_____

Carla M. Sanderson
Elizabeth Macedonio
Louis Freeman
Bobbi Sternheim
Jeremy Schneider