UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

United States of America,

—v—

Robert Pizarro & Juan Rivera,

        Defendants.



17-CR-151 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

In advance of trial in the above-captioned matter, both parties filed a number of motions *in limine*, many of which the Court resolved at the April 30, 2018 final pretrial conference. The Government has moved to introduce statements Robert Bishun, the victim of the charged offenses, made to a 911 operator, to his wife, and to a detective after the 2015 robbery of his shop.[1] At the final pretrial conference, the Court reserved its decision on this motion and called for any additional authority the parties may seek to present. In order to give the parties further clarity on the admissibility of the statements, the Court now sets forth the standard for their admissibility, addressing each proffered statement in turn.

As Bishun is unavailable to testify, the Government seeks to introduce his statements under the hearsay exceptions of "present sense impression" or "excited utterance." Fed. R. Evid. 803(1)-(2). Both the present sense impression and excited utterance exceptions are "derived from the belief that contemporaneous statements about observed events leave less time to forget or fabricate and, therefore, tend to be reliable." *United States v. Gonzalez*, 764 F.3d 159, 169 (2d Cir. 2014). For present sense impressions, hearsay may be admitted if the statement "describe[s]

---

[1] *See* Government's Motions *in Limine* ("Gov't Mot."), Dkt. No. 66, at 15-23. The Government has since indicated that it no longer seeks to admit Bishun's statements to the detective. Dkt. No. 87 at 2 n.3.

1

or explain[s] an event or condition" and is "made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). With respect to excited utterances, a startling event must have occurred, the declarant's out-of-court statement must relate to the startling event, and the statement must be made while the declarant was under the stress of excitement caused by the startling event. *See United States v. Brown*, 254 F.3d 454, 458 (3d Cir. 2001). However, in contrast to present sense impressions, an excited utterance "need not be contemporaneous with the startling event to be admissible." *United States v. Jones*, 299 F.3d 103, 112 (2d Cir. 2002) (quotation omitted). The length of time in between the event and statements is a factor taken into account, but the key question is whether the declarant was still under the stress caused by the event. *See id.*

### I. Bishun's Call to 911

According to the Government, immediately after Mr. Bishun was robbed in 2015, he called 911 to report the crime. As the NYPD does not maintain the audio of the 911 calls in perpetuity and no longer has a recording of this call, the Government seeks to introduce a so-called "Sprint report" or "ICAD report," which memorializes in shorthand statements made to the 911 operator. The Government intends to introduce the report itself under the business records exception in Rule 803(6) by calling a records custodian from the NYPD, PCT Roger Regis, who will explain how the reports are generated and explain the specific codes and abbreviations that are used as a general practice by 911 operators. *See* Transcript of Final Pretrial Conference ("Tr.") at 55:20-56:16; Dkt. No. 87. The Government intends to establish that Bishun placed the call in question through the testimony of another witness, who was present with Bishun at the time. Tr. 57:13-18.

2

Counsel for Defendant Robert Pizarro stated at the final pretrial conference that there "is no precedent for a Sprint report being introduced without the 911 [call] itself," Tr. 58:22-24, arguing that its admission would violate the "best evidence" rule, Rule 1004, and the rule of completeness, Rule 106. Tr. 60:19-22. These arguments find little support in the law.

For example, in *Anthony v. City of New York*, the district court rejected Plaintiff's argument that the Sprint report should be excluded because the audio file was not produced, noting that Rule 1004 does not require the original recording if "the original was lost or destroyed, 'unless the proponent lost or destroyed them in bad faith.'" No. 00-CV-4688 (DLC), 2001 WL 741743, at *4 (S.D.N.Y. July 2, 2001) (quoting Fed. R. Evid. 1004). As in *Anthony*, Defendants have "not alleged that the 911 tapes were destroyed in bad faith, nor [have Defendants] presented any reason to believe that the Sprint Report is inaccurate." *Id.*; *see also United States v. Harper*, No. 05-CR-6068 (DGL), 2009 WL 140125 at *1-2 (W.D.N.Y. Jan. 20, 2009) (finding that a "CAD printout" of a 911 call is admissible as a business record based on a sworn certification of an Emergency Communications Department employee); *United States v. Hughes*, 840 F.3d 1368, 1383-84 (11th Cir. 2016) (affirming the admission of a CAD report without the call itself); *United States v. Robinson*, 855 F. Supp. 2d 419, 423-24 (E.D. Pa. 2012) (rejecting defendant's speculation that the recording "might say something different" as reason to believe the "CAD report is unacceptable as a substitute for the recording"). The rule of completeness also does not apply because there is no "other part" of the "writing or record statement" available for the Court to consider. Fed. R. Evid. 106.[2]

Defendants cite *Jacob v. City of New York* for the proposition that Sprint reports are not "a satisfactory substitute" for the 911 tapes themselves, but *Jacob* presented a discovery issue, in

---

[2] While the Government only seeks to introduce certain portions of the SPRINT Report, the Government has stated its willingness to expand what it includes should the Defendants so desire. Dkt. No. 87 at 4.

that Defendant City of New York was served the complaint prior to the destruction of the tapes, there was a copy of the 911 call retained by the Civilian Complaint Review Board, and yet the City only produced the Sprint report in discovery. *See* No. 07-CV-4141 (KAM)(MDG), 2009 WL 383752, at *1 (E.D.N.Y. Feb. 6, 2009). The Court does not find that authority on point or persuasive.

Assuming the Government is able to lay a proper foundation, the Court is likely to admit the Sprint report under the business records exception. *See United States v. Kuo*, No. 10-CR-671 (KAM), 2011 WL 145471, at *11 (E.D.N.Y. Jan. 18, 2011). Assuming the testimony of the eyewitness matches the contents of the Sprint report, this also provides another level of corroboration that bolsters the report's reliability.

Nonetheless, the admissibility of the report does not necessitate the admissibility of the statements within, and the Government must still establish that the hearsay is admissible as a present sense impression or excited utterance. *Id.* at *12.

According to the Government, Bishun called 911 as soon as the robbers left in 2015. Two men had just entered Bishun's shop brandishing guns, had restrained him and others, had taken thousands of dollars from him along with his identification and car keys, and had described his family and indicated that they were going to his home. Gov't Mot. at 18. The Government proffers that Bishun told the 911 operator what had happened, reported that the perpetrators could still be in the vicinity of the Shop, and described what they were wearing. Bishun also reported that two other victims had been tied up in the back room of the shop, and he gave the operator his home address because the perpetrators "took his ID & keys to go to his home." *Id.* He advised that the responding officers would have to "pull up gates" to the Shop. *Id.* at 19.

The Government intends to offer at trial a witness who was physically present at the time of Mr. Bishun's call. This witness may testify that Bishun placed the call immediately after the perpetrators fled. Assuming the testimony lends credence to the Government's representations in briefing the motion and at the final pretrial conference, the Court is inclined to admit Bishun's statements to the 911 operator as present sense impressions. *See, e.g.*, Fed. R. Evid. 803(1) (including statements made "immediately after" the declarant perceived the event in the definition of present sense impression); *United States v. Steele*, 216 F. Supp. 3d 317, 322 (S.D.N.Y. 2016) (admitting a 911 call as a present sense impression made within minutes of the caller observing the events); *Hughes*, 840 F.3d at 1373, 1383 (affirming the admission of statements in a CAD report as present sense impressions).

Alternatively, Bishun's statements in the Sprint report may be admitted as excited utterances. Defendants have argued, without support in the law, that the Court cannot admit a 911 call as an "excited utterance" absent the actual audio recording. It may be true that if the Court had the audio of the call, it could better assess "the caller's tone of voice, the language used by the caller," in order to determine if the caller was under the stress of excitement caused by the robbery, Tr. 59:19-25, but that is not the only evidence that can reliably be used to make that assessment. Here, the Government expects that the same eyewitness noted above will testify that Bishun placed the call immediately after and while still significantly upset by the armed robbery. Assuming such testimony, the Court is inclined to also admit Bishun's statements as excited utterances. *See, e.g., Kuo*, 2011 WL 145471, at *6 (admitting a 911 call under both present sense impression and excited utterance exceptions); *John v. Masterson*, No. 08-CV-0141, 2010 WL 1957876, at *1 (D. Conn. May 14, 2010) (same); *Harper*, 2009 WL 140125, at *2-3 (same).

5

## II. Bishun's Call to His Wife

The same witness noted above is purported to have been present during Bishun's call to his wife. This witness's anticipated testimony is central to admitting the statements Bishun made to his wife under the same hearsay exceptions: present sense impression and excited utterance. The Government represents that Bishun called his wife immediately after or simultaneous with his call to 911 to tell her that the robbers described her and their child, had taken his identification and money, and claimed they were going to the house. Gov't Mot. at 19. Bishun apparently instructed his wife to leave the house. For the same reasons stated before with respect to the 911 call, assuming the witness verifies that Bishun's call to his wife took place immediately after the perpetrators left and while he was still under the "stress of excitement," the Court is inclined to admit testimony of this call under both the present sense impression and excited utterance exceptions.

## III. Confrontation Clause

Defendants also argue that introduction of the Sprint report would violate their Confrontation Clause rights. Specifically, Defendants assert that the Court would need to hear the call in order to determine whether the statements were testimonial in nature, citing *Davis v. Washington*. Dkt. No. 88 at 2 (citing 547 U.S. 813 (2006)). But *Davis* does not explicitly speak to a situation in which a call is not available, and does not stand for the proposition Defendants claim.

The same logic justifying the excited utterance exception to the hearsay rule – namely, that someone in an excited state is unlikely to lie – is consistent with the rationale for treating statements made in the course of an emergency as non-testimonial. *See Michigan v. Bryant*, 562 U.S. 344, 361-62 (2011) (noting the logical consistency of the justifications). Accordingly,

"[e]xcited utterances, generally, are not testimonial." *Rivera v. Ercole*, No. 05-CV-9411 (AKH), 2007 WL 1988147, at *6 (S.D.N.Y. July 6, 2007). In fact, the Supreme Court made clear in *Davis* that statements to 911 operators are nontestimonial if the "circumstances...objectively indicate [the call's] primary purpose was to enable police assistance to meet an ongoing emergency." 547 U.S. at 828. Here, as the witness is expected to testify, because of statements made by the perpetrators, Bishun was concerned for his family's safety, and called 911 with the primary purpose of enabling police assistance. Assuming the witness's testimony bears this out, Bishun's statements to the 911 operator and to his wife, made in the immediate aftermath of a traumatic event, are non-testimonial. *See also Kuo*, 2011 WL 145471, at *8-10, 12-13; *United States v. Hayden*, 612 F. App'x 381, 384 (7th Cir. 2015) (affirming admission of 911 call minutes after robbery as "clearly non-testimonial").

## IV. Defendants' Requested Redaction

Should the Court admit the Sprint report, Defendants request that the phrase "TO GO TO HIS HOME" be redacted as speculative. However, based on the anticipated testimony of the eyewitness and the remaining contents of the Sprint report, Bishun's statement appears based upon the perpetrators' actions in taking Bishun's keys and ID and their statements to him suggesting they were targeting him personally, and his family. Accordingly, because the Court anticipates a foundation suggesting Bishun is not engaging in rank speculation, and because the statement is offered to prove Bishun's state of mind and what he heard the perpetrators say and not for the truth that the perpetrators *did* go to Bishun's home, the Court will not order the requested redaction.

## V. Conclusion

Assuming the anticipated witnesses are able to lay the foundation the Government proffers, the Court will allow the statements of Mr. Bishun discussed above to be admitted.

SO ORDERED.

Dated: May 4, 2018
      New York, New York

_____
ALISON J. NATHAN
United States District Judge