UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



United States of America,

—v—

Robert Pizarro & Juan Rivera,

Defendants.

17-cr-151 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

On September 26, 2018, Defendants Robert Pizarro and Juan Rivera were convicted on multiple counts following a criminal trial. *See* Dkt. No. 272 ("Verdict Sheet"). Defendants now move, under Federal Rules of Criminal Procedure 29 and 33, for acquittal or, in the alternative, a new trial. For the following reasons, Defendants' motion is denied.

## I.       BACKGROUND

For purposes of this motion, the evidence is viewed in the light most favorable to the Government and all reasonable inferences are drawn in its favor. *United States v. Glenn*, 312 F.3d 58, 63 (2d Cir. 2002).

### A.       The Charges

Indictment S4 17 Cr. 151 (AJN) (the "S4 Indictment") charged Pizarro and Rivera with: (i) conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201(c) ("Count One"); (ii) kidnapping resulting in death, in violation of 18 U.S.C. §§ 1201(a)(1) and 2 ("Count Two"); (iii) murder of a witness to prevent that witness from reporting a federal offense, in violation of 18 U.S.C. §§ 1512(a)(1)(C) and 2 ("Count Three"); (iv) Hobbs Act robbery conspiracy and attempted Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2 ("Count Four" and "Count Five," respectively); and (v) using, carrying, possessing, and brandishing firearms in

1

furtherance of crimes of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), and 2

("Count Six"). *See* Dkt. No. 82. The indictment alleged that these crimes arose out of

Defendants' participation in a September 20, 2016 attempted robbery, kidnapping, and murder of

a federal cooperating witness, Robert Bishun, at Bishun's auto body shop (the "Shop"). *See id.*

The S4 Indictment also charged Pizarro alone with a 2015 Hobbs Act robbery conspiracy

and Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2 ("Count Seven" and "Count

Eight," respectively), and using, carrying, possessing, and brandishing firearms in furtherance of

that robbery, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), and 2 ("Count Nine"), for an

earlier incident in which he and a different co-conspirator robbed Bishun at the Shop. *See* Dkt.

No. 82.

### B. The Trial

Trial began in this case on September 11, 2018. Over the course of approximately three

weeks, the Government's proof at trial included, *inter alia*: testimony from a cooperating

witness, Philip Haynes, regarding Pizarro's participation in prior attempts to rob Bishun;

Pizarro's confession to the successful robbery of Bishun in 2015 and to Bishun's murder

following the attempted robbery in September 2016; testimony from Michael Budhrum, a victim

of the 2015 robbery; testimony from Mark Srikishun and Marlena Magda, victims of the 2016

attempted robbery; testimony from law enforcement officials involved in locating Bishun's body,

analyzing cell-site geolocation data, and processing the relevant crime scenes; testimony from

DNA and fingerprint experts; testimony and records relating to social media, cell phone,

geolocation, and license plate reader technologies; physical evidence collected from the crime

scenes; and physical evidence seized from Pizarro at the time of his arrest, including his vehicle

and a firearm, which the Government argued at trial was used by Pizarro and Rivera during the

September 2016 attempted robbery. *See generally* Tr.; Court Ex. 1 (listing the Government exhibits). Trial established the following timeline of events.

### 1. The 2015 Robbery

The evidence at trial demonstrated that Pizarro worked with others, including Rivera, to repeatedly target Robert Bishun in an attempt to rob him of prior drug proceeds. The first incident occurred in 2015. On January 24, 2015, Pizarro and another man entered Bishun's auto body shop at 1631 Stillwell Avenue in the Bronx (the "Shop") wearing masks and displaying firearms. *See* Tr. 456-65, 478, 481. Pizarro and his co-conspirator bound their victims with zip ties, and left the Shop with approximately $10,000 in cash that belonged to Bishun. *See* Tr. 463-65, 480-81, 917.

Afterwards, the New York City Police Department ("NYPD") arrived at the Shop and NYPD Officer Sanchez recovered evidence left behind by Pizarro and his co-conspirator, which included a plastic bag containing zip ties and a receipt from a Home Depot in the Bronx reflecting a purchase of those same zip ties on January 10, 2015. *See* Tr. 659-60 (Sanchez testimony regarding recovery of evidence); Tr. 657-64 (Pires testimony regarding analysis of recovered evidence). Additionally, fingerprint analysis found three of Pizarro's fingerprints— two left thumbprints, and one left index finger—on the plastic bag. *See* Tr. 811-16, 826. Home Depot surveillance video showed an individual who bears some resemblance to Pizarro purchasing zip ties on January 10, 2015. *See* GX 1006; GX 80; Tr. 779-81; GX 1007; GX 306-15; Tr. 652-53. And cell-site evidence from Pizarro's phone confirmed that he was in the vicinity of the Home Depot on January 10, 2015, and also at the Shop around the time of the 2015 Robbery. *See* Tr. 1365-66; GX 901 at 17-22, 46-53.

### 2.    The April 2016 Attempted Robbery

At trial, the evidence established that Pizarro and two others—Kasheen Samuels and

Philip Haynes—attempted to rob Bishun at the Shop again in April 2016.  Haynes testified at

trial as a cooperating witness.  He explained that Pizarro targeted Bishun and the Shop again due

to the success of the 2015 Robbery, and that Pizarro believed that Bishun had more money

hidden away.  *See* Tr. 894-95, 903, 915.  Cell-site records for cell phones used by Pizarro and

Samuels confirmed their presence in the vicinity of the Shop around this time.  Tr. 1365-66; GX

901.

However, as Haynes explained, Pizarro, Samuels, and Haynes did not commit the

planned robbery in April 2016 because they became concerned that the vehicle they were using

to stake out the Shop had been noticed.  *See* Tr. 925-26.

### 3.    The August 2016 Stakeouts and the September 2016 Attempted Robbery, Kidnapping, and Murder

Evidence at trial established that Pizarro, along with Rivera, attempted to rob Bishun in

September 2016, and then proceeded to kidnap and murder him in order to prevent him from

reporting their crimes to law enforcement officials, when it was reasonably likely that those

officials included federal law enforcement officials.

First, in or about August 2016, Pizarro again began staking out the Shop again using a

black GMC Yukon (the "Yukon").  *See* Tr. 1366-67, 1416-56, 1522-24, 633-34; GX 306-07, GX

438B, GX 701A, Tr. 646-47 (evidence that Yukon was Pizarro's).  Rivera was also a participant.

Cell-site evidence and security footage placed Pizarro and Rivera outside of the Shop in the

Yukon over the next month.  *See* Tr. 1366, 1416-56; GX 3-26; GX 901.  On each of those days,

Pizarro and Rivera waited by the Shop in the Yukon for approximately two to three hours in the

late afternoon and early evening.  *See* Tr. 1522-39, 1587-1618.  Photographs recovered from

Rivera's iCloud[1] account established that during one of these stakeouts, Rivera took photographs directly outside the Shop, including taking photographs of Robert Bishun. Tr. 700-01; GX 707C; Tr. 1246-47. Additionally, a mobile NYPD license plate reader that drove past the Yukon confirmed that it was the same Yukon that Pizarro was driving at the time. Tr. 610-11; GX 315; *see also* GX 933; GX 43-47; GX 1015; Tr. 1308-12.

The day before the murder, on September 19, 2016, Pizarro and Rivera parked the Yukon in the vicinity of the Shop, and got out of the Yukon wearing masks and gloves. GX 13; GX 25; Tr. 1528-34. They approached the Shop, but then returned to the Yukon without committing the robbery. GX 13; GX 25; Tr. 1528-34. They then continued their surveillance from inside the Yukon until Bishun left the Shop and drove away in his BMW. *See* GX 13; GX 25; Tr. 1528-34.

On September 20, 2016, the day of Bishun's murder, the evidence at trial established that Pizarro and Rivera got out of the Yukon, entered the Shop, and sought to commit a robbery using the same approach Pizarro employed during the 2015 Robbery. Pizarro and Rivera wore masks, brandished guns, and bound those inside the Shop using zip ties. *See* Tr. 80-88 (Magda testimony); Tr. 140-57 (Srikishun testimony). Then, while Bishun was bound and being questioned by Pizarro, Bishun stated that he was a federal informant. Tr. 151; *see also* Tr. 951-52. Pizarro responded in a surprised and angry manner, "you're a fucking snitch?" Tr. 151. Rivera was also in hearing distance of this conversation. Tr. 152-53.

Pizarro and Rivera proceeded to place the two other victims who were present at the Shop, Magda and Srikishun, inside the trunks of two separate vehicles. Tr. 154-55, 157-58. Pizarro and Rivera then removed Bishun from the Shop, and drove away in two vehicles—the

---

[1] iCloud is an "online storage system" that "allows you to take your iPhone and have a backup copy of your iPhone on[ ] an online storage system." Tr. 685 (testimony of Apple employee Jonathan Silva). It also "allows you to synchronize information on your device with iCloud. For example, you can have your photos, music, and other data on iCloud and access it from any of your Apple devices." *Id.*

Yukon and Bishun's BMW. *See* GX 14O, GX 14S (surveillance video from Shop); GX 32-34 (Horace Mann surveillance videos). Defendants proceeded to strangle Bishun to death with a zip tie. *See* Tr. 228-29, 945, 951-52.

Later in the evening, the NYPD located Bishun's BMW in the Riverdale section of the Bronx, parked near the Horace Mann school. GX 1011; GX 339; Tr. 303, 310-11. Bishun was found dead inside of his vehicle with a zip tie around his neck. Tr. 301-08, 225. Rivera's DNA was recovered inside Bishun's BMW. Rivera's DNA was a "match" to DNA recovered from the BMW's steering wheel, and he was considered a "possible contributor" to a DNA mixture recovered from BMW's gear shift. Tr. 383-87, 393-96, 402-17.

On September 21, 2016, Pizarro met up with Samuels and Haynes at a car wash on Jerome Avenue. Tr. 941-42, 1454-55; GX 901. Pizarro told Samuels that they had not gotten any proceeds from the robbery because Bishun "told me he was a federal informant." Tr. 945, 951-52. Pizarro then made a hand motion and a noise that indicated that he had killed Bishun as a result. Tr. 945, 951; *see also* Tr. 948 (sidebar).

In the days and weeks after the murder, Pizarro repeatedly conducted internet searches and visited news sources relating to the murder of Bishun. GX 705C; GX 705D.

### 4. The Defense Case

Defendants put on a combined defense case, during which, *inter alia*, Defendants admitted into evidence two text messages and a recording. Defendants argued that this evidence established that a man named Gabriel Guillen, a drug dealer, had confessed to a confidential informant that Guillen had worked with a corrupt NYPD Officer, Merlin Alston, and others, to murder Bishun due to Bishun's cooperation against Alston. *See* Tr. 1649-78; DX A-J. At trial, it had been established that Bishun had been a heroin dealer who, after he was arrested in 2012,

6

entered into a cooperation agreement with the Federal Government. *See* Tr. 1650-53; DX F; Tr. 1156; GX 1010; GX 1203.

### 5. The Government's Rebuttal

The Government then put on a rebuttal case in which it introduced two news articles that predated the Guillen texts and recording. *See* GX 1220-21; Tr. 1678-80. In its summation, the Government argued that the newspaper articles demonstrated that everything Guillen stated in the text messages and recording related to the murder was already publicly known. *See* Tr. 1826-27.

### 6. The Verdict

Following closing arguments, the jury began its deliberations on September 25, 2018. On September 26, 2018, the jury reported that it had reached a unanimous verdict. *See* Court Ex. 10. The jury returned a verdict of guilty on all counts as to both Defendants. *See* Tr. 2182-87; Verdict Sheet. As to each Defendant, the jury specifically found that the 2016 kidnapping resulted in the death of Bishun. Tr. 2182-83; Verdict Sheet. The jury found that the Defendants had brandished the firearms they used in connection with the 2016 Attempted Robbery and the Murder, and that Pizarro had brandished the firearm he used in connection with the 2015 Robbery. Tr. 2184-86; Verdict Sheet. The Court denied Defendants' pre-verdict Rule 29 motions, *see* Tr. 1631-39, 2188, and set a briefing schedule for post-verdict motions. *See* Tr. 2188.

### C. Post-Trial

Following trial, on October 10, 2018, Defendants submitted a joint Rule 29 motion.[2] Dkt. No. 277 ("Def. Br."). That motion was fully briefed. *See* Dkt. No. 310 ("Gov. Opp."); Dkt.

---

[2] Although the motion was submitted pursuant to Rule 29, Defendants also asked the Court in passing for the alternative relief of a new trial. *See* Def. Br. at 1, 14. Although a "trial court has broader discretion to grant a

No. 312 ("Def. Reply Letter"). After the motion was fully briefed, Defense counsel filed letters

advising the Court that Defendants intended to request changes of counsel. *See* Dkt. Nos. 313,

329. The Court granted Defendants' change-of-counsel requests and permitted Defendants to

file supplemental post-trial motions with their new counsel. *See* Dkt. Nos. 321, 332, 341, 345.

On April 30, 2019, each Defendant filed a separate supplemental letter motion pursuant to Rule

33. Dkt. No. 349 ("Rivera Supp. Letter"); Dkt. No. 351 ("Pizarro Supp. Letter"). The

Government filed an opposition, Dkt. No. 353 ("Gov. Supp. Opp."), and neither Defendant

submitted a reply, *see* Dkt. No. 354.

The Court now addresses Defendants' Rule 29 arguments, and then addresses

Defendants' Rule 33 arguments, considering the arguments presented in each of the parties'

submissions.

## II.     RULE 29 LEGAL STANDARD

Under Federal Rule of Criminal Procedure 29, "a district court will grant a motion to

enter a judgment of acquittal on grounds of insufficient evidence if it concludes that no rational

trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v.*

*Jackson*, 335 F.3d 170, 180 (2d Cir. 2003) (citing Fed. R. Crim. P. 29(a), (c)). The Second

Circuit has stated that "[a] defendant who challenges the sufficiency of the evidence to support

his [or her] conviction 'bears a heavy burden.'" *Id.* (quoting *United States v. Finley*, 245 F.3d

199, 202 (2d Cir. 2001)). On such a motion, "[n]ot only must the evidence be viewed in the light

most favorable to the Government and all permissible inferences drawn in the Government's

---

new trial under Rule 33 than to grant a motion for acquittal under Rule 29, [ ] it nonetheless must exercise the Rule 33 authority sparingly and in the most extraordinary circumstances." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (internal quotations omitted). For all of the reasons discussed in this Opinion & Order rejecting Defendants' Rule 29 arguments, and the additional arguments discussed in Parts VI-VII, the Court concludes that Defendants arguments are not "exceptional circumstances" justifying a new trial. *See id.* at 139.

favor, but the jury verdict must be upheld if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The evidence "must be viewed in light of the totality of the Government's case, since one fact may gain color from others." *United States v. Tramunti*, 500 F.2d 1334, 1338 (2d Cir. 1974). This is an "exceedingly deferential standard of review." *United States v. Pica*, 692 F.3d 79, 86 (2d Cir. 2012) (quoting *United States v. Hassan*, 578 F.3d 108, 126 (2d Cir. 2008)).

A "jury's verdict may be based entirely on circumstantial evidence." *United States v. Sureff*, 15 F.3d 225, 228 (2d Cir. 1994). Further, "[t]he fact that a conviction may be supported only by the uncorroborated testimony of a single accomplice is not a basis for reversal if that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt. Any lack of corroboration goes merely to the weight of the evidence, not to its sufficiency. Whether or not there is corroboration for an accomplice's testimony, the weight of the evidence is a matter for argument to the jury . . . ." *United States v. Parker*, 903 F.2d 91, 97 (2d Cir. 1990).

## III. DEFENDANTS' CHALLENGE TO COUNT TWO

Defendants argue that the guilty verdict on Count Two is legally insufficient, as there was a lack of evidence on one of the elements of the offense—the interstate commerce element. Def. Br. at 10-11. For the following reasons, Defendants' motion on this count is denied.

### A. Legal Standard

The federal kidnapping statute requires that the Government prove that a defendant "willfully transported [the victim] in interstate or foreign commerce"; that the defendant "travel[ed] in interstate or foreign commerce"; or that the defendant "use[d] the mail or any

9

means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense." 18 U.S.C. § 1201(a)(1).

## B. A Rational Jury Could Find the Interstate Commerce Element of Count Two Satisfied

Defendants argue that the interstate commerce element of the kidnapping statute has not been satisfied. Def. Br. at 10-11. For the following reasons, the Court disagrees.

### 1. Intrastate Communications May Satisfy the Interstate Commerce Element

Defendants first argue that intrastate communications cannot satisfy the interstate commerce element of their offense. This argument fails for two reasons. First, because it was not the basis for an objection at trial, the argument is waived. *See United States v. Crowley*, 318 F.3d 401, 412 (2d Cir. 2003) ("[T]he Supreme Court has held that 'a request for an instruction before the jury retires' does not preserve 'an objection to the instruction actually given by the court' . . . this Court has repeatedly held that 'a party who has requested an instruction that has not been given is not relieved of the requirement that he state distinctly his objection to the instruction that is given.'") (quoting *Jones v. United States*, 527 U.S. 373, 388 (1999) and *United States v. Friedman*, 854 F.2d 535, 556 (2d Cir. 1988)).[3]

Second, even considered on the merits, Defendants are incorrect: Second Circuit case law clearly establishes that an intrastate phone call may satisfy the jurisdictional element of the kidnapping statute. In *United States v. Perez,* the Second Circuit held that that making an

---

[3] Nor is the argument properly presented in Defendants' brief. After conceding in text that "[i]n the Second Circuit, 'facility in interstate commerce' in the federal murder-for-hire statute, which uses the same term as the kidnapping statute, has been held to cover intrastate communications made using such a facility," Def. Br. at 10 (citing *United States v. Ramos*, 622 F. App'x 29, 30 (2d Cir. 2015) (summary order)), Defendants note in a footnote—and without any authority or argument—that they "maintain[ ] [their] objection that intrastate use of an interstate facility is insufficient to satisfy the jurisdictional element," Def. Br. at 10 n.3. But arguments made only in footnotes are generally treated as inadequately raised. *See Harrell v. Joshi*, No. 14-CV-7246 (VEC), 2015 WL 9275683, at *2 n.5 (S.D.N.Y. Dec. 18, 2015) (citing *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998)); *Gramercy Advisors, LLC v. Ripley*, No. 13-CV-9070 (VEC), 2014 WL 5847444, at *2 (S.D.N.Y. Nov. 12, 2014).

intrastate telephone call constitutes the use of a facility of interstate commerce in connection with the statute criminalizing murder-for-hire. 414 F.3d 302, 303-05 (2d Cir. 2005). This is because even when phone calls are entirely intrastate communications, they are made using a cell phone network, which is "undeniably a facility involved in interstate communication." *Perez*, 414 F.3d at 303. The interstate commerce element in the murder-for-hire statute, 18 U.S.C. § 1958, uses the same terminology as the interstate commerce element as the kidnapping statute, 18 U.S.C. §1201(a)(c). Accordingly, a Second Circuit panel recently applied the logic of *Perez* to uphold a conviction under the kidnapping statute when the jurisdictional element had been satisfied only by an intrastate cell phone call. *United States v. Ramos*, 622 F. App'x 29, 30 (2d Cir. 2015) (summary order).

Other case law in this Circuit underscores the conclusion that an intrastate phone call can satisfy the jurisdictional element of the kidnapping statute. In *Perez*, the Second Circuit explained "that the phrases 'facility *of* interstate commerce' and 'facility *in* interstate commerce' are to be used *interchangeably*." *Perez*, 414 F.3d at 304. And indeed, in other criminal statutes that use the phrase "facility in interstate commerce," the Second Circuit has also held that the jurisdictional element is satisfied by an intrastate phone call. *See United States v. Halloran*, 821 F.3d 321, 342 (2d Cir. 2016) (construing the phrase "facility in interstate commerce" in the federal Travel Act to cover wholly intrastate communications made using such a facility); *United States v. Giordano*, 442 F.3d 30, 39-41 (2d Cir. 2006) (Sotomayor, J.) (holding that the intrastate use of a cell phone constitutes the use of "a facility in interstate commerce" to entice a person under the age of sixteen years to engage in sexual activity in violation of 18 U.S.C. § 2425).

For the foregoing reasons, an intrastate phone call can satisfy the jurisdictional element of the kidnapping statute, and at trial the jury was properly instructed accordingly. Court Ex. 2 at

34 (jury instruction on interstate commerce element of kidnapping offense stating that "[t]he term 'means, facility, or instrumentality of interstate or foreign commerce' includes the use of the telephone or the Internet in furtherance of the commission of the offense"). In this case, the parties stipulated that "[b]oth Sprint and T-Mobile operate telephone networks that are capable of placing calls between states." GX 1000. Thus, the phone networks relevant to this case are "undeniably a facility involved in interstate communication." *Perez*, 414 F.3d at 303. Accordingly, Defendants' challenge to the guilty verdict on Count Two on the basis that only intrastate facilities were used is denied.

### 2. A Rational Jury Could Conclude That an Intrastate Phone Call Was Made in Furtherance of the Commission of the Kidnapping

Defendants then argue that even if there was an intrastate phone call on a facility involved in interstate communications between Pizarro and Rivera, there is insufficient evidence to conclude that the call was "in furtherance of the commission of the offense." Def. Br. at 10-11 (referencing 18 U.S.C. § 1201(a)(1)). The Court disagrees. For the following reasons, the jury was provided with sufficient evidence to conclude, *inter alia*, that an 8:55 p.m. call made on the night of September 20, 2016 was in furtherance of the kidnapping.

As an initial matter, the Government introduced evidence at trial from which a rational jury could conclude that Pizarro and Rivera used phones to coordinate stakeouts around Bishun's Shop. The Government's evidence established that two phones at issue in the case—one phone ending in "0220" and one in "8360"—belonged to Pizarro and Rivera, respectively. *See* GX 404 GX 501, GX 501A, GX 521, GX 701A, GX 705A, GX 922 (Pizarro's use of the 0220 phone); GX 439A, GX 502, GX 502A, GX 706A, GX 706C, GX 922 (Rivera's use of the 8360 phone). The Government then showed that Pizarro and Rivera used those phones to communicate on the same days in August and September on which the Government showed a repeated pattern of

12

stakeouts at Bishun's Shop. *See* GX 501 (cell records); GX 15-26 (surveillance photos of stakeout); GX 707C (Rivera iCloud account photos); GX 659 (LPR readers of Yukon); GX 901 (summary of cell-site data).

Next, the Government introduced evidence from which a rational jury could conclude that the Defendants used their phones to coordinate a stakeout on the day of Bishun's kidnapping and murder. The jury was shown evidence that a number of texts and calls took place between the "0220" and "8360" phones in the late afternoon of September 20, 2016, beginning at about 4:26 p.m. and continuing up to 5:14 p.m. *See* GX 501; GX 921A. Shortly thereafter, a black SUV, Pizarro's Yukon, appeared on the surveillance video outside 1631 Stillwell Avenue, and cell-site records confirmed that Pizarro and Rivera's phones began to use cell towers by the Shop from about 5:52 p.m. until 8:50 p.m. *See* GX 26 (surveillance stills); GX 901 (cell-site records); GX 306-07, GX 438B, GX 701A (evidence that black SUV was Pizarro's Yukon). The jury saw evidence that the Yukon was parked outside the Shop when Srikishun and Magda arrived that evening. GX 26. It then saw two individuals in masks and carrying bags exit the Yukon and loiter outside the Shop for nearly forty minutes before they ran inside. *See* GX 14A-N; GX 14T-U; GX 26. The evidence showed that the two masked individuals later exited the Shop and got into two separate cars—Bishun's BMW and Pizarro's Yukon. *See* GX 14O-S; GX 26. Both cars drove away at approximately 8:47 p.m. *See* GX 14S; GX 26. Shortly thereafter, at 8:55 p.m., Pizarro's phone called Rivera's phone. Tr. 1448; GX 901, GX 921A. Then, there was no cellphone usage—and thus no cell-site information—for Pizarro or Rivera's phone for nearly an hour. *See* GX 901. From 9:01 p.m. to 9:53 p.m., the phones were not sending or receiving any calls or data. This was, according to testimony, consistent with the phones being turned off. Tr. 1451-52 (Agent Wines testimony).

The jury also saw video footage of a silver sedan resembling Bishun's BMW, and a black SUV resembling Pizarro's Yukon, arrive on Broadway at the exact location at which Bishun's BMW and body were found later that evening. *See* GX 31-35. The cars drove away around 9:40 p.m. *Id.* After the approximately one-hour blackout period, cell-site data for the Defendants' cellphones suggested they returned to their respective residences at 1898 Harrison Avenue (Pizarro) and 2103 Honeywell Avenue (Rivera) in the Bronx. *See* Tr. 1448-49. The Defendants' phones began texting each other again beginning at approximately 11:09 p.m. *See* Tr. 1452-53; GX 901.

A rational jury viewing this evidence could conclude that the 8:55 p.m. call between Pizarro's phone and Rivera's phone was made "in committing or in furtherance of the commission of the offense." 18 U.S.C. § 1201(a)(1); *Ramos*, 622 F. App'x at 30; *see also United States v. McKinley*, 647 F. App'x 957, 962 (11th Cir. 2016) (a kidnapper's using his phone to communicate with a co-conspirator "while he was following [the co-conspirator] to find a non-public place to commit the kidnapping," was sufficient to demonstrate that their cell phones were used in furtherance of the kidnapping and satisfied interstate commerce element). Specifically, here, the jury could conclude that the Defendants made the phone communication in order to further coordinate the plans of Bishun's kidnapping after they removed him from the Shop.

Defendants argue that the Government failed to "introduce any evidence of who was using each of the phones at the time that any of the calls were made . . . or what was discussed in any of the calls." Def. Br. at 11. According to Defendants, additional testimony—essentially direct evidence—from anyone "who witnessed Pizarro and Rivera calling each other on September 20, 2016" is required to prove this element. Def. Br. at 12. However, "[p]roof of the

elements of the crimes charged may be entirely by circumstantial evidence." *United States v. Morrison*, 153 F.3d 34, 49 (2d Cir. 1998). A rational jury could have inferred from the circumstantial evidence presented to them, including evidence that the Defendants used phone communications to coordinate their surveillance of the Shop, that the call was made to further coordinate Bishun's kidnapping after they removed him from the Shop, and for Defendants to plan their next actions. Defendants' argument to the contrary essentially challenges the inference the jury may have arrived at based upon the evidence. But the Court must defer "to the jury's choice of the competing inferences that can be drawn from the evidence." *Morrison*, 153 F.3d at 49. Thus the interstate commerce element was satisfied, and Defendants' motion as to Count Two is denied.

## IV.    DEFENDANTS' CHALLENGE TO COUNTS ONE, FOUR, AND FIVE

Next, Defendants suggest that the same argument raised as to Count Two applies to Count One (conspiracy to commit kidnapping) Count Four (the 2016 Hobbs Act robbery conspiracy), and Count Five (the 2016 attempted Hobbs Act robbery). *See* Def. Br. at 4 n.1. As this argument is made only in a footnote, it is inadequately raised. *See Harrell v. Joshi*, No. 14-CV-7246 (VEC), 2015 WL 9275683, at *2 n.5 (S.D.N.Y. Dec. 18, 2015); *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998). Even on the merits, however, the argument fails.

First, the interstate commerce element in Count One is identical to the interstate commerce element in Count Two. *See* S4 Indictment (charging Count One as a conspiracy to commit kidnapping, and Count Two as the substantive crime of kidnapping); *see also* Court Ex. 2 at 34, 36-37 (jury instructions on these counts). For the same reasons the Court concluded that Defendants' argument as to Count Two fails, their motion as to Count One should be denied.

As to Counts Four and Five, these counts charge violations of the Hobbs Act, which sets out an interstate commerce element that is distinct from that described in the federal kidnapping

15

statute applicable to Count Two. *See* 18 U.S.C. §§ 1951 and 2; *United States v. Parkes*, 497 F.3d 220, 226-27 (2d Cir. 2007) ("In pertinent part, the Hobbs Act provides for criminal penalties for anyone who 'in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery . . . or attempts or conspires so to do.'") (quoting 18 U.S.C. § 1951(a)); Court Ex. 2 at 54-57 (jury instructions on Hobbs Act interstate commerce element). Accordingly, Defendants might have made different substantive arguments that the Hobbs Act interstate commerce element was not met. Even if they had done so, there is no basis to disturb the jury's finding here. The Government presented evidence at trial from which a rational jury could conclude that Defendants conspired or attempted to rob a current or former drug dealer of drugs or drug proceeds, from which the jury could have concluded that such robbery would have had at least a "potential or subtle effect," *Parkes*, 497 F.3d at 230, on interstate commerce. *See, e.g.*, Tr. 464-65, 480-81, 894, 915-17.

For all of these reasons, Defendants' motion as to Counts One, Four, and Five is denied.

## V. DEFENDANTS' CHALLENGE TO COUNT THREE

Next, Defendants argue that no evidence at trial established that Bishun was murdered to prevent him from communicating with federal law enforcement, and therefore the conviction on Count Three must be dismissed. Def. Br. at 5-9, 12-14. For the following reasons, Defendants' motion on this count is denied.

### A. Legal Standard

18 U.S.C. § 1512(a)(1)(c) makes it a crime to "kill . . . another person, with intent to . . . prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings." *See also*

*Fowler v. United States*, 563 U.S. 668, 671-72 (2011). Under this statute, there are "instances where a defendant killed a person with an intent to prevent that person from communicating with law enforcement officers in general but where the defendant did not have federal law enforcement officers (or any specific individuals) particularly in mind." *Id.* at 672-73. "This kind of circumstance is not necessarily rare . . . ." *Id.* at 672.

The Supreme Court has held that "where the defendant kills a person with an intent to prevent communication with law enforcement officers generally, that intent includes an intent to prevent communications with *federal* law enforcement officers [as required by the statute] only if it is reasonably likely under the circumstances that (in the absence of the killing) at least one of the relevant communications would have been made to a federal officer." *Id.* at 677-78. Thus, in such a case, "the Government must show *a reasonable likelihood* that, had, *e.g.*, the victim communicated with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer." *Id.* at 677.

### B.    A Rational Jury Could Find Defendants Guilty of Count Three

Defendants argue that there is no evidence that Bishun was killed with the intent to prevent communication to federal law enforcement. *See* Def. Br. at 12-14. The Court disagrees.

The Government's theory in this case was not that "Pizarro and Rivera killed Bishun to prevent him from reporting to a specific, identified group of law enforcement officers," Gov. Br. at 20, but rather that "the defendants murdered [Bishun] 'with an intent to prevent communication with law enforcement officers generally.'" *Id.* (quoting Tr. 2053). Accordingly, the Government then had to establish that it was "reasonably likely under the circumstances" that, if he had not been killed, Bishun would have made a relevant communication to a federal

officer. *Fowler*, 563 U.S. at 677-78. The evidence at trial was sufficient for a rational jury to find the Government met this burden.

At trial, the jury heard from two witnesses who established facts from which the jury could infer that both Defendants killed Bishun to prevent him from reporting their crimes to law enforcement. First, Mark Srikishun testified that he overheard Bishun tell the robber in black that "he [Bishun] was a federal informant," to which the robber in black responded in a surprised and angry manner, "you're a fucking snitch?" Tr. 151. Srikishun also testified that the robber in white was within hearing distance of this conversation. *See* Tr. 152-53. Afterwards, the robber in black told the other robber to "hurry up and get Marlena in the trunk," Tr. 151, and the two robbers continued with the kidnapping and robbery, and ultimately Bishun's murder. The Government contended that, based on the evidence at trial, the robber in black was Pizarro, and the robber in white was Rivera. *See* Tr. 1797.

Second, Haynes testified that during a conversation at a car wash the day after the murder, Pizarro told another individual, Kasheem Samuels, that he did not get any proceeds from the robbery because Bishun "told me he was a federal informant." Tr. 945, 951-52. Haynes was present for this conversation. *See id.* According to Haynes, immediately after saying this, Pizarro then made "a wrap-around motion" and a "guttural, throat-clearing sound." Tr. 945, 950. It was Haynes' understanding that the motion and noise indicated that Pizarro "killed [Bishun]," because "[Pizarro] said [Bishun] was a federal informant." Tr. 951. Additionally, in response to the Government's question, "what, if anything, did [Pizarro] say about whether or not there was some additional reason why he had to deal with the federal informant?" Haynes replied, "[h]e" knew his face," referring to Bishun and Pizarro, respectively. Tr. 952.

The foregoing evidence was also sufficient for a rational jury to find the Government established that it was "reasonably likely under the circumstances that (in the absence of the killing) at least one of the relevant communications would have been made to a federal officer." *Fowler*, 563 U.S. at 677-78. Specifically, the jury reasonably could have concluded that Defendants were informed that Bishun was a federal informant and formed their intent to kill him after learning that he was such an informant based upon the belief that he would otherwise have reported the robbery and kidnapping by Defendants to federal officials. The jury could have interpreted Haynes's testimony as evidence that Pizarro believed Bishun would be able to identify his face to law enforcement officials as a participant in an attempted armed robbery, and therefore that Pizarro felt he had to murder Bishun. And the jury had a basis for concluding both that Bishun might do this and that Pizarro might fear it. The jury heard evidence of Bishun's prior arrest and ongoing cooperation with federal authorities, and evidence of Bishun's affirmative obligation to provide information to the federal government under his cooperation agreement. *See* GX 1010; GX 1203; Tr. 1156-57. Such evidence demonstrated "that the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical." *Fowler*, 563 U.S. at 678. Moreover, the jury saw evidence from which it could infer that Pizarro knew that informants spoke with federal law enforcement officers. *See* GX 701A (social media evidence). Thus, while Defendants did not have "a particular individual or a particular set of individuals" in mind that they wanted to prevent Bishun from communicating with, *Fowler*, 563 U.S. at 673, there was sufficient evidence from which the jury could have concluded that the elements of 18 U.S.C. § 1512(a)(1)(c) were still satisfied. *Fowler*, 563 U.S. at 677-78.

Defendants make three arguments to the contrary: they challenge the Government's reliance on Haynes's testimony, they argue that other evidence introduced by the Government undercuts its intent showing, and they maintain that the Government introduced insufficient evidence of Rivera's intent. For the following reasons, these arguments are unavailing.

First, Defendants contend that Haynes's testimony was insufficient to prove the requisite intent beyond a reasonable doubt because Haynes's responses were based upon assumptions and leading questions from the Government. *See* Def. Br. at 8-9. This is incorrect. After the first time he made the "wrap-around motion" and the "guttural throat-clearing sound," Haynes stated that he "assumed" Pizarro was saying he killed Bishun, "because he saw my face." Tr. 945, 946, 950. Pizarro's counsel objected, and the Court held a sidebar to discuss how to proceed with questioning the witness. *See* Tr. 947-49. Following the sidebar, the Court instructed Haynes to "respond to the questions with what you know and not with assumptions or speculation." Tr. 950. Haynes then provided the answers discussed above. Thus, notwithstanding Haynes's initial comment, the jury could credit Haynes's testimony that Pizarro had admitted that he made the decision to kill Bishun after learning that Bishun was a federal informant. Defendants' final argument—that Haynes' statements are "shaky testimony," Def. Br. at 13—goes to the "weight of the evidence, not to its sufficiency," and accordingly is not a basis for acquittal under Rule 29. *Parker*, 903 F.2d at 97.

Second, Defendants argue that the Government's introduction of social media evidence in which Pizarro made disparaging remarks about informants undercuts its proof of the intent requirement of Count Three. *See* Def Br. 12-14. Defendants state that the "government cannot have it both ways. Killing Bishun because Pizarro advocated violence against informants as a group is drastically different from killing Bishun to prevent him from reporting a crime to federal

law enforcement." *Id.* However, a rational jury could conclude these two points of evidence need not be in conflict. The social media evidence the Government put forth, *see* GX 701A at 197-98, could suggest to a rational jury that Pizarro had general animosity towards informants. Yet that does not undercut the evidence shown at trial, from which a rational jury could conclude that Pizarro and Rivera's plan at the Shop changed once they learned that Bishun was a federal cooperator.

Additionally, the jury was properly instructed that "[t]he intent to prevent communication with federal law enforcement need not be a Defendant's sole motive in killing Robert Bishun for that Defendant to be guilty of this offense." Court Exhibit 2 at 45; *see also United States* v. *Technodyne LLC*, 753 F.3d 368, 385 (2d Cir. 2014) ("It is commonplace that the law recognizes that there may be multiple motives for human behavior; thus, a specific intent need not be the actor's sole, or even primary, purpose."). Thus, a rational jury could conclude that Defendants had other motivations for killing Bishun and still find this element satisfied.

Third, Defendants argue that there was insufficient evidence from which a rational jury could have found the requisite intent as to Rivera. They point out that no social media evidence was introduced as to Rivera, nor did Haynes provide any testimony about Rivera. *See* Def. Br. at 6, 14. However, as discussed above, the evidence at trial showed that Rivera was present during the conversation Pizarro had with Bishun in which Bishun stated that he was a federal informant. *See* Tr. 152-53. And, after hearing this comment, the trial evidence showed that Rivera continued to participate in the robbery, kidnapping, and then the eventual murder of Bishun. Together with the reasonable inference that Rivera participated in the murder in order to prevent Bishun from reporting Rivera's crimes to federal law enforcement, this evidence was sufficient for a rational jury to find Rivera guilty of Count Three. At most, Defendants' objections go to

weight rather than sufficiency—a matter to argue to the jury, not this Court. *See Parker*, 903 F.2d at 97. Accordingly, crediting this evidence and the jury's reasonable inferences in the Government's favor, *see Morrison*, 153 F.3d at 49, the Court denies Defendants' motion as to Count Three.

Having addressed all of Defendants' arguments as to Rule 29, the Court turns to the arguments Defendants made in their supplemental motions pursuant to Rule 33.

## VI.    RULE 33 LEGAL STANDARD

Under Federal Rule of Criminal Procedure 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Nevertheless, although a "trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, . . . it nonetheless must exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'" *United States v. Ferguson,* 246 F.3d 129, 134 (2d Cir. 2001) (quoting *United States v. Sanchez,* 969 F.2d 1409, 1414 (2d Cir. 1992)). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *Id.* "Because the courts generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility, it is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." *United States v. McCourty*, 562 F.3d 458, 475-76 (2d Cir. 2009) (quotation and brackets omitted). "In short, where the resolution of the Rule 33 motion depends on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." *Id.* at 476 (quotation and brackets omitted). However, "[w]here testimony is patently incredible or defies physical realities, it may be rejected by the court, despite the jury's evaluation." *Sanchez*, 969 F.2d at 1414.

## VII.  DEFENDANTS' RULE 33 ARGUMENTS

Defendants raise several arguments in their supplemental briefs.  The Court addresses

each argument below and concludes that none warrant a new trial pursuant to Rule 33.

### A.    Descriptions of Robbers

Both Defendants argue that the surviving victims of the 2016 attempted robbery, Magda

and Srikishun, provided descriptions of the robbers that do not match Defendants.  *See* Rivera

Supp. Letter at 1-2; *see* Pizarro Supp. Letter at 5.  The Court concludes that this concern does not

justify a new trial.

The victims of the 2016 robbery provided the following descriptions of the robbers.

Magda and Srikishun both described one robber wearing dark clothing and the other wearing

light clothing.  *See* Tr. 84, 143-45.  Magda testified that the robbers had dark skin around their

eyes.  *See* Tr. 84-85.  Srikishun testified that the robber in dark clothing was approximately 6 feet

tall, and was heavier and had a darker complexion than the other robber.  Tr. 143-45.  The other

robber, in light clothing, was approximately 5'7" or 5'8."  Tr. 145.  As discussed above, the

Government contended based on the evidence at trial that the robber in dark clothing (sometimes

referred to as black clothing) was Pizarro, and the robber in light clothing (sometimes referred to

as white clothing) was Rivera.  *See* Tr. 1797.

Defendants argue that there is an inconsistency between these descriptions and their own

physical appearances, and that a new trial is therefore warranted.  Defendants focus, in particular,

on the difference between their actual heights and what Magda and Srikishun recounted at trial.

Pizarro is 5' 8", and Rivera is 5'10"—meaning that Magda and Srikishun's height estimates

were incorrect by as many as four inches.  *See* Pizarro Supp. Letter at 5, Rivera Supp. Letter at 1.

However, the argument regarding the incorrect height estimates was already made to the jury,

*see* Tr. 1954-57, where it was a part of their reasonable "resolution of conflicting evidence and assessment of witness credibility." *McCourty*, 562 F.3d at 475-76. Moreover, Magda and Srikishun's observations of the perpetrators were made primarily while they were on the ground or after their feet and hands were bound by Defendants—thus, a rational jury could also infer that they were not in a position to make a precise assessment of the perpetrators' heights. In light of its obligation to defer to the jury's assessment of this evidence, *see id.*, the Court concludes that Defendants' concern does not weigh in favor of a new trial.

**B.  Rivera's DNA Evidence**

Rivera argues that the only evidence of his guilt on the substantive counts in the Indictment was his DNA on the steering wheel of Bishun's car on the night of the murder—and that his DNA could have accidentally or intentionally been transferred from Pizarro's SUV to Bishun's car by someone else. *See* Rivera Supp. Letter at 2-3. This argument was raised by Defendants at trial, *see* Tr. 1963-68, and therefore was a part of the jury's assessment of the evidence. The Court sees no reason to conclude that the issue presents an "exceptional circumstance[ ]" that justifies departure from the jury's assessment. *United States v. Ferguson*, 246 F.3d 129, 133-34 (2d Cir. 2001). Rivera also ignores the existence of additional evidence presented at trial showing his presence in the vicinity of the Shop on the day of the murder and his coordinating activities with Pizarro in the vicinity of the Shop in the days leading up to the murder. *See, e.g.*, GX 901; GX 501; GX 17; GX 43; GX 707C. Accordingly, Rivera's argument as to the DNA evidence is insufficient to justify a new trial.

**C.  Haynes' Credibility**

Pizarro also argues that the Court should question cooperating witness Haynes' credibility. *See* Pizarro Supp. Letter at 3-4. However, under Rule 33, the Court cannot disturb a

jury's credibility determination unless that witness's testimony is "patently incredible or defies physical realities." *Sanchez*, 969 F.2d at 1414. The Court concludes that it cannot disturb the jury's credibility determination of Haynes.

Pizarro argues that the Court should question Haynes' credibility because Haynes testified pursuant to a cooperation agreement, had previously lied in an unrelated court proceeding, and shared a romantic interest with Pizarro. *See* Pizarro Supp. Letter at 3-4. However, Pizarro provides no authority for this Court to conclude that these factors make Haynes' testimony "patently incredible." *Sanchez*, 969 F.2d at 1414. The Second Circuit has previously held that even when a witness testified under a cooperation agreement, breached that agreement, and had a criminal record and history of alcohol and drug abuse; when the government effectively repudiated the witness's testimony; and when the witness's attorney asserted that the witness had perjured himself, the district court should not have concluded that his testimony was incredible as a matter of law, and instead should have deferred to the jury's assessment of the witness' credibility. *United States v. Truman*, 688 F.3d 129, 139-40 (2d Cir. 2012). Measured against this high standard, the Court sees no basis to second-guess the jury's determination as to Haynes' credibility in this case.

Moreover, there is evidence in the record that corroborates parts of Haynes' testimony, such that the Court cannot conclude that Haynes' testimony was patently incredible. For example, Haynes testified that Kasheen Samuels and Pizarro spoke by phone the day after the murder, and that, as discussed above, he and Samuels then met with Pizarro at a car wash on Jerome Avenue in the Bronx, where Pizarro confessed to the murder. *See* Tr. 941, 950-52. Cellphone location and toll records show the calls between Samuels and Pizarro in advance of the meeting, as well as Pizarro's presence in the vicinity of the car wash. *See* GX 901.

Additionally, Haynes testified that he, Pizarro, and Samuels had attempted to rob Bishun at his shop on three consecutive days in April 2016. *See* Tr. 878-79. Corroborating this account, cell phone location data shows Pizarro and Samuels in the vicinity of Bishun's shop on several consecutive days in early April. GX 901.

For all of these reasons, Pizarro's argument as to Haynes' credibility is insufficient to justify a new trial.

### D.    Circumstantial Evidence

Next, both Defendants argue that a new trial is warranted because of the Government's reliance on circumstantial evidence that is insufficient to support the verdict. *See* Rivera Supp. Letter at 2-3; Pizarro Supp. Letter at 1, 3, 4-5. But a "jury's verdict may be based entirely on circumstantial evidence," *Sureff*, 15 F.3d at 228, and, as explained above, there is sufficient circumstantial evidence to support its verdict in this case. Accordingly, this argument is insufficient to grant a new trial.

### E.    Defense Case

Further, Pizarro argues that the evidence of his guilt is undermined by the defense case presented at trial. *See* Pizarro Supp. Letter at 5-6. However, his defense case was of course presented to the jury, *see* Tr. 1649-78, and the mere existence of a defense case is insufficient to justify disturbing the jury's evaluation of its strength or weakness. *See Sanchez*, 969 F.2d at 1415. Accordingly, this argument is insufficient to grant a new trial.

### F.    Prejudice of Joinder of 2015 and 2016 Crimes

Finally, Pizarro argues that the jury may have been unduly influenced in its disposition of the counts relating to the abduction and murder of Bishun (Counts One through Six) by the

allegations relating to the robbery of Bishun in 2015 (Counts Seven through Nine). Pizarro Supp. Letter at 6.

However, the Court already concluded, prior to trial, that severance of Counts Seven through Nine was not warranted, and that Defendants had not made the required showing that "substantial prejudice" would result from continued joinder of the 2015 and the 2016 crimes. *See* Dkt. No. 63 at 10 (quoting *United States v. Sampson*, 385 F.3d 183, 190 (2d Cir. 2004)); *see generally* Dkt. No. 63. At Defendants' request, at trial, the Court gave a clear limiting instruction to the jury:

> Limiting instructions: Instruction No. 53: 2015 evidence. Each count is a separate offense or crime. Each count must therefore be considered separately by you, and you must return a separate verdict on each count. Moreover, you may not consider evidence of the 2015 counts as proof that either of the defendants had the propensity or predisposition to commit the other crimes with which they are charged.

Tr. 2085. This clear limiting instruction cured any risk of prejudice to Pizarro. *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

Pizarro, citing to *United States v. Jones*, 16 F.3d 487 (2d Cir. 1994), argues that even the strongest limiting instruction could not prevent the jury from importing over 2015 evidence to the 2016 crimes, and vice versa. *See* Pizarro Supp. Letter at 6. However, *Jones* is inapposite. In that case, the Second Circuit held that a limiting instruction was insufficient to avoid prejudice to the defendant because the district court judge simultaneously cautioned a jury not to use evidence of the defendant's prior felony conviction in deciding the counts in the case, while reminding the jurors repeatedly that the defendant was a convicted felon. *Jones*, 16 F.3d at 492-93. That did not occur here. Accordingly, Pizarro's "generalized claim of prejudice is insufficient" to justify a new trial. *United States v. Rivera*, 546 F.3d 245, 254 (2d Cir. 2008).

## VIII. CONCLUSION

For the foregoing reasons, Defendants' Rule 29 and Rule 33 motion is denied. This resolves docket numbers 277, 312, and 349-51.

SO ORDERED.

Dated: July ___, 2019
New York, New York

ALISON J. NATHAN
United States District Judge