UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────┐
│ USDC SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #:_____       │
│ DATE FILED:  10/29/2020     │
└─────────────────────────────┘
```

United States of America,

–v–

Robert Pizarro,

Defendant.

17-cr-151 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

The Court received the attached pro se motion for compassionate release, pro se motion to vacate, and supporting documents by mail.  The Court sets a briefing schedule for each motion as follows:

- The Government shall file a response to the motion for compassionate release by November 9, 2020.  Mr. Pizarro may file a reply by November 20, 2020.
- The Government shall file a response to the motion to vacate by January 1, 2021.  Mr. Pizarro may file a reply by March 1, 2021.

Mr. Pizarro should file any further papers in this case by mailing them to the Court's Pro Se Intake Unit, United States Courthouse, 500 Pearl Street, Room 200, New York, New York 10007, and not to Chambers.  The Clerk of Court is respectfully directed to mail a copy of this Order to Mr. Pizarro and to note the mailing on the public docket.

SO ORDERED.

Dated: October 29, 2020
       New York, New York

_____
ALISON J. NATHAN
United States District Judge

THE DISTRICT COURT OF NEW YORK
FOR THE SOUTHERN DISTRICT OF NEW YORK

ROBERT PIZARRO PRO SE
PETITIONER

V.

UNITED STATES OF AMERICA
RESPONDENTS

CASE NO. 1:17-cr-00151 (AJN)

COVID(19)PANDEMIC COMPASSIONATE
RELEASE FOR GOOD CAUSE EX-TRAORD-
INARY CIRCUMSTANCES & ACTUAL,FACT-
INNOCENCE SUPPORTED BY THE RECORD



RECEIVED
10/19/20
ALISON J. NATHAN
U.S. DISTRICT JUDGE
S.D.N.Y.

MOTION

COMES NOW PRO SE PETITIONER ROBERT PIZARRO AND respectfully request that
this Honrable District Court JudgeAlisonJ.Nathan assist the prisoner in ac-
**hiving release** from prison due to the present COVID PANDEMIC KILLING
BOTH LATINO & AFRICAN AMERICANS AT AN ALARMING RATE AND DISPROPORTION-
ATELY OVERALL IN THE COUNTRY.Moreover that petitioner has extra-ordinary
exceptions of not only COVID but the present case of actual,factual inno-
cence claims for relief on appeal,and submitted to this court presently
for review to alter,amend,or vacate the present sentence for good cause
and manifest,miscarriage,of justice to petitioner.Furthermore the pris-
oner has obesity and hypertension that he requires medication for.As an
african american prisoner in the justice system he does not stand a chance
of survival if he becomes sick or disable.In the (BOP)he will probably be-
come totally disable or incopassitated. Therefore because of these and on
the record events of the COVID and the presnt Pandemic circumstances the
requests  the Compassionate Release and or Home Confinement until the Pan-
demic is resolved and his case is sufficiently resolved.So,Prays the Petit-
ioner.

Respectfully Submitted By

Robert Pizarro # 69026-054

PG.2

## CERTIFICATE OF SERVICE

ON THIS DAY OF _October 13_ 2020 I SENT A COPY OF THIS  MOTION TO
THE CLERK OF THE COURT.

RESPECTFULLY SUBMITTED BY

_Robert Pizarro_ # 69026-054

United States District Court
For The Southern District of New York

Robert Pizarro Pro Se
Petitioner

Case No: 17-cr-151(AJN)

V.

United States of America
Respondents

MOTION
Actual/Factual Innocence Claim

Comes Now Pro Se Petitior Robert Pizarro and request that this court hold his pro se brief to a less stringent Standard, than one filed and prepared by a seasoned lawyer. Thomas V. Eby, 481 U.S. 434, 440 (6th Cir. 2007); Haines V. Kerner, 404 U.S. 519-21 (1972). In Support of petitioners present brief he asserts the following grounds for relief.

1. Actual/Factual Innocence (Bousely v. United States, (1998))

2. Counsel failed to protect defendant from insufficient evidence for conviction. See. (Strickland v. Washington, 466 U.S. 688, 690 (1984): In conjunction with adversarial challenging of the case to protect defendant from uncorroborated testimonies of government Witnesses. (Brady v. Maryland, 373 U.S. 83 (1963)).

3. Counsels failure to protect defendant from or supress prosecutions evidence of numerous uncorroborated insufficient evidence that prejudiced defendants opportunity at a fair trial and fair result in his court proceedings. 5th, 6th, and 14th Amendment violations to defendant.

4. Trial counsels failure to raise insufficient evidence issues and motion to the court at the end of trial or move for dismissal based on insufficient evidence constituted ineffective assistance of counsel. (Kimmelman v. Morrison, Strickland) Thus underminding confidence in the trial and court proceedings. Can not be relied upon as having produced a just result. See (Rule 29 Fed. R. Crim. Proc.)

5. Counsels failure to supress no eyewitness accounts or corroborated evidence to convict. As defendent being the actual perpetrator of the alleged crimes. See (Kimmelman v. Morrison, 477 U.S. 365 (1986)); (Wright, 608 A. 2d 763 (4th Amendment)); (Hockman v. United States, 517 A. 2d 44, 48-52 (D.C. 1986) (statements)). Bouseley v. United States, 523 U.S. 614, 140 L. Ed. 2d. 828, 118 S. Ct. 1640 (1998). Defendant is actually factually innocent of the crimes he has been accused of perpetrating.

Trial Counsel failed to challenge erronous jury instructions of numerous uncorroborated testimonies of no DNA, forensic or eyewitness account of said murder, that defense counsels arguments to the jury cannot substitute an instruction of the court to the jury. This prejudiced defendants due process, equal protection of the law and exposed defendant to an 8th Amendment violation of cruel and unusual punishment. See (Carter v. Kentucky, 450 U.S. 288, 67 L. Ed. 2d 241, 101 S. Ct. 1112 (1981)); (Goodwin v. Balkom, 684 F. 2w 7694 (11th cir. 1982)). Trial counsels arguments can never substitute for a jury instruction. See also (Strickland v. Washington (1984)).

6. Counsel failed to challenge lack of <u>mens rea</u> jury instruction to convict that every single element of the crime <u>must be proven beyond a reasonable doubt</u> as to the premeditation, mind set, criminal culpability and intent, of the murder of decedent. See also erronous jury instruction of aiding and abetting that could not/can not be proven beyond a reasonable doubt. See (Wilson-Bey V. United States (2005)) and Congressional oversite of <u>mens rea requirement necessary to convict.</u> See also Supreme Court decision in (<u>Bailey V. United States</u> (1995), Pub.L. 105-386  1 (A)(1), 112 Stat. 3469, Cong. Rec 26608.)

7. Counsel failed to protect defendant from exculpatory evidence within the indictment of unreliable facts to support probable cause and grand jury particulars. See. Rules 6 and 6(f) grand jury procedures. See also (<u>Strickland Kimmelman</u>)

8. Counsel failed to cross-examine important government witnesses that made unreliable uncorroborated statements to initiate investigation and indictment, arrest or defendant that was a denial of the confrontation clause of the 6th Amendment to the Constitution. See (<u>Strickland V. Washington</u> (1984))

9. Counsel failed to challenge correctly cell phone pinging and usage by and through illicit cite locations utilized by the government illegally. See (Carpenter V. United States, (2015)). In conjunction with conspiracy and unsupported affidavits submitted by D.E.A agents about uncorroborated murder and drugs that were never recovered or seen, nor arrest in conjunction with this made-up conspiracy. See (Brady V. Maryland); (Jenks v. United States) and Jenks material never sumitted and withheld from defense.

10. Counsel failed to protect defendant from discriminatory voire dire of the jury by government and court, when it was agreed that three black jurors be excluded because one was "seating to far away from every one else", and any another was "a social worker", and the third had not "finished college education". This is a clear violation of the equal protection and due process laws of the United States constitution, and Federal, State laws of prejudice and bias. See. Fed. R. Crim. Proc.  Fed. R. Civ. Proc. This is/was clearly prejudical to defendant, trial cannot be relied upon as having produced a just result. See also. (Baston Claim) where the jury does/did not reflect the true essence of piers and has been racially picked with prejudical bias and intent by the overall court and prosecution, in favor of to convict. See. Fed. Rules of Crim. Proc. Rule 703 Basic Fact means the fact or group of Facts that give rise to a presumption. The Fact is extent as the record reflects the Baston Claim.

(1)

# Statement Of Facts / Pertinent Facts
## And Argument

1. The Record will reflect that the Prosecution on this high profiled Capital case of Robert Pizarro, Knowingly gave false and fabricated information on all affidavits for probable cause to secure warrants.

It was "Alleged" that on March. 6, 2017 a federal grand jury in the Southern District of New York, returned a five-count indictment and arrest warrant issued the same day, for defendant.

Pizarro was arrested and detained on the early morning of March. 16, 2017 in Elizabeth, New Jersey by D.EA for the alleged crimes of 1951 Hobbs Act Robbery, 1201 Kidnapping Resulting in Death, and Conspiracy to do both with 924c.

The same day defendant is provided Court appointed Counsel Elizabeth E. Macedonio, who at that very time consented (unbeknown to defendant) to defendant Pizarro's detention on a high profile capital case that rendered the death penalty. See (attachment 1B); See also (Docket Sheet No. 7)

The alleged indictment could have not produced a true bill. See (attachment 1A-1A6) If said indictment produced a true bill, Court appointed counsel would not have to consent to detainment illegally.

(2)

    Violating defendants due process and equal protection right provided by the United States Constitution. That "no person" shall be held to answer for a capital crime or otherwise infamous crime, unless on a presentment of indictment by a grand jury. (This standard of indictment was produced by the United States Attorney's Office, and is not/was not a true bill of indictment. Previewed or authorized by the grand jury) Nor should defendant have been deprived of life, liberty or property upon purportment of the phony indictment by the government, without due process of law. 6th Amendment right to effective assistance of counsel throughout the entire criminal proceeding is the official position of counsel and should not have been abridged.

    By and through these numerous violations by counsel exposing defendant to an 8th Amendment violation of the U.S. Constitution, and also defendants rights. Which subject defendant to cruel and unusual punishment. Along with 13th Amendment violation of imposing neither slavery nor involuntary servitude, except as punishment for crimes where the party shall have been duly convicted. 14th Amendment violations of infringing on defendants constitutional liberties as a citizen of these United States.

(3)

Furthermore, defendant Pizarro can/will prove his innocence at this time throughout this entire motion, with non-argumentive evidence. The government along with all five court appointed counsels, including members of the N.Y.P.D., in concert, aided and abetted eachother in conspiring, to maliciously, intentionally, with malice and bad-faith. Purposely caused premeditated pertinent and gravely harm to defendants, through Knowingly false, fabricated, misleading, created, and illegally obtained evidence, to convict, and sentence defendant to life in the penitentiary.

Seven months after defendant was detained illegally. Bail hearing is granted. Defendant then finds out for the first time that his detention is/was on consent without prejudice, by defense court appointed attorney. By this time defendant is granted two more court appointed attorney's. Louis Freeman and Carla Sanderson. The Court seems rather surprised at bail request. See (document 45. pg. 3. 12-19) Court.
"Let me layout the back ground, which is that at his initial appearance Mr. Pizarro consented to detention without prejudice, and now I recieve a letter requesting bail". Court appointed attorney Carla Sanderson refies replies. See. (pg. 5. 10-12)
"I understand this is a presumption case and the defendant has the burden at this point to show that Pretrial detention is not absolutely necessary".

(4)        See. (pg.5, 25 pg.6.1-3) "On 'both' of the charges there's no ID evidence, there's no eyewitness, and there's no DNA placing Mr. Pizarro at the scene of 'either' crime." "And there is no statements or admissions by Mr. Pizarro"

Without any evidence of this magnitude, how can a grand jury possibly return a true bill? In the dictionary Consent is defined as to agree, give permission. Agree is to assent, accept, allow, approve, sanction, accede, and go-ahead, which can be inferred as pleading guilty. Again, this is a Capital case that render the death penalty. Nor does/did defendant accept life imprisonment. Thus these charges and alleged indictment should be immediately dismissed. See. (Bousley V. United States, (1998)) Thus without any evidence, there is no case and defendant should be RELEASED IMMEDIATELY.

Court appointed defense counsel advised defendant to waive the public reading of the charges of said indictment onto the record at March. 20, 2017 arraignment. This prejudiced defendants opportunity to a fair trial, fair court proceeding. See (Davis V. United States, 417 U.S. 333, 342, 41, L. ED. 2d 109 (1974)). See also (Sanders v. United States (1963)); (Kaufman v. United States, (1963)) Where the court held that the procedure in the above mentioned cases were defective in the grand jury and indictment was also defective. There exist no information supported by oath or affirmation. No probable cause hearing conducted in open court to procure a true bill, applicable to defendants case.

(5)     Court appointed attorney's <u>would not</u>/<u>have not provided</u> defendant with original said indictment minutes. Even after defendant continuously and adamently throughout the entire proceeding asked for them to do so. See (attachments 1C-1E1 and 3G, 3G1) Which is Jenks material.

A person in federal custody can challenge any grand jury irregularities or the grand jury voire dire and particulars within seven days of notification that there is a pending indictment. On the grounds of procedural irregularities. The defendant must allege substantial failure. See (28 U.S.C. 1861, 1862 et. seg.)

By and through counsels deficient performance and negligence to examine the indictment process and procedure. Prejudice defendants opportunity at a fair trial and a fair result in his court proceedings. See (<u>Strickland v. Washington</u>, 466 U.S. 688, 690 (1984))(Where <u>deficient performance always prejudices a defendants Due Process</u> and <u>6th Amendment rights</u> to a fair and impartial hearing and effective assistance of counsel).

Defendant states to court counsel about defects to said indictment, and particulars. See (attachments 1A-1A6; 1G-1I)(At this point in time defendant believes he is actaully indicted) <u>There exist no true bill</u>, and <u>said indictment did not included all elements</u> to prosecute or convict. When defendant presses this issue, Court appointed counsel asked "<u>Who is helping you</u>" then provided another false indictment. See (attachments 1A7, 1A8)

(6)     Defense Counsel was deficient in not protecting defend-
and from 4th and 5th Amendment violations of unreasonable
searches, seizures, due process, and equal protection
under the law. Prejudiced defendants opportunity at
a fair court proceedings. In which these Constitution
violations were/is intentional. See (In re Winship,
397 U.S. 358, 354, 90, S. Ct. 1068, 25 L. Ed. 2d.
368 (1970)); (Francis V. Franklin, 471 U.S. 307 30-105
S. Ct. 1965, 85 L. Ed. 344 (1985)

       There should have been challenges made be counsel
to grand jury particulars, Voire dire, and indictment within
seven days, persuant to Rules 6 and 6(f) in conjuction
with grand jury violations. See (Blakely V. Washington,
542 U.S. 296, 159 L. Ed. 2d. 403, 124 S. Ct. 2531
(2004))

       All warrants are/were illegally obtained and ex-
ecuted out of jurisdiction in which they were issued
and intended, in violation of the law. See (attachment
2A) The Agents all drove the vehicle back to New York
from Elizabeth, New Jersey. See (attachment 2C-2)
No tow information.

       All warrants state: "Officer executing this warrant
or an Officer present during the execution of the
Warrant MUST prepare an inventory as required
by law and promptly return this warrant and
inventory to clerk of the court".

(7)    Signed off by Hon. Barbara Moses and initials by unknown Marshal. See (attachments 2A, 2A1 ; 3A, 3A1)

N.Y.P.D. Officers from the 49th Precient in the Bronx, New York Vouchered and inventory all evidence. See (attachments 2C2 - 2C11 ) 16 days later. (March. 31, 2017) which violations all warrants by law. There is no way possible N.Y.P.D was present in the execution of these warrants, executed in New Jersey. This renders every piece of evidence (GMC Yukon, Article within, Cell phone, Article within ) VOID and inadmissable, in the court of law.

All five Seasoned Court appointed attorney's that passed the barr. Stipulated to knowingly illegally obtain evidence. (Unbeknown to defendant at the time) See (attachments 2A2 - 2A3 ; 2B , 3B - 3E1 ) This is after they knowingly filed fraudelent supression for the same illegal evidence. See (attachment 3H) See (Strickland v. Washington (1984)) Also counsel would not appeal any motion defendant told them to. See (attachments 3H - 3H1) ; (3H2 - 3H6)

Had These protections of a constitutional magnitude been utilzed by court appointed defense counsel, the outcome of the defendants court proceedings would have been differ-ent. Enough to undermine confidence in the prosecut-ions case.

The injustices that's seen in this capital case, and through-out the pertinent motion is very distrubing. It's

(8)     <u>intentional</u>, and it is a <u>premeditated criminal act</u>
by the government and defense attorney's in concert,
to leave the defendants in a <u>uncureable gravely pre-
dicament.</u>

  To meet fairness and decency of a due process
violation of the United States constitution. One
must prove that the governments outragous Mis-
conduct to achieve conviction of a defendant is
in violation of the entire judical and process and
the 14th Amendment gurantees of a citizen of the
United States protections. See, (<u>United States v.
Al-Kassar</u>, 660 F. 3d 108, 121 (2d cir. 2011) Indeed
the exsistence of a due process violation must
turn on whether the governmental conduct, standing
alone, is so offensive that it shocks the conscience.
(<u>United States v. Chin</u>, 934 F. 2d 393, 398 (2d. cir.
1991)) (internal quotation marks omitted).

  Throughout this present brief defendant Pizarro
can /will prove beyond a reasonable doubt that the
evidence he is presenting will prove his <u>absolute
innocence</u> and <u>exonorate him completely</u>. (<u>Bousely v.
United States</u>, (1998)) And also the governments out-
ragous misconduct along with all five court appointed
defense attorney's, and members of the N.Y.P.D, aided
and abetted et eachother to do the same. See,
(<u>United States v. Cuervelo</u>, 949 F. 2d 559, 565
(2d. cir. 1991); (<u>Marshank</u>, 777 F. Supp. 1507 (N.D.

(9)    Cal. 1991) Finding outrageous government misconduct where the Government used defense attorney to aid Investigation and the taint of the governments constitutional transgression infected every part of the investigation and prosecution of the defendant.

In document 184. pg. 16 the government argues and States: "The Government respectfully submit that it's 'errors' share none of the outrageous and 'coercive' characteristics present in the 'extremely rare' cases where due process violations were found." (this is after several Brady violations) Defendant will prove with submitted pertient evidence, that the government changed and created evidence. Argued Knowingly fraudelent, misleading, fabricated evidence throughout the entire proceedings. Also coerce crucial witnesses, along with N.Y.P.D. Officers. In violation of the 4th, 5th, 6th, 13th, and 14th Amendment of the United States Constitution.

Moreover that the intentional violations were perpetrated to convict, and sentence defendant to life imprisonment. Whereas in United States v. Aguilar, as in defendants present motion asserts all forementioned grounds for relief. Again, See. (Aguilar, 831 F. Supp. 2d 1180 (C.D. Cal. 2011)(dissmissing indictment where the Government failed to

(10)   Produce false grand jury testimony from case
Agent; Procured search and seizure warrants
through materially false and misleading affidavits;
improperly obtained evidence; Violated Court orders,
questioned witnesses improperly; failed timely to
Produce information required under the Jenks
Act; and engaged in improper behavior during
closing arguments)
     See (all probable cause, affidavits, and proceed-
ings) Gov't States: "When Officers 'canvassed' the
Shop they found a 'Home Depot Bag' Containing
Zipties similar to those used by the robbers.
They were able to lift 'A' print from the 'Home
Depot Bag' which N.Y.P.D. analysts match to
Robert Pizarro." (This is for the alleged 2015 Robbery)
     The government has proposition false evidence knowingly
contrived to illicitly forge affidavits, fabricating, creat-
ing evidence to prosecute defendant. There was never
any zipties entered into evidence or collected for the
alleged 2015 robbery.
     The government proffers they have defendant Pizarro's
finger print on a Home Depot bag, then a year later change
the bag to a Ziptie bag. Defendant is arreigned on
March, 20, 2017. At this time the government does not
allege any of this said evidence. See (document 138 pg.
5. 1-5) Gov'T: "Items recovered from Mr. Pizarro's

(11)   Vehicle at the time of his arrest. As well as item's from the 2015 robbery". (#15,000, Car key, Victims I.D) There was no "Home Depot bag Containing Zip ties" and within a "reciept" for the purchase of those zip ties. No "finger print" on an alleged "Home Depot bag". They Just alleged items from the 2015 robbery found in defendants vehicle", which is Knowingly false evidence.

Seven months later at defendants bail hearing the governments Proffered evidence changes. (See document 45. pg. 15. 3-7) Gov't: "So just briefly to walk through that, with respect to the 2015 robbery, the first robbery in which Mr. Bishun was left alive. In that situation there was this bag that your Honor noted was found with finger print evidence, fingerprints that came back to Mr. Pizarro And that "BAG" was a "HOME DEPOT BAG"

Eight months later the governments proffered evidence changes again, from a Home Depot bag to a ziptie bag. See. (document 150. pg. 6. last two paragraphs) States. "Pizarro's finger prints were found on a Home Depot bag containing zipties" and a reciept for the purchase of those zipties that was left at the scene of the robbery."

(In the very next paragraph the government Changes the bag)" The government futher notes

(12)     that the Home Depot video shows the person
'believed' to be Pizarro <u>handing over the zipties</u>
to the cashier with his <u>left hand</u>, and <u>in fact, the</u>
'<u>two</u>' <u>prints identified</u> as <u>belonging</u> to <u>Pizarro</u> on
<u>the'bag of zipties'</u> are the left thumb and
index finger". Also See. (closing summation trial pg.
21. 1790. 15-17)"Pizarro had no reason to think that
they find that'<u>bag of zipties</u>', a bag that had
not <u>one</u>, <u>not two</u>, but <u>three different</u> <u>finger prints</u>
of Robert Pizarro's".

        (The government goes from "<u>A</u>" print, to'<u>two</u>''
prints, and then '<u>three</u>'' prints.) See. (closing Summ-
ation trial pg. 19. 1787. 2-4)"That <u>bag</u> and that <u>reciept</u>,
they told you a lot. So, let's talk first about that
bag. That '<u>Clear plastic bag</u>'. For <u>heavey·duty</u>
<u>zipties</u>".  See. (closing Summation trial pg.
22. 1792. 1-7)"<u>You watched him buy</u> those <u>zipties</u>
<u>at the Home Depot</u>. That's how the prints got there,
ladies and gentleman. '<u>NOT</u>' because Robert Pizarro's
finger prints '<u>Magically</u>' <u>hopped from one piece of</u>
<u>evidence</u> to the other. No. Robert Pizarro's finger-
prints are there because he'<u>handed that zip tie bag</u>'
over two weeks before the actual robbery".

        The government is right about one thing.
Defendant Pizarro's prints <u>definitley didn't hop from</u>
the alleged <u>Home Depot bag</u>, to the alleged <u>zip tie</u>
<u>bag</u>. Then go from <u>one print</u>, <u>to two</u>, <u>then three</u>.

(13)

The evidence proves the governments proffered and Phyical evidence for the 2015 robbery is staged. See. (attachment 4H) Lieutenant Bello of the 49th precient: "Canvass conducted, Negative results" See. (attachment 4f) Sanchez: "Did respond and did not process for prints".

This is nothing about any zipties in any 2015 report. The evidence proves that Officer Sanchez didnot collect any evidence. See. (attachment 4F1, 4F3) A Police Officer named Inoa of the 49th precient collected the evidence, Which was Duct tape, reciept, and alleged plastic bag. (Comingled)

Notice the report just says "reciept" and "plastic bag". It doesn't say "Home Depot reciept", or "Home Depot bag" and definitely no zipties.

The government throughout the entire proceedings knowing give the court and jury false information. See. (closing Sommation trial. pg. 18, 1786. 14-19) States: "After the police arrive on the Scene and they enter the garage, they 'locate' some 'crucial evidence', You heard this from evidence collection Officer Sanchez. She 'collected zipties' and a shirt, of course".

At trial the government finds a way to produce a crime Scene photo which contained zipties even though there were never any zipties as the evidence proves. See. (Government Exhibit 263)

(14)   See. (attachment 4G) Lab report # 2015-006544: "gray duct tape, white paper reciept, and clear plasic bag". See. (attachment 4G-2) States: "Pires got all 3 items, reciept, duct tape, bag".

Officer Pires testified "I never examined a black t-shirt or z.pties for the alleged 2015 crime". See (trial pg. 771. 4-24)

The government tells the court and jury in their closing argument that the lab report says the z.pties and black t-shirt "did not warrant futher examine". See (closing Summation trial pg. 18. 1786, 24-25; pg.19.1787, 1)

Officer Pires also testified under oath that she doesn't know if the governments items in evidence are the same that she examined. See. (trial pg. 772. 2-14)

After all this defense counsel still failed to protect defendant from 4th, 5th, 6th, and 8th Amendment violations of due process; illegal search and seigzure entry of illicit information that prejudiced defendants opportunity at a fair trial. See. (Strickland v. Washington) (Kimmelman v. Morrison) where equal protection effective assistance of counsel were violated in conjunction with cruel and unusal punishment intentionally applied for conviction purposes by the government.

(15)   The government continue in their closing to give
knowingly false evidence. (See. Closing Summation trial
pg. 21. 1990. 17-21) Where they tell the jury that
"Officer Pires got the "bag" from the 2015 robbery".
After She testified, she did not Know".

   The false evidence is used to convict defendant
Pizarro of Murdering Robert Bishun two years
later. Thus exposing the jury to this alleged
crime that defendant was never arrested or
convicted of. This clear abuse of authority
Is more than debateable amongst reasonable
jurors, and is prejudice. See (Bousley V.
United States (1998)) Also See (Brady V.
Maryland, (1963).) Were there is actual factual
innocence of exculpatory evidence that could/
would undermine confidence in the prosecutions
case, change the outcome and result in an acqu-
ittal. Moreover the files and records of the case
did not show the conclusively defendant is not
entitled to relief. See, (Sanders V. United States)
373 U.S. 1, 19-21 (1963)

   The jury convict defendant on evidence that
prejudice him from the alleged 2015 crime that never
was (A Home Depot bag with pants that changed to
a Ziptie bag, containing Zipties that was never in
evidence.)

(16)    See.(Document 38, pg. 3, no.2) Gov. "The governments case against Pizarro is strong. As an initial matter, it should be noted that both the January 24, 2015 robbery and the September 20, 2016 robbery (Murder) and Kidnapping follow a 'Similar' 'Modus Operandi' (M.O) both involved two masked and armed men targeting the same location and 'using' 'Zip ties". The evidence from each offense should thus not be viewed in isolation but rather as part of connected pattern of conduct. In which 'evidence' from one incident 'reinforces' the evidence of Pizarro's ~~involve~~ involvement in the other."

The government tells the jury in it's closing to convict Pizarro of murder because of the evidence from 2016 robbery. See (closing summation trial pg. 16, 1782, 14-17)

If one really pays attention, it's clearly seen that the alleged 'clear plastic' bag" that could not be seen in government Exhibit 263 along with receipt is not the same in N.Y.P.D. evidence. See (attachment 4F2-4F3)

the Lab describes the evidence different. See. (attachment 4G) The government goes as far as proffering the 2015 alleged zip ties are the same used in 2016 Murder See (attachment 4G3) When defense ask for the 2015 Evidence, the government states that it is in fact in N.Y.P.D. Custody. See (attachments 4G1-4G1A) (This is 20 months after defendant is detained)

(17)  At trial a third bag (black) is proffered and testified to. See (closing summation, trial pg. 17. 1784. 2-8) (A black bag with zipties)

The manor in which these government officals handled this high profiled capital case in defaulting and frauding the court, is beyond outragous, it's criminal. Lives are on the line. Defendant childrens lives are on the line, their futures are at stake. Families lives will never be the same because of the criminal active of these government attorney's.

Detective Eric Rivera of the 49th precinct report proves Mr. Bishon found this "Home Depot reciept" in his shop (12 days later) of an on going business. (Febuary 6, 2015) See (attachments 4B, 4C,) The reciept led him to seek video survilance on Febuary 6. 2015 at 1820 hours. See (attachment 4D)

AUSA Jessica Fender proffered the alleged print led to seek surveillance video. See (document 45. pg. 16. 18-25) But, allegely, the alleged print isn't allegely identified until March, 11, 2015. See (attachment 4E)

The government watches the video over and over. They speculate wildly that the unknown male on the surveillance is in fact defendant Pizarro. They observe where this person is touching the bag. They change the Home Depot bag to the actual ziptie bag.

(18)    See (Closing summation trial pg. 19, 1787. 24-25)
Gov: "On that video there is a man, a man with
Robert Pizarro's build and skin tone".

   The government tell the jury it's defendant
on the video. See (Closing summation trial pg. 151.
2005. 19-25) Gov: "You don't just have fingerprints,
Keep in mind. You have video of Mr. Pizarro at Home
Depot holding that bag 'exactly' where those
fingerprints where found".      See. (Closing sum-
mation trial pg. 21, 1791.18-23) Gov: "those prints
was Robert Pizarro's. Three prints, two from the
left thumb and one from the left index finger. But
you knew that, you knew that because you watched
Robert Pizarro hand over those zipties when he
gave 'that bag' to the cashier". (these are the
same alleged zipties the government never had in
2015)

   The evidence proves the government speculates
from watching the video, and that's how they are able
to change the bag.  See (Closing summation trial
pg. 19. 1788. 2-5) Gov: "You can actually see that 'green
label on that bag' as the cashier pushed the zip ties
in a 'Home Depot bag'".  See (Closing summation pg.
19. 1787. 14-17) Gov: "Some body purchases one item and
one item only, plastic zipties, heavey duty. 'You can
see' that 'item number' for those ends in '02.24'
That's how you know that that 'receipt' goes with
that bag". (See Attachment 4D4)

(19)   Also See. (closing Summation pg. 19. 1787. 2-6) Gov:
"That bag and that reciept, they told you a lot. So, let's
talk first about that bag. The 'clear plastic bag', for heavy-
duty zip ties, 3.5 times stronger then regular ones.
And on the back you can see an item number that
ends in 0224"

 This evidence proved by defendant proves this is/
was how the government was able to get the same
zip tie bag, with item numbers, matching receipt.
See. (attachment 4D1-4D5) These are four Home
Depot reciepts from two different locations on two
Seprate dates. They bear the same lenght and quanity.
They all have the exact same item number. That's
how easy it is to get a reciept matching the bag.
Defendant did it from a Penitentiary.

 The issue that's distrubing is (unbeknown to defend-
ant at the time) all five defense counsel stipulated to
the Home Depot video being accurate. See. (attachment
4K) Also See. (closing summation trial pg. 19. 1787. 18-25);
(Government Exhibit 1006)

 Defense counsel also stipulated (all unknown to defendant)
that defendant Pizarro's finger prints were obtain legally and
properly back in 2009 while without anyway of Knowing
for a fact. See. (attachment 4J)

 The evidence proves no one was ever able to
identify the unknown male on the video. See. (Docu-
ment 45. pg. 15. 20-23) "Identification would not be

(20)    based on face". Also see (Document 66. pg. 11 middle)
"Resembles Pizarro".    In the government closing arguments
they tell the jury "You can't see his face, but you know it's
Pizarro". See (Closing Summation trial pg. 19. 1788-16-17)
    Suspicion, guessing, and Speculation of the
magnitude on any case let alone a capital is unconstitutional.
See (United States v. Pauling, 2nd cir.) (refering to
the language used by the Second circuit): "We may not
credit inferences within the realm of possibility when
those inferences are not reasonable". Op. at 15
    "To be reasonable an inference must be based on known
Facts". An inference is not a suspicion or a guess,
it is a reasoned logical decision to conclude that a
disputed fact exist on the basis of another fact that is
know to exist", Op. at 13
    "Speculation even if reasonable is not Enough": "There
may be reasonable speculation but it is still speculation
and therefore it is an insufficient basis on which to
rest a guilty verdict". Op. at 23
    "Proof beyond a reasonable doubt means Something":
"It would not satisfy the constitution to have a jury
determine a defendant is probably guilty". Op. at 15
    As defendant is proving with evidence, None of the
proffered and alleged, presented by the government
on this capital case can be credited as being
accurated or truthfully. See (Bousely v. United
States (1998))

(21) That the presented fact finding presented to this Honorable Court at this time does, can and will prove defendants actual, factual innocence of the present alleged crime. See. (Bagley, Naupe, Brady, Agurs, and respectively as does Bousely) Presently this motion, evidence being presented is to enlighten the Court of defendants actual, factual innocence claim,

There is reasonable need for the facts to be heard. In this present Capital case the Court will have to rule on the merits of the claims, for the case to ever be finalized in the courts own ruling allowing the statutes of (Apprendi v. New Jersey)... that every fact must be proven beyond a reasonable doubt.

Therefore and by to enhance said sentence, Judge has to take the case to the grand jury after trial. Procedures that the Judge also must make a specific record of why said enhancements were warranted in the first place. See. (Booker, Apprend, and Shepard). Due Process under the U.S. Constitution States the 5th, 6th, and 14th Amendments are rights of defendants that have willfully superceded by the government for conviction. See. (Rule 701 definition)(1). "Basic Facts - Basic" (2) "Presumption - Presumed Fact - Presumption" (3) "Inconsistent Presumption".

(22)   See. (Rule 702) "Establishment of Basic Fact"; (Rule 703) "Presumption of Ligitimacy"; (Rule 704) "Effect of Presumption".

To this very day the government is still knowingly suppressing DD5's statements for the alleged 2015 crime out of Detective Rivera's report. See (attachment 6A-5H) On discovery disc, pgs. 5-16; 18-22; 25-29; 31-32; 35-40, and 42. (This can easily be provided to the court) it is part of the record. See (Brady v. Maryland, 373 U.S. 83 (1963)); (Jenks material, necessary information for discovery purposes to defend at trial or during court proceedings.); (Strickland, Kimmelman) Deficient performance of the court appointed attorney's prejudiced, exposed defendant to cruel and unusal punishment of an 8th Amendment Violution, along with 5th, 6th, and 14th Amendment Violations of the United States Constitution. That entitle citizens of due process rights afforded him throughout all criminal proceedings.

This is why AUSA Jessica Fender makes this statement. See (document 119, pg. 78, 23-25, pg. 79) "There is a DD5 that records exactly what Mr. Bishun said to Detective Eric Rivera, basically, again, he describes, Mr. Bishun describes what happened during the course of the robbery. There are arguments that can be made about why the DD5's statements itself can come in but we concede that if we can not get the detective, we will let those statements go."

(23)    This is because those statements contradicts the governments theory that defendant comitted the act/ or acts. Therefore the evidence was suppressed, because it proves defendant is actual, factually innocence of the crimes committed by another. Again, See Bousley V. United States (1998)

Detective Eric Rivera was never called to the stand, who is the reporting officer, because the government alleged he was retired, then he moved to Florida and was in a tragic car accident. See (trial pg. 1273. 11-24)

Defendand has a constitutional right to the Confrontation Clause to Cross - examine any and all witnesses against him in conjunction with the 6th Amendment.

Futhermore the government never had defendants fingerprints on the alleged "Home Depot bag". Nor the alleged "zip tie bag", or any evidence to link defendant to the 2015 robbery. This use of the 2015 crime to convey the message that defendant was responsible for not only a robbery but for a capital murder two years later, was unreasonable to say the least. It's unethical and of course in violation of due process, equal protection of the law and constitution of the United States of America.

The only evidence proffered that was accurate is/ was defendant had been in custody and under the watchful eye of the federal government since August 8, 2013- throughout Febuary. 19, 2017.

(24)    See (attachment 4E) The alleged identification of the fingerprint was in March of 2015 (attachment 4A). Defendant could not has committed any crimes because he was on federal pre-trial detention in 2015. Defendants finger prints are constantly run through the data base every pre-trial visit.

Moreover defendant surrendered to federal authorities to a imposed federal sentence in April 2015. Where defendant serves a year and a day. Thus Federal facilities do mandatory checks of finger print records and outstanding warrants, complaints, information concerning halfway house release, such as to defendant.

Therefore any fingerprint searches would have been discovered concerning him and any other criminal activity he was alleged to be envolved in. While on Supervised Release defendant went through New York City Central Booking, where again fingerprints and searches for any warrant etc. are conducted thoroughly. Nothing ever alleged about defendants prints, let alone, an armed robbery.

The government stated in their closing: "Robert Pizarro's fingerprints did not magically hop from one piece of evidence to the other". They are absolutely right about that. Defendant also completes a signs off of federal supervison blemish free, three weeks before these crimes are alleged.

(25)    Defendant was detained for over a year by court appointed counsel, not preparing the case (capital) properly or assisting defendant. (Strickland, at 688) the government alleged evidence consist of illegally obtained, inaccurate "cell site pinging", to ~~coob~~ corroborate their forever changing theory.

The prosecution knowingly, falsely proffered illegal false and fabricated evidence to the court and jury, for conviction purposes.. See (attachment 9A, 9A1) "Target cell phone-1 (Pizarro) was in the vicinity of the location where Robert Bishun's body was eventually discovered, shortly before the body's discovery by the N.Y.P.D."

(Also, See (Carpenter v. United States, 2018) that even this alleged pinging of cellsite was illegal and illicitly obtained in violation of the 4th Amendment constraints on illegal search and seizure. Nor was this said information corroborated by any realistic evidence or resource of ~~th~~ truth.)

"Target cell phone-3 communicated approximately five times with cell phone-1 (Pizarro) while target cell phone-1 was in the vicinity of the location where Robert Bishun's body was eventually discovered, shortly before".

At trial the governments proffered evidence changes again. Now the argue defendants phone was not in the location where Robert Bishun's body was discovered because allegelly now the "phones are turned off".

(26)     See (trial pg. 1451.21-25 ; pg. 1452.1-5) also see.
(closing Summation trial pg. 27. 1800. 19-24) See (document
309. pg. 19)

Agent Wines never testified to the phones "being off".
Was he said was "there has to be some kind of activity. there
has to be a call. or a data event to generate a call detail
record with cellsite activity." The government incid-
entally reffe refered to the "phones being off".

These intentional, misleading, maliciously exe-
cuted illicit evidence used by the government de-
frauding the court to purposely prosecute, and achieve
a conviction is/was a miscarriage of justice.

Also once again the government has submitted evidence
that is non-existent, does not support or corroborate
anything about this present case. Only a continuing
changing theory to suit the prosecutions purposes for
conviction of an infamous capital crime. See.
(Wilson-Bey (2005)) Also. the mens rea criminal intent
was/is not satisfied in conjunction with this crime
for conviction purposes.

The government argues in document 202 pg. 2 (See docu-
ment) "the defendants new claim is governed by Franks v.
Delaware, 438 U.S. 154, 171-72 (1978) See, e.g., United
States v. Herron, 2 F. Supp. 3d 391, 404-05 (E.D.N.Y. 2014)
(applying Franks to a claim that the good-faith exception
was inapplicable because the government was allegally
incomplete and misleading). As discussed below, the

(27) "defendants have not made the necessary showing under <u>Franks</u> to <u>challenge the validity</u> of the CSL 1 orders". "Under <u>Franks</u>, the defendants bear the burden of showing (i) that the inaccuracy were the product of a government agents <u>deliberate falsehood</u> or <u>reckless disregard for the truth rather then innocent mistake</u>, and (2) that, after setting aside the falsehoods, what remains of the warrant affidavit <u>is insufficient</u> to <u>support a finding</u> of <u>probable cause</u>".

"<u>United States v. Coreas</u>, 419 F. 3d 151, 155 (2nd cir. 2005) (quoting Franks, 438 U.S. at 171-72)" <u>To warrant</u> or inference of recklessness, the defendants <u>must show</u> that omitted information was <u>clearly critical</u> to assessing the legality of a search. The defendants <u>cannot come close to meeting any part of their burden</u>."

The government throughout the entire court proceedings knowingly and intentionally proffered fraudulent non-existent inaccurate evidence unsupported for a infamous capital crime. There is <u>no way</u> the <u>good-faith doctrine can stand</u>. Also this <u>cannot</u> be <u>misunderstood as</u> an <u>accident</u> or <u>mistake</u>.

The also government also knowingly gives false, inaccurate, manipulating, misleading, and fabricated proffered evidence about a black SUV defendant has access to. See (document 38. pg. 3 8th paragraph) stating "the black SUV is the <u>same make and model</u> as the one observed

(28)    "On video Surveillance". Upon trial the governments proffered evidence changes once again. Were none of these Surveillance videos show or provides the black SUV seen make or model. See (Trial pg. 1627.13-25); (pg. 1628.1-25).

Even though it is proven with video evidence, that no vehicle or person can be identified, they continue tell the jury that it is in fact the same SUV and defendant Pizarro seen on video. See (Trial Closing Summation pg. 27.1800.8-12); (pg. 22.1993.11-13); (pg. 44.1828.16-19) Also See (Trial pg. 1632.10-18); (Closing Summation pg. 26.1800. 1-3) See (Trial pg. 1629.1-10) (closing summation pg. 28.1802.1-5)

That The evidence proves that there are several unidentified black SUV's on the video. See (Trial pg. 1623.15-19)

The government speculates that the black SUV seen on these videos is in fact the same one captured by N.Y.P.D. Licence Plate Reader 20 days before the 2016 crime. In docment 119 pg.114.7-11 (see docment) the proffers "that the black SUV is parked for hours at a time, without anyone exiting or entering."

As the video evidence proves, on September 1, 2016, the vehicle parks two people emerge, go about their business, returns 30 minutes later, get in and drives right off.

(29)   The governments proffer for <u>every single piece of</u>
<u>evidence changes</u> at one point or another, through-
out this <u>entire capital case.</u> Defense Counsel
Continuously allows these infractions upons
defendants <u>constitutional rights</u> to go <u>unchecked</u>
in <u>violated</u> of defendants 4th, 5th, 6th, 13th, 14th
and 8th Amendment rights. Protection against arbit-
rary inforcement of the law. And the taking away
of <u>life, liberty, property</u> by and through <u>cruel</u>
and <u>unusual punishment.</u> See. (<u>Strickland</u> v. <u>Wash-
ington</u>, 434 U.S. 688, 690 (1984)); (<u>Brady</u> v. <u>Mary-
land</u>(1963))

   As the government Continuously proffers to the Court
by and through appointed counsel for defendants. Again,
See <u>Strickland</u>; Where defense counsel prefers to
allow the government to make prejudictal statements
to the court and jury unopposed by appointed defense
Counsel. <u>Intentionally cooperating with the prosec-
ution denying due process, equal protection to defend-
ant</u> along with being <u>ineffective</u>.

   The governments <u>proffer</u> is that <u>on September 20,
2016 at 11:09 p.m.</u>"defendants <u>are</u> in their respective
place of <u>residents</u>". See. (<u>Document 366. pg. 14</u>)

   The facts and evidence show that the alleged vehicle
(black SUV) that's proffered is in fact the 'same' vehicle,
and is Pizarro's, is going over the George Washington
Bridge into New Jersey at <u>approximately 10:56:51 p.m.</u>

(30)

On September 20, 2016 and not returning. See (attachment 2D.)

Furthermore the government purposely disregarded exculpatory evidence of by confession to the crime made by alternative perpetrator of the crime defendant was on trial for. See (May 17, 2018 Conference pg. 11-19) Gov: "We charged these defendants with murder because it points to them, not to Gabriel Gwillen (person who confessed) not to anybody else".

Yet the court states that the evidence lately disclosed by the government, does in fact point to alternative perpetrator. See (Brady V. Maryland, 373, U.S. 83 (1963)); (Franks v. Delaware); (Giglio, Bagley, Agurs, Naupe) that these precedented cases along with the 6th Amendment violations of ineffective assistance of counsel, and the Confrontation clause of the U.S. Constitution. The prosecution deliberately, intentionally prosecuted defendant for malicious purposes of conviction. And intentionally withold exculpatory Brady Material.

The government argues the questioning of lay witnesses. See (document 66. pg. 9) "the court should preclude (i) questioning of lay witnesses concerning their 'Speculation', without a factual basis as to who may have participated in Bishun's Murder (ii) questioning of law enforcement

(31)   "Witnesses regarding the Government's subjective beliefs, in the initial stages of the investigation, as why Bishun was killed; and (iii) evidence of alleged third-party perpetrators, unless the defendants establish a direct, substantial connection between the alleged third-party perpetrators and the crimes charged". (These argument are made when they are knowingly suppressing the evidence needed) See. (Document 186 pg. 6 III) "Defendants should be precluded from eliciting testimony from Agent about Gvillen's statements".

See. Brady, where regardless of good faith, bad faith, of the presecution we must reverse if there is any likelyhood that the suppressed evidence would have changed the outcome of the prosecutions case and resulted in acquittal. See. (Bagley v. Uniteds). (Agurs v. United States) (Naupe v. Unitedstates).

Moreover as subject matter for this present case there had been previous discussion of a proven nexus by the defendants within the record, provided by a detailed confession, reported by Agent Mercurio. See. (D.E.A-6 report, attachment 2F-2F9) Also testimony from these Agents are/were relevant to this present case, and exculpatory, that should have been heard by the jury for those purposes of relevent conduct in relation to the capital crime of

(32)   Murder in which defendants life, liberty, were / are in mortal jepordy. That the nexus is mens rea of criminal Intent by a alternative perpetrator with Substantial motives. See.(document 119, pg 96. 3-5); See.(May 17, 2018 Conference pg. 14. 11-17)

The government knowingly commits fraud in the court throughout the entire proceedings. A prosecutor's duty is to seek justice, not to win at aga any cost. See.(Shih wei su V. Filion, 335 F 3d 119, 126 (2nd cir. 2003))

Defense counsel disregards defendants equal protection, along with several other constitutional rights, While the government developed a frictitious case against defendants. While they continue to attempt to provide excuses for the witheld exculpatory Brady information, material, and Jenks material Needed before trial.

Defendants are arrested, and detained by consent of appointed counsel. While the government covers up the crimes committed by others. They switch evidence to manipulate the court and jury for conviction purposes against by an miscarriage of justice, to manifest injustice against defendants. See.(document. 184 pg. 9. 4) They alleged they witheld Brady material because they were uncertain about defendants involvement with the people who confessed to the crime charged.(That was filed 8-22-2018)

(33)

The evidence proves the government was/is being fraudelant. See (document 202 pg. 3) states: "The Guillen confession was not veiwed as being at odds with Pizarro and Rivera's guilt. The Guillen confession does not identify all of the individuals who, according to the CI's recounting of Guillen's Statement, committed the kidnapping and murder of Bishun. Rather, according to the confession, Matthew Vazquez, Carlos Perez, and two other unidentified individuals committed the murder. There is nothing in the Guillen confession suggesting that Pizarro and Rivera could not have been those two other individuals and, as the Government has previously noted, the Government continued to investigate whether other individuals apart from the defendants had participated in the kidnapping and murder of Bishun even after the defendants were arrested. As discussed in other briefings, the Government's subsequent investigation, which occured well after the defendants were arrested, demonstrated that only two people were involved."

The evidence that is being provided proves the government is knowingly and willing giving false information to the court. They knew only two people was involved way before defendants arrest.

The Guillen confession is September 2016. See (attachment 2F-2F4) The CI's report to DEA is in October 2016. Defendants are arrested March 2017.

(34)  The government alleged "they still investigated because they were not sure of defendants involvement with Guillen and his crew". The evidence proves that's knowingly false. The government's CI is reporting since the crime occured. See. (document 99 pg 5) "The government has no information that the CI or Guillen knew Pizarro or Rivera. The government has no information to suggest that Alston knew Pizarro or Rivera". See. (document 186, pg 3)

"After months of investigation, the defendants still have not provided any explanation or support for that claim, such as how the Guillen Statement's assertion that four individuals kidnapped Bishun is consistent with security video from Bishun's shop and the account of the surviving witnesses, which demonstrated that only two individuals committed the kidnapping".

This is how the evidence proves the government could no way, no how, believe there were more then two individuals, way before defendants were arrested. They meet, and interview surviving witness, and they have the video.

They proffer in the same document and same page. "This type of speculation cannot provide the requite nexus as required under the law". Aslo See. ( May. 7, 2018 conference pg 87.1-5)

The government along with court appointed defense counsel held defendant unidicted for over a year, while they investigate. This is why defendant Pizarro was denied

(35)    his <u>constitutional right</u> to a <u>speedy trial</u>, as the <u>record</u>
<u>reflects</u>. See. (May. 17, 2018 conference pg. 42. 14-16)
<u>Hon. Judge Nathan</u>: "Mr. Pizarro has <u>pressed both</u> his
<u>innocence</u> and his <u>request for a speed trial every</u>
<u>moment</u> <u>that he's</u> <u>been in Court</u> <u>in front of me</u>."

    In spite of <u>all</u> the <u>overwhelming corrobo-</u>
<u>rated evidence</u> the government is <u>in possession of</u>, by
the people <u>who really confessed</u> to the murder. They
<u>go above and beyond</u>, breaking the very <u>law and</u>
<u>Constitution</u> they <u>swore to uphold</u>. By covering it up,
and Knowingly creating fraudulent, misleading, and flat
out false evidence, as to defendants.

    This <u>evidence proves</u> why. The Government <u>leaks</u>
<u>on pacer</u> that <u>Mr. Bishun is a cooperating witness</u>. See.
(<u>attachment 2E, 2E1</u>) <u>All five court appointed defense counsel</u>
<u>conspire</u> with them to cover it up at trial <u>by stipulation</u>.
See. (<u>attachment 2E2, 2E2A</u>) Stating that the standing
order <u>did not</u> state Bishun <u>was a cooperator</u>, which is
<u>Knowingly false</u>. See (<u>attachment 2E</u>) <u>Dated 8-3-2016</u>
(A few weeks before the murder) "<u>Order as to Robert Bishun</u>:
<u>Standing order regarding procedures to protect cooperation</u>."

    The record reflects that Mr. Bishun went to the
government on or about <u>August. 16, 2016</u>, (Just 4 weeks
before he's murdered) where <u>AUSA Jared Lenow was</u>
<u>present</u>. (who is also present on this case). He proffered

(36)    to them "His life was in danger" do to the information released onto the public docket. Where members involved with the same individuals who confessed, were monitoring Bishun's pacer account. They took screenshots of the docket/information, and sent it to members of Bishun's family. Also posting it on Social media. (attachment 2E2)

I instead of protecting Bishun, like the order stated, and placing him in protective custody. They left him in the streets of New York very vunerable, and subject to the extremely violent people Mr. Bishun was involved with. As the evidence proves.

The government even proffers how violent these individuals are. See. (May. 7, 2018, conference pg. 24, 2-25) (pgs. 26-29) They are in possession of a audio recording where it is discussed about the same individuals committing several other murders. See. (audio recording transcript pgs. 101, 103, 128, 129) (which was not played for the jury.) See. (attachments 2F2, 2F3)

See. (Scrimo v. Lee No. 17-3434, August. 20, 2019 (2nd cir) (Where Scrimo tried to offer evidence that someone else committed the murder by introducing certain evidence that would possibly point to someone else as an alternative suspect. The court did not allow him to present that evidence. The Second Circuit decided that the exclusion of evidence violated the defendants clearly established constitutional right to present a complete defense)

(37)        Defendants present summation/information proves beyond a reasonable doubt that the government along with Court appointed attorney's contrived to convict defendants all throughout proceedings and trial. As in defendants specific case scenario his sentence is non-existent in the context that the charges presented are totally faulty, have no basis for conviction. Thus should be immediately overturned and vacated entirely, and promptly with prejudice to preserve the rights guaranteed to defendants under the United States constitution.

        Defendant so prays that he be released immediately to elevate the present miscarriage of justice, and to repair defendants life, liberty, and property. Due to the present manifestation of injustice.

See (Exhibit 1 for coercion for Mark Srikshun)
See (Exhibit 2 for coercion of Detective John Baumeister and Brandon Reilly)

                        Respectfully Summitted
                        Robert Pizarro

Attach-
MENTS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
                                    :
UNITED STATES OF AMERICA            :          SEALED INDICTMENT
                                    :
     - v. -                         :          17 Cr.      (  )
                                    :          17 CRIM 151.
ROBERT PIZARRO and                  :
JUAN RIVERA,                        :
                                    :
          Defendants.               :
                                    :
------------------------------------x

COUNT ONE
(Conspiracy to Commit Kidnapping Resulting in Death)

     The Grand Jury charges:

     1.   On or about September 20, 2016, in the Southern District
of New York and elsewhere, ROBERT PIZARRO and JUAN RIVERA, the
defendants, together with others known and unknown, willfully and
knowingly did combine, conspire, confederate, and agree together
and with each other to violate Title 18, United States Code,
Section 1201(a)(1).

     2.   It was a part and object of the conspiracy that ROBERT
PIZARRO and JUAN RIVERA, the defendants, and others known and
unknown, did unlawfully and knowingly seize, confine, inveigle,
decoy, kidnap, abduct, and carry away and hold for ransom and
reward and otherwise, a person, and in so doing did use a means,
facility, and instrumentality of interstate and foreign commerce,
in violation of Title 18, United States Code, Section 1201(a)(1).

L H-1

### Overt Act

3.   In furtherance of the conspiracy and to effect the illegal object thereof, the following overt act, among others, was committed in the Southern District of New York and elsewhere:

a.   On or about September 20, 2016, ROBERT PIZARRO and JUAN RIVERA, the defendants, drove to an auto body shop in the Bronx, New York, and forcibly removed and transported an individual ("Victim-1") from the auto body shop to another location in the Bronx, New York, where Victim-1 was murdered by strangulation using a plastic zip-tie.

(Title 18, United States Code, Section 1201(c).)

### COUNT TWO
#### (Kidnapping Resulting in Death)

The Grand Jury further charges:

4.   In or about September 2016, in the Southern District of New York and elsewhere, ROBERT PIZARRO and JUAN RIVERA, the defendants, unlawfully and knowingly seized, confined, inveigled, decoyed, kidnapped, abducted, and carried away and held for ransom and reward and otherwise, a person, and in so doing used a means, facility, and instrumentality of interstate and foreign commerce, and aided and abetted the same, to wit, PIZARRO and RIVERA, the defendants, coordinated by phone to travel to an auto body shop located in the Bronx, New York, in order to forcibly remove and transport Victim-1 to another location in the Bronx, New York,

2

US_000531

1A-2

where Victim-1 was murdered by strangulation with a plastic zip-tie.

(Title 18, United States Code, Sections 1201(a)(1) and 2.)

### COUNT THREE
#### (Hobbs Act Robbery Conspiracy)

The Grand Jury further charges:

5.   . In or about September 2016, in the Southern District of New York and elsewhere, ROBERT PIZARRO and JUAN RIVERA, the defendants, together with others known and unknown, unlawfully and knowingly did conspire to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, PIZARRO and RIVERA agreed with each other and with others to commit a robbery at an auto body shop located in the Bronx, New York, on or about September 20, 2016.

(Title 18, United States Code, Section 1951.)

### COUNT FOUR
#### (Hobbs Act Robbery)

The Grand Jury further charges:

6.   In or about January 2015, in the Southern District of New York and elsewhere, ROBERT PIZARRO, the defendant, together with others known and unknown, unlawfully and knowingly did conspire to commit robbery, as that term is defined in Title 18,

US_000532

1 A-3

United States Code, Section 1951(b)(1), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, PIZARRO agreed with others to commit a robbery at an auto body shop located in the Bronx, New York, which robbery took place on or about January 24, 2015.

(Title 18, United States Code, Section 1951.)

## COUNT FIVE
### (Firearms Offense)

The Grand Jury further charges:

7. In or about September 2016, in the Southern District of New York and elsewhere, ROBERT PIZARRO and JUAN RIVERA, the defendants, during and in relation to crimes of violence for which they may be prosecuted in a court of the United States, namely, the crimes charged in Counts One, Two, and Three of this Indictment, knowingly used and carried firearms, and, in furtherance of such crimes, did possess firearms, and did aid and abet the use, carrying, and possession of firearms, which were brandished.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii) and 2.)

## FORFEITURE ALLEGATIONS

8. As a result of committing the offenses alleged in Counts One and Two of this Indictment, ROBERT PIZARRO and JUAN RIVERA,

4

US_000533

1A-4

the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a) (1) (c) and 28 U.S.C. § 2461, any and all property constituting or derived from any proceeds said defendants obtained directly or indirectly as a result of the offenses, including but not limited to a sum in United States currency representing the amount of proceeds obtained as a result of the offenses.

9.  As a result of committing the offenses alleged in Count Three of this Indictment, ROBERT PIZARRO and JUAN RIVERA, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a) (1) (C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, which constitutes or is derived from proceeds traceable to the commission of the offenses charged in Count Three of this Indictment, including but not limited to a sum in United States currency representing the amount of proceeds obtained as a result of the offenses.

10.  As a result of committing the offenses alleged in Count Four of this Indictment, ROBERT PIZARRO, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a) (1) (C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, which constitutes or is derived from proceeds traceable to the commission of the offenses charged in Count Four of this Indictment, including

5

US_000534

1A-5

but not limited to a sum in United States currency representing the amount of proceeds obtained as a result of the offenses.

### SUBSTITUTE ASSET PROVISION

11.   If any of the above-described forfeitable property, as a result of any act or omission of ROBERT PIZARRO or JUAN RIVERA, the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c).)

FOREPERSON

/MG as authorized by HC
PREET BHARARA MG
United States Attorney

6

US_000535

1 A-6

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

ROBERT PIZARRO and
JUAN RIVERA,

Defendants.

SEALED INDICTMENT

17 Cr.

(18 U.S.C. §§ 1951, 1201(a), 1201(c),
924(c), and 2)

PREET BHARARA
United States Attorney.

A TRUE BILL

_____ Foreperson.

1A-7

but not limited to a sum in United States currency representing the amount of proceeds obtained as a result of the offenses.

## SUBSTITUTE ASSET PROVISION

11.  If any of the above-described forfeitable property, as a result of any act or omission of ROBERT PIZARRO or JUAN RIVERA, the defendants:

> a. cannot be located upon the exercise of due diligence;
>
> b. has been transferred or sold to, or deposited with, a third person;
>
> c. has been placed beyond the jurisdiction of the Court;
>
> d. has been substantially diminished in value; or
>
> e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property.

> (Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c).)

FOREPERSON

PREET BHARARA /MG as authorized by HC
United States Attorney

6

1A-8

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

ROBERT PIZARRO and
JUAN RIVERA,

Defendants.

SEALED INDICTMENT

17 Cr.

(18 U.S.C. §§ 1951, 1201(a), 1201(c),
924(c), and 2)

PREET BHARARA
United States Attorney.

A TRUE BILL

_____
Foreperson.

_ TRUE BILL / SEALED INDICTMENT / 2 ARREST WARRANTS
_ MAG. JUDGE RONALD L. ELLIS
    3-6-17
Wheeled to: JUDGE DANIELS

1 b

TRULINCS 69026054 - PIZARRO, ROBERT - Unit: BRO-J-B

----------------------------------------------------------------------------------------------------

U.S. Attorney's Office, S.D.N.Y.
1 St. Andrews Plaza
New York, NY 10007
(212) 637-2276
Fax: (212) 637-0086
Email: jessica.fender@usdoj.gov
LEAD ATTORNEY
ATTORNEY TO BE NOTICED
Designation: Assistant US Attorney

Margaret Graham
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
212 637 2923
Fax: 212 637 2527
Email: margaret.graham@usdoj.gov
LEAD ATTORNEY
ATTORNEY TO BE NOTICED
Designation: Assistant US Attorney

Jared P Lenow
US Attorneys Office
One St. Andrew's Plaza
New York, NY 10007
(212) 637-1068
Email: jared.lenow@usdoj.gov
ATTORNEY TO BE NOTICED

| Date Filed | # | Docket Text |
|---|---|---|
| 03/06/2017 | 2 | SEALED INDICTMENT as to Sealed Defendant 1 (1) count(s) 1, 2, 3, 4, 5, Sealed Defendant 2 (2) count(s) 1, 2, 3, 5. (jm) (Entered: 03/22/2017) |
| 03/08/2017 | 1 | SEALED DOCUMENT placed in vault. (mps) (Entered: 03/08/2017) |
| 03/16/2017 | 3 | Order to Unseal Indictment as to Sealed Defendant 1, Sealed Defendant 2. (Signed by Magistrate Judge Barbara C. Moses on 3/16/17)(jm) (Entered: 03/22/2017) |
| 03/16/2017 | | INDICTMENT UNSEALED as to Robert Pizarro, Juan Rivera. (jm) (Entered: 03/22/2017) |
| 03/16/2017 | | Case Designated ECF as to Robert Pizarro, Juan Rivera. (jm) (Entered: 03/22/2017) |
| 03/16/2017 | | Case as to Robert Pizarro, Juan Rivera ASSIGNED to Judge Judge Alison J. Nathan. Judge Judge Unassigned no longer assigned to the case. (jm) (Entered: 03/22/2017) |
| 03/16/2017 | | Attorney update in case as to Robert Pizarro, Juan Rivera. Attorney Margaret Graham,Jessica Fender for USA added. (jm) (Entered: 03/22/2017) |
| 03/16/2017 | | Arrest of Robert Pizarro. (jm) (Entered: 03/22/2017) |
| 03/16/2017 | 6 | CJA 23 Financial Affidavit by Robert Pizarro appointing cja attorney Elizabeth Macedonio. (Signed by Judge Magistrate Judge Barbara C. Moses) (jm) (Entered: 03/22/2017) |
| 03/16/2017 | | Attorney update in case as to Robert Pizarro. Attorney Elizabeth Edwards Macedonio for Robert Pizarro added. (jm) (Entered: 03/22/2017) |
| 03/16/2017 | 7 | Minute Entry for proceedings held before Magistrate Judge Barbara C. Moses:Initial Appearance as to Robert Pizarro held on 3/16/2017. Defendant is present with attorney Elizabeth Macedonio; AUSA Fender is also present. Defendant is detained on consent without prejudice. Conference before USDJ on 3/20/17. Speedy Trial Time is excluded until 3/20/17. (jm) (Entered: 03/22/2017) |
| 03/16/2017 | 8 | ORDER as to Robert Pizarro for medical attention. (Signed by Magistrate Judge Barbara C. Moses on 3/26/17)(jm) (Entered: 03/22/2017) |
| 03/16/2017 | 14 | ORDER as to Robert Pizarro, Juan Rivera. This matter has been assigned to me for all purposes. An initial pretrial conference and arraignment is hereby scheduled for Monday, March 20, 2017, at 2:00 p.m. in Courtroom 318 of the United States District Court for the Southern District of New York, Thurgood Marshall U.S. Courthouse at 40 Foley Square, New York, New York. Counsel are expected to put in a notice of appearance via ECF prior to the initial pretrial conference and arraignment. In addition, the parties should be prepared for the Court to set a motions schedule and a trial date at the conference and, therefore, counsel should meet and confer ahead of the initial pretrial conference as needed to discuss scheduling. Finally, prior to the initial pretrial conference, the parties should familiarize themselves with the undersigned's |



TRULINCS 69026054 - PIZARRO, ROBERT - Unit: NYM-G-S

------------------------------------------------------------------------------------------

FROM: 69026054
TO: Free, Lou
SUBJECT: RE: RE: my case
DATE: 05/31/2018 11:47:06 AM

Hey,

I need my original indictment minutes, for the hundred time already. I also need the minutes from May 7 and 17, and please do not try to doctor them up like ya'll did the other minutes
-----Free, Lou on 5/30/2018 8:06 PM wrote:

I will respond in detail tomorrow. For now, know that Elizabeth and I will be visiting you on Monday, June 4. Carla will be away on vacation.

ROBERT PIZARRO on 5/29/2018 7:51:19 PM wrote
Hello,

I haven't heard back from you regarding the many issues I've brought up and have been asking about. (excluding bail application)

I'm trying to understand why the burden of proof has now shifted to the defense in finding the actual perpetrators of this crime? Because the way I see it and I've brought this up to you all before, why are we simply supplied the names of persons who have made admissions and basically sent out on our own to find, investigate and interrogate them? And realistically speaking, why would anyone speak to you if they were located and questioned about this?

Also, isn't it important to you to have the CI's to whom these statements were made to, also interviewed? To borrow something out of the governments motion in limine when referring to statements or admissions made to a third party they said, "corroborating circumstances clearly indicate the trustworthiness of the statement." {Rule 804(b)(3)} In the admissions made by the actual perpetrator much was corroborated by him that only he could have known.

Im also having a hard time understanding how defense attorneys in other proceedings in the SDNY (and who knows where else?) are being told that their clients are being investigated relating to this crime as well. How I can be charged while the government simultaneously further investigates others for the same crime?

I want to know if there is any indication of any settlement or civil proceedings or anything whatsoever between the victims family and the government or any of its agencies. I don't think its entirely off the wall to find something of that nature and if it does exist I want all transcripts of those proceedings investigated..

As I've already asked, I want a copy of the statement of the 2nd person who admitted and confessed to this crime at Rikers Island.

Lastly, and I have said this before many time to you all and feel its worth saying again, I do not now nor have I ever consented to any waiver of my speedy trial rights in this case. I am going into my 15th month here and i still demand a speedy trial after having just about my entire time in custody excluded.

Im still waiting to see all three of you here.

Respectfully,

Robert Pizarro



TRULINCS  69026054 - PIZARRO, ROBERT - Unit: NYM-G-S

---------------------------------------------------------------------------------------------------

FROM: 69026054
TO: Free, Lou; Freeman, Louis; Macedonio, Elisabeth; Sanderson, Carla
SUBJECT: MINUTES!
DATE: 04/22/2018 11:36:36 AM

Good afternoon counselors,

I expect to see you guys all week since we're 2 weeks until trial. When you guys come I NEED you 2 bring me my minutes from my bail hearing, and I want my minutes from both grand jury indictments. Being that 2 people said that i did this crime, that means they had 2 testify, so I am entitled 2 the grand jury minutes. PLEASE HAVE IT THE NEXT TIME I SEE U! THANKS!

Respectfully, Robert Pizarro

TRULINCS  69026054 - PIZARRO, ROBERT - Unit: BRO-J-B

---------------------------------------------------------------------------------

FROM: 69026054
TO: Free, Lou; Macedonio, Elisabeth; Sanderson, Carla
SUBJECT: ROBERT PIZARRO
DATE: 02/06/2018 11:27:56 AM

Good morning counselors,

I am still requesting the response from the goverment to the motions that you guys put in for separate trails, to suppress call site location, and the search of the GMC Yukon.
I am also still waiting for you guys to give me the response for the memorandum of law motion, which you guys have had both responses for 2 months and still have failed to give them to me.
I want my grand jury minutes, and don't tell me I can't get them because I am entitled to it. I want to know how I got indicted without one single piece of evidence against me!
I ask you guys for months already to give me all of my FILED DOCUMENTS, and a FILED up to date docket sheet.

RESPECTFULLY,
                Robert Pizarro

TRULINCS 69026054 - PIZARRO, ROBERT - Unit: NYM-G-S

---

FROM: 69026054
TO: Free, Lou; Freeman, Louis; Macedonio, Elisabeth; Sanderson, Carla
SUBJECT: my case
DATE: 05/19/2018 02:16:59 PM

hey,

I have a few issues i need to address with you all. Firstly, I want to have you apply to the court for subpoenas or warrants to be issued for the individuals who have admitted their guilt in this crime that I am currently charged with. Rather than an open delay in proceedings until September (where there is no guarantee that you would have been able to find and interview these individuals) then I want this sped up that way.

I also want a status hearing to be held at least every 21 days to be able to advise the court where we are in our investigations, where the AUSA is and what the next steps should be as far as compelling people to testify or to have people picked up by the Marshals and brought to court.

Since you asked me about the type of evidentiary hearing that I want. Allow me to say that if you just read the last paragraph of our letter to the Judge then you will see exactly what type of evidentiary hearing i mean. For you to ask me that just further reinforces my assertions that you don't take anything i do in my own defense seriously because had you read that letter to the Judge you wouldn't have asked me what type of evidentiary hearing I want. So read that letter in its entirety and concentrate on the last paragraph to understand what I want.

I am interested in the crime scene photos from the alleged 2015 robbery that makes up the Hobbs Act charge I currently have on my indictment in which i am charged alone in. Please provide those to me because I have never seen them even though you have said you have seen them and that you have them. I want those immediately.

Also, the initial Grand Jury Transcripts from the first 2016 Indictment (from the time I was arrested for this offense) have been something that I have still not seen. I have seen the superseding indictments grand jury transcripts but that is not what I am asking about here. I want the transcripts that were the basis for the first indictment in 2016.

I want a copy of the Bail Application that you have been given 10 days by the court to file. I want to see that and I don't think there is any reason we have to wait for the deadline in filing that. So it should be done and filed by the beginning of next week.

I understand there were a lot of DOJ personnel at my last court hearing that I have never seen before and I can only assume they were the higher-ups of the AUSA handling my case. Although their presence may have intimidated you all they most surely did not intimidate me. I would have expected you to fight harder for my rights and not simply agree and completely go against my wishes for the continuance. For the record, once again, I did not and I still do not consent to my trial date being pushed back until September. Nor have I ever consented to any continuances or waived any rights at all especially my detention for any length of time.

If we have until September before trial starts you can be absolutely sure that there will be hundreds of issues that you will have to address on my behalf by then. Because I am not sitting still while my rights are being trampled on not only by the government and court but now by my attorneys. No one, whosoever has a right to violate my constitutional rights as is happening now.

I expect an answer addressing these issues immediately. I am ready to write the Judge at any time if I feel that you are not taking my concerns seriously or delaying in addressing them.

Respectfully,

Robert Pizarro



TRULINCS  69026054 - PIZARRO, ROBERT - Unit: NYM-G-S

--------------------------------------------------------------------------------

FROM: Free, Lou
TO: 69026054
SUBJECT: RE: my case
DATE: 06/13/2018 09:36:11 PM

I already answered about getting you the govt's opposition to bail. Now I know the exact time. It will be delivered first thing in the morning with another opposition that just came in by Eli.

Regarding complaints this will be discussed at a meeting tomorrow with all counsel. Believe me, I never thought for a second that if you had something on your mind we could ignore it and it would "just go away." That's not you. I'm not discussing because its not appropriate to discuss on corrlinks. We will discuss in person.

Regarding motions addressed to the grand jury and the transcripts that flow therefrom this will be discussed at a meeting tomorrow with all counsel. I'm not discussing because it's not appropriate to discuss on corrlinks. We will discuss in person.

Regarding the evidentiary hearing, this will be discussed at a meeting tomorrow with all counsel. I'm not discussing because it's not appropriate to discuss on corrlinks. We will discuss in person.


ROBERT PIZARRO on 6/12/2018 1:08:29 PM wrote
Hello,

First of all, regarding the AUSA's response to the Bail Application:

I hope you realize that it takes several days and most likely over a week before I would receive something dropped off at the MCC in the Legal Mailbox. So I want to have that dropped off to me personally by one of you or by a paralegal today. I have been waiting and waiting for this and do not want to continue waiting especially when a supplemental brief may need to be filed based on what the AUSA said in their response. SO please confirm back with me that someone will drop a copy off to me today. If the Judge were to make a decision on this before I have a chance to review this and offer any input then it is once again a clear example of how I am being prejudiced in this case. So get that to me. It doesn't need to be a visit, per se, just have me called down and give it to me.

Secondly, I have mentioned a couple of times about the complaint I would like to lodge with the DOJ regarding the outrageous government conduct that is well evident in my case. For some reason, you are not replying to that so I can only assume that you are ignoring it and hoping it will just go away. It wont! I want a complaint filed and want you to do it. If you feel that there has been no outrageous government conduct and no prosecutorial misconduct and that the AUSA has handled their side of the case professionally then please indicate that to me so I can be clear on where we stand on this issue. Otherwise, I want a complaint filed. Please let me know what your intention is on this issue.

Also, I keep asking for the Grand Jury Transcripts from the original indictment and now that i review my discovery and realize how the governments theory has completely changed from the "original" indictment to what their theory now is on the superseding indictment , I think it is more important than ever to know what was said to secure that first indictment. It was most likely filled with lies and those need to be brought to light. Again, even if you don't believe we can get those transcripts I still want the motion filed asking for their production and to have the Judge decide on it. Please indicate whether or not you will file that motion.

Finally, I am not content with waiting until September before anything new happens in court. I am still adamant about asking for an Evidentiary Hearing (an actual Hearing and not an "Evidentiary-like" Hearing) to completely argue why this indictment should be dismissed, namely because it is virtually impossible for me to receive a fair trial given the fact that the government has withheld exculpatory evidence on more than one occasion. I want a motion for an Evidentiary hearing filed. Please confirm this with me.

I'm waiting to see someone today to be provided a copy of the AUSA's response to my Bail Application as this is extremely important to me and to my defense!

Respectfully,

Robert Pizarro



3G 

TRULINCS  69026054 - PIZARRO, ROBERT - Unit: NYM-G-S

---------------------------------------------------------------------------------

FROM: 69026054
TO: Free, Lou; Macedonio, Elisabeth; Sanderson, Carla
SUBJECT: !Attorney Mail!
DATE: 06/25/2018 12:16:53 PM

Hello,

I need you to start taking my case more seriously and taking me more seriously, for that matter.

I want certain aspects of my case attacked the way they should be and the way I have been demanding that they are challenged. I want all the evidence gone through again because there is more and more I see thats wrong with the way the AUSA proceeded with this prosecution.

You are not handling my defense the way I want it defended, the way I have a right to have it defended. Under the Supreme Court decision decided last month , the Supreme Court held in McCoy v Louisiana (16-8255)  that you cannot unilaterally decide against my strong objections how to defend my case when I want it defended a certain way. I have a Sixth Amendment right to assistance of counsel and not assistance of a conviction. The court also said in Faretta v California that an "assistant , however expert is still an assistant" and that defense attorneys are to "advocate a defendants cause and consult with defendant on important issue." It is the accused who should make fundamental decisions about his defense The right to formulate a defense is specifically granted to the accused because it is he "who suffers the consequences if the defense fails." I have been saying this to you long before the Supreme Court decided this case.

The warrants that were used to secure the so-called 1st Indictment were based on lies and were never challenged by my defense team. I want them challenged. The prosecutions entire theory of how this crime transpired and everything changed except the fact that they still falsely kept me at the perpetrator of it. They are changing theories, evidence and ideas as the evidence points in different directions.

What has happened in the last week?  You told me that there were some new developments and that you would let me know last Friday. I waited patiently for you to visit but of course that never happened and you have ignored all subsequent emails. You are showing absolutely no respect for me as a client when you do that. Its really unfortunate that you feel that way.

As i wrote in my last letter to the Judge it has become fundamentally impossible to receive a fair trial after all that has been tainted in this case by the US Attorney's Office vindictiveness and outrageous government conduct mixed with intentional bias against me in this case. I want a motion to dismiss drawn up with all of these issues and whatever else you discovered in the latest Brady Violation in which the government once again purposely and with malice intent withheld evidence, so that my defense would be hampered. At which point does this become illegal on their part?

I need to see you and you should respond to me as soon as possible!

Respectfully,

Robert Pizarro

3 G-1

TRULINCS  69026054 - PIZARRO, ROBERT - Unit: NYM-G-S

--------------------------------------------------------------------------------------------------------------

FROM: 69026054
TO: Free, Lou; Macedonio, Elisabeth; Sanderson, Carla
SUBJECT: my case
DATE: 06/12/2018 12:48:35 PM

Hello,

First of all, regarding the AUSA's response to the Bail Application:

I hope you realize that it takes several days and most likely over a week before I would receive something dropped off at the MCC in the Legal Mailbox. So I want to have that dropped off to me personally by one of you or by a paralegal today. I have been waiting and waiting for this and do not want to continue waiting especially when a supplemental brief may need to be filed based on what the AUSA said in their response. SO please confirm back with me that someone will drop a copy off to me today. If the Judge were to make a decision on this before I have a chance to review this and offer any input then it is once again a clear example of how I am being prejudiced in this case. So get that to me. It doesn't need to be a visit, per se, just have me called down and give it to me.

Secondly, I have mentioned a couple of times about the complaint I would like to lodge with the DOJ regarding the outrageous government conduct that is well evident in my case. For some reason, you are not replying to that so I can only assume that you are ignoring it and hoping it will just go away. It wont! I want a complaint filed and want you to do it. If you feel that there has been no outrageous government conduct and no prosecutorial misconduct and that the AUSA has handled their side of the case professionally then please indicate that to me so I can be clear on where we stand on this issue. Otherwise, I want a complaint filed. Please let me know what your intention is on this issue.

Also, I keep asking for the Grand Jury Transcripts from the original indictment and now that i review my discovery and realize how the governments theory has completely changed from the "original" indictment to what their theory now is on the most likely filled with lies and those need to be brought to light. Again, even if you don't believe we can get those transcripts I superseding indictment , I think it is more important than ever to know what was said to secure that first indictment. It was still want the motion filed asking for their production and to have the Judge decide on it. Please indicate whether or not you will file that motion.

Finally, I am not content with waiting until September before anything new happens in court. I am still adamant about asking for an Evidentiary Hearing (an actual Hearing and not an "Evidentiary-like" Hearing) to completely argue why this indictment should be dismissed, namely because it is virtually impossible for me to receive a fair trial given the fact that the government has withheld exculpatory evidence on more than one occasion. I want a motion for an Evidentiary hearing filed. Please confirm this with me.

I'm waiting to see someone today to be provided a copy of the AUSA's response to my Bail Application as this is extremely important to me and to my defense!

Respectfully,

Robert Pizarro

1 G

TRULINCS 69026054 - PIZARRO, ROBERT - Unit: BRO-J-B

---------------------------------------------------------------

FROM: 69026054
TO: Free, Lou; Macedonio, Elisabeth; Sanderson, Carla
SUBJECT: EX POST FACTO LAWS!
DATE: 01/25/2018 10:16:08 AM

Good morning counselors,

 Ex post facto laws: CONDUCT THAT THE LEGISLATURE HAS NOT PROHIBITED IN TERMS THAT AFFORD DEFENDANT
PRIOR NOTICE.
IN IT'S ENTIRETY THERE IS NO OFFENSE OF
( Conspiracy to commit kidnapping, Resulting in death )
under title 18, usc section 1201 (a) (1)
so count one fells to state a federal offense
IN IT'S ENTIRETY THERE IS NO OFFENSE OF
( Kidnapping resulting in death )
under title 18, usc section 1201 (a) (1) and (2)
so count two fells to state a federal offense
IN IT'S ENTIRETY THERE IS NO OFFENSE OF
( Hobbs act robbery conspiracy )
under title 18 usc section 1951
so count three fells to state a federal offense
IN ENTIRETY THERE IS NO OFFENSE OF
( Firearms offense )
under title 18, usc section 924 (c) (1) (a) (i) and (ii)
so count five fells to state a federal offense

NOTE: I HAVE BEEN REACHING OUT TO ALL THREE OF MY LAWYERS FOR A WEEK IN REGARDS TO MY HIGH
PROFILED CASE, ABOUT MY CONSTITUTIONAL RIGHTS AND DEFECTS TO MY INDICTMENT, AND THE STILL HAVE
NOT RESPONDED TO ME.

I-G-1

TRULINCS  69026054 - PIZARRO, ROBERT - Unit: BRO-J-B

---------------------------------------------------------------------------

FROM: 69026054
TO: Free, Lou; Macedonio, Elisabeth; Sanderson, Carla
SUBJECT: VIOLATIONS!!!!
DATE: 01/21/2018 03:24:33 PM

Good afternoon counselors,

FIRST, from the date of July 9, 2017 to May 7, 2018 their is a excluded time against my speedy trial time clock, which is almost ten months under one exclusion, and that is a clear violation of title 18' 3161.
SECOND
We have to suppress all warrants! Special agent Joseph Mercurio "DEA" filing applications for search and seizure warrants in relation to violation codes section 18 usc 1201, 1951, and 924 (c). Conduct for which he has not been authorized to investigate or administer laws for.( WITHIN HIS SCOPE OF EMPLOYMENT ) AS A SPECIAL AGENT FOR THE DRUG ENFORCEMENT AGENCY!
THIRD
The court is without jurisdiction of the offenses.
The facts alleged in the Indictment failed to set forth an offense against the United States, such as to give this court jurisdiction. A proper construction of the statute in question clearly indicates that it does not cover the type of activity charged in the indictment; to interpret the act in question as covering the type of activity charged in the indictment is to extend the jurisdiction of the court and the power of congress beyond their Constitutional limits.

1 H

TRULINCS  69026054 - PIZARRO, ROBERT - Unit: BRO-J-B

------------------------------------------------------------------------------------------------

FROM: 69026054
TO: Free, Lou; Macedonio, Elisabeth; Sanderson, Carla
SUBJECT: BILL OF PARTICULAR
DATE: 01/23/2018 02:40:25 PM

Good day counselors,

I am requesting a bill of particular.
Pursuant to federal rule of criminal procedure { 7 }
For the government to file a serve the following particulars

1. State whether the indictment charges that the defendant actually affect commerce, or whether attempted to do so, or both.

2. State the specific articles, and commodities whose movement in commerce was affected, or attempted to be affected as charged in the indictment. Specifically state the point of orgin and the destination of such articles and commodities.
Such things are needed in order for the defendant to prepare a effective defense against the charge of " AFFECT ON INTERSTATE COMMERCE"

THANK U AND HAVE A GREAT DAY!

TRULINCS  69026054 - PIZARRO, ROBERT - Unit: BRO-J-B

-------------------------------------------------------------------------------

FROM: 69026054
TO: Free, Lou
SUBJECT: RE: RE: INDICTMENT DISMISSAL!!!
DATE: 01/22/2018 05:20:11 PM

NO!!! I WANT EVERYTHING ON THE RECORD! I ALSO WANT U TO PUT IN MY BAIL MOTION, NOT A LETTER. I ALSO
WANT ALL OF MY DOCUMENTS FILED AND GIVING TO ME INCLUDING A FILED UP TO DATE DOCKET SHEET. I ALSO
WANT MY CO-DEFENDANT THERE.
-----Free, Lou on 1/22/2018 4:21 PM wrote:

>

We are trying to round everybody up for a meeting on Thursday or Friday. I will keep you informed as to the date. At the
meeting we will discuss all your objections.

ROBERT PIZARRO on 1/22/2018 10:20:43 AM wrote
Good morning counselors,

NATURE AND ELEMENTS OF KIDNAPPING AND RELATED OFFENSES

   1. The person is willfully transported in INTERSTATE or FOREIGN COMMERCE.
   2. The requirement that the defendant and the victim cross STATE LINES furnishes a basis for the exercise of federal
jurisdiction.

NEXUS TO INTERSTATE COMMERCE " HOBBS ACT "

  The Indictment must charge the kind of commerce that has been burdened, and the conviction MUST rest on that charge.
Counsel should be sure to move to dismiss an indictment that is general in nature and DOES NOT indicate the particular type
or kind of commerce that allegedly has been burdened.

I EXPECT TO HEAR BACK FROM YOU GUYS BY THE END OF THE BUSINESS DAY!

THANK U AND HAVE A GREAT DAY!

2a

AO 93 (SDNY Rev. 01/17) Search and Seizure Warrant

# UNITED STATES DISTRICT 17 MAG 1900

### for the

Southern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>the Black GMC Yukon with VIN # 1GKFK13007J381394<br>and Any Closed Containers/Items Contained Therein | )<br>)<br>)<br>) Case No.<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Southern _____ District of _____ New York _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment A

The search and seizure are related to violation(s) of *(insert statutory citations)*:

18 USC 1201, 1951, 924(c)

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before    3/29/17    *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.        ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the Clerk of the Court.
☑ Upon its return, this warrant and inventory should be filed under seal by the Clerk of the Court.      *USMJ Initials*

☑ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☑ for    30    days *(not to exceed 30)*.
☐ until, the facts justifying, the later specific date of _____

Date and time issued:    3/15/17  3:52 P.M.                      _____
                                                                                    *Judge's signature*

City and state:    New York, NY                      HON. BARBARA MOSES, USMJ, SDNY
                                                                    *Printed name and title*

US_000495

2 2-01

AO 93 (SDNY Rev. 01/17) Search and Seizure Warrant (Page 2)

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the Court.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

US_000496

*3a*

AO 93 (SDNY Rev. 01/17) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

**17 MAG   1901**

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

the Cellphone Having Phone Number (917) 688-0220,
IMSI 310120223472632 and ESN 08948387910643591

)
)
)
)
)
)

Case No.

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Southern_____ District of _____New York_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment A

The search and seizure are related to violation(s) of *(insert statutory citations)*:

18 USC 1201, 1951, 924(c)

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____3/29/17_____
*(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.     ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the Clerk of the Court.
☑ Upon its return, this warrant and inventory should be filed under seal by the Clerk of the Court.     *USMJ Initial*

☑ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☑ for __30__ days *(not to exceed 30)*.
☐ until, the facts justifying, the later specific date of _____

Date and time issued:  3/15/17 3:54 P.M.                     _____
                                                                                 *Judge's signature.*

City and state:   New York, NY                         HON. BARBARA MOSES, USMJ, SDNY
                                                                              *Printed name and title*

3 2-1

AO 93 (SDNY Rev 01/17) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

### Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the Court.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

US_000478

ZC-2



# NYPD PETS
**PROPERTY and EVIDENCE TRACKING SYSTEM**
## Property Clerk Invoice
PD 521-141(Rev.11/09)



Invoice No. **2000640767**

| Invoice Date | | | Invoice Status |
|---|---|---|---|
| **03/31/2017** | | | **OPEN-CEU REVIEW PENDING** |
| Invoicing Command | Property Type | | Property Category |
| **49TH PRECINCT** | **VEHICLE / BOAT** | | **ARREST EVIDENCE** |

| Officers | Rank | NAME | Tax No. | Command | | |
|---|---|---|---|---|---|---|
| Invoicing | DT3 | REVANS,DAVID | ▓▓▓ | 49TH DET SQUAD | ADA Office | |
| Arresting | DT3 | REVANS,DAVID | ▓▓▓ | 49TH DET SQUAD | ADA Name | |
| Investigating | DT3 | REVANS,DAVID | ▓▓▓ | 49TH DET SQUAD | ADA Phone | |
| Det.Squad Supervisor | LT | KIMMELMAN,SUSANN | ▓▓▓ | 49TH DET SQUAD | Det.Sqd Case No. | N/A |
| CSU/ECT Processing | N/A | | | | CSU/ECT Run No. | N/A |
| Owner Notified By | N/A | | | | Date: | Time: |

How the Owner was Notified:

**Vehicle Details**

| Vehicle year: **2007** | Make: **GMC** | Model: **YUKON** | Type: **SUBURBAN** | Color: **BLACK** |
|---|---|---|---|---|

| Veh.Ident. No. 1GKFK13007J381394 | No. of Lic. Plates: 2 | Lic. Plate No.: B19HLD | State: NJ - US |
|---|---|---|---|

| Cert. Of Inspection: Ser. No: | State: NJ - US | Yr. | Vehicle Running: YES |
|---|---|---|---|

PETS# 6145054

Additional description: .

Location Veh/Boat Obtained: 161 COURT STREET,ELIZABETH,NJ-07206

| Time: 08:45 | Date: 03/16/2017 | Personel Property Removed: YES | Recovery Premise Type: street |
|---|---|---|---|

Department Tow Operator:                          Name:

Alarm No:                          Truck #

REM___ S:     03/31/2017 20:39 : AT TPO, THE ABOVE VEHICLE WAS TAKEN INTO CUSTODY AND VOUCHERED AS ARREST EVIDENCE. THE VEHICLE WAS USED IN THE COMMISSION OF A HOMI CIDE.

| Date of Incident | Penal Code/Description | Class Classification | Related To | Receipt |
|---|---|---|---|---|
| 09/20/2016 | 12527/HOMICIDE | FELONY | HOMICIDE | REFUSED |

| Prisoner(s) Name | D.O.B | Age | Address | Arrest No. | NYSID No. |
|---|---|---|---|---|---|
| 1   PIZZARO,ROBERT | ▓▓▓ | 36 | 1898 HARRISON AVENUE, 8B, BRONX, NY | M17616598 | 08400137N |
| Name | Tax No. | | Address | Phone. No | |

Finder(s)

| Registered Owner | PIZARRO,ATIA | 227,NEWARK AVENUE,BLOOMFIELD,NJ-07003 |
|---|---|---|
| Titled Owner | PIZARRO,ATIA | 227,NEWARK AVENUE,BLOOMFIELD,NJ-07003 |



Invoice No. **2000640767**

### Property Clerk Copy
printed: 03/31/2017 23:08

PCD Storage No. --

Page No. 1 of 2

US_000309

2C-3



# NYPD PETS
PROPERTY and EVIDENCE
TRACKING SYSTEM

**Property Clerk Invoice**
PD 521-141(Rev.11/09)



Invoice No. **2000640767**

| | | |
|---|---|---|
| Vehicle Taken From | Name: PIZZARO,ROBERT | Tax No. |
| | Address: 1898,HARRISON AVENUE,BRONX,NY-10453 | Phone. No |
| Related Comp No.(s) | N/A | |
| Complaint No. | 2016-049-06266 | |
| Aided/Accident No.(s) | N/A | |
| Related Invoice(s) | N/A | |

## Inspection Details
Inspection Desc.:



No of Tires:    No of Airbags:    Battery:

03/31/2017 20:06   Inspection Performed by  DAVID, REVANS   Tax ID

Special Wheels:    Wheel Covers:    Radio:    Additional Audio Equipment:

Exterior Condition:    Keys with Vehicle:    Trunk:    Glove Compartment:

Interior Condition:    Odometer Reading:

Additional equipment or Accessories:
(Indicate Which)

List Missing or Damaged Parts:
(Indicate Which)

| Approvals | Rank | Name | Tax No. | Command | Date | Time |
|---|---|---|---|---|---|---|
| Entered by | DT3 | REVANS,DAVID | | 49TH DET SQUAD | 03/31/2017 | 19:50 |
| Invoicing Officer | DT3 | REVANS,DAVID | | 49TH DET SQUAD | 03/31/2017 | 21:08 |
| Approved By | LT | KIMMELMAN,SUSANN | | 49TH DET SQUAD | 03/31/2017 | 21:14 |



Invoice No. **2000640767**

Property Clerk Copy
printed: 03/31/2017 23:08

PCD Storage No.  --

Page No. 2 of 2

US_000310

2 C-41



**NYPD PETS** PROPERTY and EVIDENCE TRACKING SYSTEM
Property Clerk Invoice
PD 521-141(Rev. 11/09)



Invoice No. **2000640769**

| Invoicing Command | | | Invoice Status |
|---|---|---|---|
| **49TH PCT.** | | | **OPEN** |
| Invoice Date | Property Type | | Property Category |
| **03/31/2017** | **GENERAL PROPERTY** | | **INVESTIGATORY** |

| Officers | Rank | Name | Tax No. | Command | | |
|---|---|---|---|---|---|---|
| Invoicing | DT2 | BUTLER, SEAN | | DBBX HOM T/F | OCME. EU No. | |
| Arresting | DT3 | REVANS, DAVID | | 49TH DET SQUAD | OCME. FB No. | |
| Investigating | DT3 | REVANS, DAVID | | 49TH DET SQUAD | Police Lab Evid. Ctrl. No. | |
| Det Squad Supervisor | LT | KIMMELMAN, SUSANN | | 49TH DET SQUAD | Det Sqd. Case No. | 1913 |
| CSU/ECT Processing | N/A | | | | CSU/ECT Run No. | N/A |

| Item | Total QTY | Article(s) | PETS No. | Pkg. QTY | Disposition |
|---|---|---|---|---|---|
| 1 | 1 | GPS DEVICE<br>COLOR: BLACK MAKE: TOMTOM MODEL: N14644<br>SERIAL NO.: RU4320K05590 | 1203370305 | 1 | |
| 2 | 1 | OTHER VEHICLE ACCESSORY<br>COLOR: BLACK MAKE: TOMTOM POWER CABLE<br>SERIAL NO.: 106J009345S22C<br>POWER CABLE FOR ITEM 1 | 1203370305 | 1 | |

RE▊S:   03/31/2017 20:14 :  ITEMS HEREIN RECOVERED FROM VEHICLE INVOICED UNDER PCI# 2000640767 (BLACK YUKON DMC) USED IN HOMICIDE. ITEMS VOUCHERED FOR INVESTIGA TION.

| Date Of Incident | Penal Code/Description | Crime Classification | Related To | Receipt |
|---|---|---|---|---|
| 09/20/2016 | 12527/HOMICIDE | FELONY | HOMICIDE | REFUSED |

| Prisoner(s) Name | | D.O.B | Age | Address | Arrest No./Summons No. | NYSID No. |
|---|---|---|---|---|---|---|
| 1 | RIVERA, JUAN | | 39 | 2103 HONEYWELL AVENUE, 3M, BRONX, NY | B17614383 | |
| 2 | PIZZARO, ROBERT | | 36 | 1898 HARRISON AVENUE, 8B, BRONX, NY | M17616598 | |

| | Name | Tax No. | Address | Phone. No |
|---|---|---|---|---|
| Finder(s) | BUTLER, SEAN | | | |
| Owner(s) | PIZZARO, ROBERT | | 1898 HARRISON AVENUE, 8B, BRONX, NY | |
| Complainant(s) | BISHUN, ROBERT | | 423 NORTH MAIN STREET, SPRING VALLEY, NY-10977 | |

| Complaint No. | 2016-049-06266 |
|---|---|
| Related Comp No.(s) | N/A |
| Aided/Accident No.(s) | N/A |
| Related Invoice(s) | 2000640767 |



Invoice No. **2000640769**

PCD Storage No. --

**Property Clerk Copy**
printed: 03/31/2017 23:06

Page No. 1 of 2

US_000311



**NYPD PETS** PROPERTY and EVIDENCE TRACKING SYSTEM
**Property Clerk Invoice**
PD 521-141(Rev. 11/00)



Invoice No. **2000640769**

| Approvals | Rank | Name | Tax No. | Command | Date | Time |
|---|---|---|---|---|---|---|
| Entered By | DT2 | BUTLER, SEAN | | DBBX HOM T/F | 03/31/2017 | 19:52 |
| Invoicing Officer | DT2 | BUTLER, SEAN | | DBBX HOM T/F | 03/31/2017 | 20:18 |
| Approved By | LT | KIMMELMAN, SUSANN | | 49TH DET SQUAD | 03/31/2017 | 21:15 |



Invoice No. **2000640769**

**Property Clerk Copy**
printed: 03/31/2017 23:06

PCD Storage No. --

Page No. 2 of 2

US_000312



**NYPD PETS** PROPERTY and EVIDENCE TRACKING SYSTEM
**Property Clerk Invoice**
PD 521-141(Rev. 11/09)



Invoice No. **2000640798**

| | | | | | | |
|---|---|---|---|---|---|---|
| Invoicing Command **49TH PCT.** | | | | | Invoice Status **OPEN** | |
| Invoice Date **03/31/2017** | | Property Type **GENERAL PROPERTY** | | | Property Category **INVESTIGATORY** | |

| Officers | Rank | Name | Tax No. | Command | | |
|---|---|---|---|---|---|---|
| Invoicing | DT2 | BUTLER, SEAN | | DBBX HOM T/F | OCME. EU No. | |
| Arresting | DT3 | REVANS, DAVID | | 49TH DET SQUAD | OCME. FB No. | |
| Investigating | DT3 | REVANS, DAVID | | 49TH DET SQUAD | Police Lab Evid. Ctrl. No. | |
| Det Squad Supervisor | LT | KIMMELMAN, SUSANN | | 49TH DET SQUAD | Det Sqd. Case No. | 1913 |
| CSU/ECT Processing | N/A | | | | CSU/ECT Run No. | N/A |

| Item | Total QTY | Article(s) | PETS No. | Pkg. QTY | Disposition |
|---|---|---|---|---|---|
| 1 | 1 | **OTHER IDS** <br> DOCUMENT HOLDER'S NAME: ATIA JACKSON <br> NUMBER: 160487446 <br> ISSUER'S NAME: NJS MOTOR VEHICLE <br> NJ VEHICLE REGISTRATION FOR 2007 GMC BLACK YUKON | 1203370303 | 1 | |
| 2 | 1 | **OTHER IDS** <br> DOCUMENT HOLDER'S NAME: ATIA JACKSON <br> NUMBER: YBK58D <br> ISSUER'S NAME: NJ MOTOR VEHICLES <br> NJ VEHICLE REGISTRATION FOR YBK58D (EXPIRED) | 1203370303 | 1 | |
| 3 | 1 | **INSURANCE CARD** <br> DOCUMENT HOLDER'S NAME: ATIA JACKSON <br> NUMBER: 4422418535 ISSUER'S NAME: GEICO <br> INSURANCE FOR 2007 GMC YUKON | 1203370303 | 1 | |
| 4 | 1 | **OTHER** <br> MAKE: NYS TRAFFIC SUMMONS COLOR: YELLOW <br> SERIAL NO.: AAX1438286 <br> SUMMONS FOR PIZARRO IN 2007 GMC YUKON | 1203370303 | 1 | |
| 5 | 6 | **OTHER** <br> MAKE: NYC PARKING VIOLATIONS COLOR: WHITE | 1203370303 | 6 | |
| 6 | 1 | **OTHER** <br> MAKE: NYC DEPT OF FINANCE COLOR: WHITE <br> SERIAL NO.: 7032938474 <br> NYC DOF PAID RECEIPT FOR SUMMONS# 7032938474 | 1203370303 | 1 | |



Invoice No. **2000640798**

**Property Clerk Copy**
printed: 03/31/2017 23:07

PCD Storage No. --

Page No. 1 of 2

US_000313



# NYPD PETS
PROPERTY and EVIDENCE
TRACKING SYSTEM
## Property Clerk Invoice
PD 521-141(Rev. 11/09)



Invoice No. **2000640798**

| Item | Total QTY | Article(s) | PETS No. | Pkg. QTY | Disposition |
|------|-----------|-----------|----------|----------|-------------|
| 7 | 1 | OTHER<br>MAKE: RECEIPT FOR CELLULAR DEVICE<br>MODEL: BOOST MOBILE COLOR: WHITE<br>SERIAL NO.: 9176880220<br>BOX ELECTRONICS OF NY 15 WEST BURNSIDE AVE | 1203370303 | 1 | |
| 8 | 5 | OTHER<br>MAKE: NYC DEPT OF FINANCE EBVELOPE<br>MODEL: ENVELOPE COLOR: ORANGE<br>ENVELOPE FOR NYC DOF SUMMONSES | 1203370303 | 5 | |

RE___S:    ___    03/31/2017 21:36 : ITEMS RECOVERED FROM VEHICLE (PCI# 200640767) USED IN COMMISSION OF A HOMICIDE. ITEMS VOUCHERED FOR INVESTIGATION.

| Date of Incident | Penal Code/Description | Crime Classification | Related To | Receipt |
|------------------|----------------------|---------------------|------------|---------|
| 09/20/2016 | 12527/HOMICIDE | FELONY | HOMICIDE | REFUSED |

| | Prisoner(s) Name | D.O.B | Age | Address | Arrest No./Summons No. | NYSID No. |
|---|------------------|-------|-----|---------|------------------------|-----------|
| 1 | RIVERA, JUAN | | 39 | 2103 HONEYWELL AVENUE, 3M, BRONX, NY | B17614383 | |
| 2 | PIZZARO, ROBERT | | 36 | 1898 HARRISON AVENUE, 8B, BRONX, NY | M17616598 | |

| | Name | Tax No. | Address | Phone. No |
|---|------|---------|---------|-----------|
| Finder(s) | BUTLER, SEAN | | , NY | |
| Owner(s) | PIZZARO, ROBERT | | 1898 HARRISON AVENUE, 8B, BRONX, NY | |
| Complainant(s) | BISHUN, ROBERT | | 423 NORTH MAIN STREET, SPRING VALLEY, NY-10977 | |

| | |
|---|---|
| Complaint No. | 2016-049-06266 |
| Related Comp No.(s) | N/A |
| Aided/Accident No.(s) | N/A |
| Related Invoice(s) | 2000640767 |

| Approvals | Rank | Name | Tax No. | Command | Date | Time |
|-----------|------|------|---------|---------|------|------|
| Entered By | DT2 | BUTLER, SEAN | | DBBX HOM T/F | 03/31/2017 | 21:10 |
| Invoicing Officer | DT2 | BUTLER, SEAN | | DBBX HOM T/F | 03/31/2017 | 21:41 |
| Approved By | LT | KIMMELMAN, SUSANN | | 49TH DET SQUAD | 03/31/2017 | 21:57 |



Invoice No. **2000640798**

PCD Storage No. --

### Property Clerk Copy
printed: 03/31/2017 23:07

Page No. 2 of 2

US_000314



 NYPD **PETS** PROPERTY and EVIDENCE TRACKING SYSTEM
**Property Clerk Invoice**
PD 521-141(Rev. 11/09)



Invoice No. **2000640799**

| Invoicing Command | | | Invoice Status |
|---|---|---|---|
| **49TH PCT.** | | | **OPEN** |

| Invoice Date | Property Type | | Property Category |
|---|---|---|---|
| **03/31/2017** | **GENERAL PROPERTY** | | **SAFEKEEPING** |

| Officers | Rank | Name | Tax No. | Command | | |
|---|---|---|---|---|---|---|
| Invoicing | DT3 | REVANS, DAVID | | 49TH DET SQUAD | OCME. EU No. | |
| Arresting | DT3 | REVANS, DAVID | | 49TH DET SQUAD | OCME. FB No. | |
| Investigating | DT3 | REVANS, DAVID | | 49TH DET SQUAD | Police Lab Evid. Ctrl. No. | |
| Det Squad Supervisor | LT | KIMMELMAN, SUSANN | | 49TH DET SQUAD | Det Sqd. Case No. | 1913 |
| CSU/ECT Processing | N/A | | | | CSU/ECT Run No. | N/A |

| Item | Total QTY | Article(s) | PETS No. | Pkg. QTY | Disposition |
|---|---|---|---|---|---|
| 1 | 31 | COMPACT-DISC | 1415784 | 31 | |
| | | COLOR: OTHER | | | |
| | | MUSIC CD'S | | | |
| 2 | 3 | CELL PHONE - ACCESSORIES | 1415784 | 3 | |
| | | COLOR: WHITE | | | |
| | | CELL PHONE CHARGERS | | | |
| 3 | 1 | OTHER | 1415784 | 1 | |
| | | MAKE: BLACK SOAP COLOR: BLACK | | | |
| | | BLACK SOAP | | | |
| 4 | 1 | BOOK | 1415784 | 1 | |
| | | COLOR: WHITE | | | |
| | | LL COOL J WORK OUT | | | |
| 5 | 2 | OTHER | 1415784 | 2 | |
| | | COLOR: BLACK | | | |
| | | UMBRELLAS | | | |
| 6 | 1 | OTHER | 1415784 | 1 | |
| | | COLOR: MULTICOLORED | | | |
| | | SNOW BRUSH | | | |
| 7 | 1 | OTHER | 6145055 | 1 | |
| | | COLOR: RED | | | |
| | | FOLDING CHAIR | | | |
| 8 | 1 | OTHER | 6145056 | 1 | |
| | | COLOR: BLUE | | | |
| | | FOLDING CHAIR | | | |
| 9 | 1 | HEADPHONE | 1415784 | 1 | |
| | | COLOR: BLACK | | | |



Invoice No. **2000640799**

**Property Clerk Copy**
printed: 03/31/2017 23:09

PCD Storage No. --

Page No. 1 of 2

US_000315



NYPD **PETS** PROPERTY and EVIDENCE TRACKING SYSTEM
Property Clerk Invoice
PD 521-141(Rev. 11/09)

Invoice No. **2000640799**

| Item | Total QTY | Article(s) | PETS No. | Pkg. QTY | Disposition |
|------|-----------|-----------|----------|----------|-------------|
| 10 | 1 | HEADPHONES<br>OTHER<br>COLOR: MULTICOLORED<br>ASST PERSONAL PAPERS | 1415784 | 1 | |

RE S: 03/31/2017 21:52 : AT TPO THE ABOVE PROPERTY WAS REMOVED FROM PRISONERS AUTO AND VOUCHERED FOR SAFE KEEPING
ALL ITEMS ARE IN PLASTIC BAG WITH PEDDLER SEAL NUMBER 1415784. THE TWO FOLDING CHAIRS ARE VOUCHERED WITH STICKERS 6145056 AND 6145055.

| Date Of Incident | Penal Code/Description | Crime Classification | Related To | Receipt |
|------------------|----------------------|---------------------|-----------|---------|
| 09/20/2016 | 12527/HOMICIDE | FELONY | HOMICIDE | REFUSED |

| Prisoner(s) Name | | D.O.B | Age | Address | Arrest No./Summons No. | NYSID No. |
|---|---|---|---|---|---|---|
| 1 | RIVERA, JUAN | | 39 | 2103 HONEYWELL AVENUE, 3M, BRONX, NY | B17614383 | |
| 2 | PIZZARO, ROBERT | | 36 | 1898 HARRISON AVENUE, 8B, BRONX, NY | M17616598 | |

| | | Tax No. | Address | Phone. No |
|---|---|---|---|---|
| Finder(s) | REVANS, DAVID | | , NY | |
| Owner(s) | PIZZARO, ROBERT | | 1898 HARRISON AVENUE, 8B, BRONX, NY | |
| Complainant(s) | BISHUN, ROBERT | | 423 NORTH MAIN STREET, SPRING VALLEY, NY-10977 | |

| Complaint No. | 2016-049-06266 |
|---|---|
| Related Comp No.(s) | N/A |
| Aided/Accident No.(s) | N/A |
| Related Invoice(s) | N/A |

| Approvals | Rank | Name | Tax No. | Command | Date | Time |
|-----------|------|------|---------|---------|------|------|
| Entered By | DT3 | REVANS, DAVID | | 49TH DET SQUAD | 03/31/2017 | 21:23 |
| Invoicing Officer | DT3 | REVANS, DAVID | | 49TH DET SQUAD | 03/31/2017 | 21:52 |
| Approved By | LT | KIMMELMAN, SUSANN | | 49TH DET SQUAD | 03/31/2017 | 21:57 |



**Property Clerk Copy**
printed: 03/31/2017 23:08

PCD Storage No. --

Invoice No. **2000640799**

Page No. 2 of 2

US_000316

2C-10



# NYPD PETS PROPERTY and EVIDENCE TRACKING SYSTEM
## Property Clerk Invoice
PD 521-141(Rev. 11/09)



Invoice No. **2000640801**

| Invoicing Command **49TH PCT.** | | | | | | Invoice Status **OPEN** |
|---|---|---|---|---|---|---|

| Invoice Date **03/31/2017** | | Property Type **GENERAL PROPERTY** | | | Property Category **DNA INVESTIGATORY** | |
|---|---|---|---|---|---|---|

| Officers | Rank | Name | Tax No. | Command | | |
|---|---|---|---|---|---|---|
| Invoicing | DT2 | BUTLER, SEAN | | DBBX HOM T/F | OCME. EU No. | |
| Arresting | DT3 | REVANS, DAVID | | 49TH DET SQUAD | OCME. FB No. | |
| Investigating | DT3 | REVANS, DAVID | | 49TH DET SQUAD | Police Lab Evid. Ctrl. No. | |
| Det Squad Supervisor | LT | KIMMELMAN, SUSANN | | 49TH DET SQUAD | Det Sqd. Case No. | 1913 |
| CSU/ECT Processing | | N/A | | | CSU/ECT Run No. | N/A |

| Item | Total QTY | Article(s) | PETS No. | Pkg. QTY | Disposition |
|---|---|---|---|---|---|
| 1 | 2 | CLOTHING ACCESSORIES<br>COLOR: BLACK MAKE: GLOVES<br>BLACK CLOTH GLOVES, N-38 | 1600136042 | 2 | |
| 2 | 1 | HAT/CAP<br>COLOR: BLACK MAKE: WOOL HAT<br>N-35 | 1600149855 | 1 | |
| 3 | 2 | CLOTHING ACCESSORIES<br>COLOR: BLACK MAKE: CLOTH GLOVES<br>N-39 | 1600136043 | 2 | |
| 4 | 2 | CLOTHING ACCESSORIES<br>COLOR: BLACK MAKE: CLOTH GLOVES<br>N-36 | 1700002629 | 2 | |
| 5 | 1 | SWEATSHIRT<br>COLOR: BLACK MAKE: SWEATSHIRT<br>N-40 | 1600142463 | 1 | |
| 6 | 1 | MASK<br>COLOR: BLACK MAKE: MASK MODEL: SKULL<br>N-37 | 1700002628 | 1 | |

RE    S:      03/31/2017 22:42   ITEMS RECOVERED INSIDE AUTO USED IN COMMISSION OF A HOMICIDE. ITEMS WERE POSSESSION OF THE DEFENDANT PIZARRO AT THE TIME OF ARREST. ITEMS COULD HAVE BEEN POSSIBLY USED DURING HOMICIDE.

| Date Of Incident | Penal Code/Description | Crime Classification | Related To | Receipt |
|---|---|---|---|---|
| 09/20/2016 | 12527/HOMICIDE | FELONY | HOMICIDE | REFUSED |

| Prisoner(s) Name | | D.O.B | Age | Address | Arrest No./Summons No. | NYSID No. |
|---|---|---|---|---|---|---|
| 1 | RIVERA, JUAN | | 39 | 2103 HONEYWELL AVENUE, 3M, BRONX, NY | B17614383 | |



Invoice No. **2000640801**

### Property Clerk Copy
printed: 03/31/2017 23:10

PCD Storage No. --

Page No. 1 of 2

US_000317



NYPD **PETS** PROPERTY and EVIDENCE TRACKING SYSTEM
**Property Clerk Invoice**
PD 521-141(Rev. 11/09)



Invoice No. **2000640801**

| Prisoner(s) Name | | D.O.B. | Age | Address | | Arrest No./Summons No.  NYSID No. |
|---|---|---|---|---|---|---|
| 2 | PIZZARO, ROBERT | ▓▓ | 36 | 1898 HARRISON AVENUE, 8B, BRONX, NY | | M17616598  ▓▓ |

| | Name | Tax No. | Address | | Phone. No |
|---|---|---|---|---|---|
| Finder(s) | BUTLER, SEAN | | , NY | | ▓▓ |
| Owner(s) | PIZZARO, ROBERT | | 1898 HARRISON AVENUE, 8B, BRONX, NY | | |
| Complainant(s) | BISHUN, ROBERT | | 423  NORTH MAIN STREET, SPRING VALLEY, NY-10977 | | |

| Complaint No. | **2016-049-06266** |
|---|---|
| Related Comp No.(s) | **N/A** |
| Aided/Accident No.(s) | **N/A** |
| Related Invoice(s) | **2000640767** |

| Approvals | Rank | Name | Tax No. | Command | Date | Time |
|---|---|---|---|---|---|---|
| Entered By | DT2 | BUTLER, SEAN | ▓▓ | DBBX HOM T/F | 03/31/2017 | 21:48 |
| Invoicing Officer | DT2 | BUTLER, SEAN | ▓▓ | DBBX HOM T/F | 03/31/2017 | 22:43 |
| Approved By | LT | KIMMELMAN, SUSANN | ▓▓ | 49TH DET SQUAD | 03/31/2017 | 23:10 |



Invoice No. **2000640801**

**Property Clerk Copy**
printed: 03/31/2017 23:10

PCD Storage No.  --

Page No. **2** of **2**

US_000318

2a-2

GOVERNMENT
EXHIBIT
1015
17 Cr. 151 (AJN)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - x
               :
UNITED STATES OF AMERICA        :     **STIPULATION:**
               :     **Items Found in Yukon**
         v.         :
               :     S4 17 Cr. 151 (AJN)
ROBERT PIZARRO and       :
JUAN RIVERA,          :
               :
         Defendants.  :
- - - - - - - - - - - - - - - - - - - - - - - - - - x

IT IS HEREBY STIPULATED AND AGREED by and between the United States of

America, by Geoffrey S. Berman, United States Attorney, Jessica Fender, Jared Lenow, and Jason

Swergold, Assistant United States Attorneys; defendant Robert Pizarro, by and with the consent

of his attorneys Elizabeth Macedonio, Esq., Louis Freeman, Esq. and Carla Sanderson, Esq., and

defendant Juan Rivera, by and with the consent of his attorneys, Bobbi Sternheim, Esq., and

Jeremy Schneider, Esq., that:

      1.    On March 16, 2017, law enforcement officers placed Robert Pizarro under

arrest after removing him from a black GMC Yukon bearing New Jersey license plate B19HLD

(the "Yukon").

      2.    Following Pizarro's arrest, law enforcement officers searched the Yukon

pursuant to legal process, and recovered the following items:

      a.   One black wool cap from inside the center console compartment, which

          has been marked as Government Exhibit 421.

      b.   One pair of black gloves from inside the center console compartment,

          which has been marked as Government Exhibit 422.

2 - 23

3.    IT IS FURTHER STIPULATED AND AGREED that Government Exhibits 404, 405, 406, 421, 422, 424, 425, 426, 428, and this Stipulation may be received into evidence at trial.

Dated: New York, New York
       September 7, 2018

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By: _____
    Jessica Fender
    Jared Lenow
    Jason Swergold
    Assistant United States Attorneys

_____
Elizabeth Macedonio, Esq.
Louis Freeman, Esq.
Carla Sanderson, Esq.
Attorneys for defendant Robert Pizarro

_____
Robbi Sternheim, Esq.
Jeremy Schneider, Esq.
Attorneys for defendant Juan Rivera

3



GOVERNMENT
EXHIBIT
1020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :      **STIPULATION:**
                                                                       **2018 Yukon Photos**
            v.                                                :
                                                                      S4 17 Cr. 151 (AJN)
ROBERT PIZARRO and                           :
JUAN RIVERA,                                       :
                                                                :
                    Defendants.                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IT IS HEREBY STIPULATED AND AGREED by and between the United States of

America, by Geoffrey S. Berman, United States Attorney, Jessica Fender, Jared Lenow, and Jason

Swergold, Assistant United States Attorneys; defendant Robert Pizarro, by and with the consent

of his attorneys Elizabeth Macedonio, Esq., Louis Freeman, Esq. and Carla Sanderson, Esq., and

defendant Juan Rivera, by and with the consent of his attorneys, Bobbi Sternheim, Esq., and

Jeremy Schneider, Esq., that:

          1.      Government Exhibits 43, 44, 45, and 46 are photographs taken on

September 7, 2018 of a black 2007 GMC Yukon with New Jersey license plate B19HLD and VIN

number 1GKFK13007J381394 located inside of a New York City Police Department vehicle

impound.

          2.      Since March 16, 2017, when it was taken from the custody of Robert

Pizarro, the defendant, this vehicle has been in the continuous custody of the Drug Enforcement

Administration and/or the New York City Police Department.

          3.      Government Exhibits 43, 44, 45, and 46, and this Stipulation may be

received as Government Exhibits at trial.

3b

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                   :

UNITED STATES OF AMERICA          :       **STIPULATION:**
                                     :       **Cellphones**

         v.                       :

                                     :       S4 17 Cr. 151 (AJN)
ROBERT PIZARRO and               :
JUAN RIVERA,                     :
                                     :
               Defendants.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

       IT IS HEREBY STIPULATED AND AGREED by and between the United States of

America, by Geoffrey S. Berman, United States Attorney, Jessica Fender, Jared Lenow, and Jason

Swergold, Assistant United States Attorneys; defendant Robert Pizarro, by and with the consent

of his attorneys Elizabeth Macedonio, Esq., Louis Freeman, Esq. and Carla Sanderson, Esq., and

defendant Juan Rivera, by and with the consent of his attorneys, Bobbi Sternheim, Esq., and

Jeremy Schneider, Esq., that:

            1.       Government Exhibit 437 is a cellphone lawfully taken from the possession

of ROBERT PIZARRO on March 16, 2017.

               a.       Government Exhibit 437-A is an excerpt of an automatically generated

                       electronic report of the contents of Government Exhibit 437.

               b.       Government Exhibit 437-B is a selection of photographs contained on

                       Government Exhibit 437.

            2.       Government Exhibit 438 is a cellphone memory card that was contained

within Government Exhibit 437 when it was lawfully taken from the possession of ROBERT

PIZARRO on March 16, 2017.

<div align="center">1</div>

GOVERNMENT
EXHIBIT
1013
17 Cr. 151 (AJN)

3b-1

5.      Government Exhibits 437, 437-A, 437-B, 438, 438-A, 438-B, 439, 439-A, 440, and this Stipulation, may be received as Government Exhibits at trial.

Dated: New York, New York
        August 30, 2018

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By:  _____

Jessica Fender
Jared Lenow
Jason Swergold
Assistant United States Attorneys

_____

Elizabeth Macedonio, Esq.
Louis Freeman, Esq.
Carla Sanderson, Esq.
Attorneys for defendant Robert Pizarro

_____

Bobbi Sternheim, Esq.
Jeremy Schneider, Esq.
Attorneys for defendant Juan Rivera

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA     :

              v.     :

ROBERT PIZARRO and     :
JUAN RIVERA,     :

             Defendants.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**STIPULATION:**
**Cellphone Service Provider Records**

S3 17 Cr. 151 (AJN)

      IT IS HEREBY STIPULATED AND AGREED by and between the United States of America, by Geoffrey S. Berman, United States Attorney, Jessica Fender, Jared Lenow, and Jason Swergold, Assistant United States Attorneys; defendant Robert Pizarro, by and with the consent of his attorneys Elizabeth Macedonio, Esq., Louis Freeman, Esq. and Carla Sanderson, Esq., and defendant Juan Rivera, by and with the consent of his attorneys, Bobbi Sternheim, Esq., and Jeremy Schneider, Esq., that:

      1.    Government Exhibits 501, 501-A, 502, 502-A, 503, 503-A, 504, and 505 are true and accurate business records of the cellular phone service provider Sprint. The times noted in these records for telephone calls are in Eastern time, which is the local time zone in New York City, and the times noted in these records for text messages are in Central time, which is one hour behind Eastern time.

      a.    Government Exhibit 501 consists of cell site location data and call detail records for cellular telephone number 917-688-0220, which records were obtained by the Government from Sprint pursuant to legal process. Specifically, Sprint provided the Government with the following records for the telephone number 917-688-0220 on the following dates:

1

GOVERNMENT
EXHIBIT
1000
17 Cr. 151 (AJN)

e.  Government Exhibit 503 consists of cell site location data and call detail records for cellular telephone number 646-262-2535, which records were obtained by the Government from Sprint pursuant to legal process on or about March 26, 2018.

f.  Government Exhibit 503-A consists of subscriber records for cellular telephone number 646-262-2535.

g.  Government Exhibit 504 consists of documents explaining the data fields in Sprint business records.

h.  Government Exhibit 505 is a CD containing lists of Sprint cell sites.

2.  Government Exhibits 510, 510-A, 511, and 512 are true and accurate business records of the cellular phone service provider T-Mobile.  The times noted in these T-Mobile records are in Coordinated Universal Time ("UTC"), which is four hours ahead of Eastern time between in or about March and in or about November.  Eastern time is the local time zone in New York City.

a.  Government Exhibit 510 consists of cell site location data and call detail records for cellular telephone number 347-861-8089, which records were obtained by the Government from T-Mobile pursuant to legal process on or about September 22, 2017.

b.  Government Exhibit 510-A consists of subscriber records for cellular telephone number 347-861-8089.

c.  Government Exhibits 511 consist of documents explaining the data fields in T-Mobile business records.

d.  Government Exhibit 512 is a CD containing a list of T-Mobile cell sites.

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                :

UNITED STATES OF AMERICA         :    **STIPULATION:**
                                :    **Social Media Accounts**

         v.                 :

                                :    S3 17 Cr. 151 (AJN)
ROBERT PIZARRO and             :
JUAN RIVERA,                 :

                       :
           Defendants.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

       IT IS HEREBY STIPULATED AND AGREED by and between the United States of America, by Geoffrey S. Berman, United States Attorney, Jessica Fender, Jared Lenow, and Jason Swergold, Assistant United States Attorneys; defendant Robert Pizarro, by and with the consent of his attorneys Elizabeth Macedonio, Esq., Louis Freeman, Esq. and Carla Sanderson, Esq., and defendant Juan Rivera, by and with the consent of his attorneys, Bobbi Sternheim, Esq., and Jeremy Schneider, Esq., that:

       1.     Government Exhibit 701 is a CD containing true and accurate account records from the internet social media company Instagram, Inc. for the Instagram account "550dru," which was used and maintained by ROBERT PIZARRO, the defendant, and which records were obtained by the Government from Instagram pursuant to legal process on or about May 26, 2017.

       2.     Government Exhibit 701-A is an excerpt from the account records contained on Government Exhibit 701.

       3.     Government Exhibit 702 is a CD containing true and accurate account records from the internet social media company Instagram, Inc. for the Instagram account

<div align="center">1</div>

<div align="right">
GOVERNMENT
EXHIBIT
1001
17 Cr. 151 (AJN)
</div>

3 d-1

9.      Government  Exhibits  701-A,  702-A,  703-A,  and  704-A,  and  this
Stipulation, may be received as Government Exhibits at trial.

Dated: New York, New York
          April 13, 2018

                              GEOFFREY S. BERMAN
                              United States Attorney for the
                              Southern District of New York

        By:     _____
                Jessica Fender
                Jared Lenow
                Jason Swergold
                Assistant United States Attorneys


                _____
                Elizabeth Macedonio, Esq.
                Louis Freeman, Esq.
                Carla Sanderson, Esq.
                Attorneys for defendant Robert Pizarro


                _____
                Bobbi Sternheim, Esq.
                Jeremy Schneider, Esq.
                Attorneys for defendant Juan Rivera

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

                    v.                      :

ROBERT PIZARRO and                          :
JUAN RIVERA,                                :

                    Defendants.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

**STIPULATION:**
**Google Accounts**

S3 17 Cr. 151 (AJN)

     IT IS HEREBY STIPULATED AND AGREED by and between the United States of America, by Geoffrey S. Berman, United States Attorney, Jessica Fender, Jared Lenow, and Jason Swergold, Assistant United States Attorneys; defendant Robert Pizarro, by and with the consent of his attorneys Elizabeth Macedonio, Esq., Louis Freeman, Esq. and Carla Sanderson, Esq., and defendant Juan Rivera, by and with the consent of his attorneys, Bobbi Sternheim, Esq., and Jeremy Schneider, Esq., that:

     1.    Government Exhibit 705 is a CD containing true and accurate account records from the technology company Google for the user of the Google account with user name "550dru", which was used and maintained by Robert Pizarro, the defendant, and which records were obtained by the Government from Google pursuant to legal process on or about May 27, 2017.

        a.    Government Exhibit 705-A is an excerpt from the account records contained on Government Exhibit 705 containing emails from the account of the user of the Google account with user name "550dru."

        b.    Government Exhibit 705-B is an excerpt from the account records contained on

1

GOVERNMENT
EXHIBIT
1002
17 Cr. 151 (AJN)

3E-1

account with user name "jrivera6966."

3.      Government Exhibits 705-A, 705-B, 705-C, 705-D, 706-A, 706-B, 706-C,

and this Stipulation, may be received as Government Exhibits at trial.

Dated: New York, New York
         April 23, 2018


                          GEOFFREY S. BERMAN
                          United States Attorney for the
                          Southern District of New York

          By:   _____
                          Jessica Fender
                          Jared Lenow
                          Jason Swergold
                          Assistant United States Attorneys


                          _____
                          Elizabeth Macedonio, Esq.
                          Louis Freeman, Esq.
                          Carla Sanderson, Esq.
                          Attorneys for defendant Robert Pizarro


                          _____
                          Bobbi Sternheim, Esq.
                          Jeremy Schneider, Esq.
                          Attorneys for defendant Juan Rivera


                                    3

3H

TRULINCS 69026054 - PIZARRO, ROBERT - Unit: NYM-G-S                                    

----------------------------------------------------------------------------------------

FROM: 69026054
TO: Free, Lou; Macedonio, Elisabeth; Sanderson, Carla
SUBJECT: !Attorney Mail!
DATE: 06/29/2018 06:25:05 PM

Hello,

Thank you for the Bail decision.  I still want and am waiting for a response to the other issues I asked you about.

On the denial of Bail: This was decided on June 22, 2018 by Judge Nathan.  Incidentally, this was the same day that you left me waiting for you to show up for a legal visit that never materialized.  Why wasn't I told about that decision before yesterday?  Why didn't we have oral arguments?  Why wasn't this fought for like we decided it would be and like I was under the impression it would be?  Instead its just another example of how things are being withheld from me until a time that you see fit regardless of my right as a defendant to be informed of major decisions in my case, my life.

On the day of my arrest the government claims that a firearm was found in the vehicle I was in.  First, why wasnt I ever charged with that?  Why was other so-called "evidence" introduced from the vehicle?  The GPS (tom-tom, clothing, etc)?  The answer is that it shouldn't have been.  The illegal way in which it was obtained prohibits that evidence being used.  And the fruits of the poisonous tree doctrine kicks in from that moment of my arrest.  All this talk about the SUV "resembling" that of the one which was seen three weeks before the crime was committed is getting really old.  How long do you plan to allow them to keep saying that unchallenged?

The fact that the AUSA puts this latest extension (from May-September) on my shoulders is ludicrous.  They withhold evidence and then they use the subsequent delay against me.  And even if that delay is to be used against me , it was completely against my wishes and i did not consent to it at all and was ready to go to trial that day and because of my codefendants attorney requested it and you consented to it as well it came to be.  Thats ridiculous to have to keep telling you that I never did and never will consent to any delay or continuance in this case.

There is no reason why we didn't have an oral argument about this.  You failed me in this process and I expected so much more from you as my attorneys.  At the end of the day I am fighting for my life.  And I need lawyers who are fighting just as hard as I am.  There is so much wrong happening in my case and I should never be seeing the wrongs coming in from our side.  To me it seems like I am fighting against both sides. (the AUSA and you every step of the way)

I need this appealed to the 2nd Circuit.  I need a complaint filed with the DOJ and Bar Association.  I need illegally obtained evidence challenged.  I need a motion to dismiss filed.  And if you aren't doing any of these things then just tell me now.  You are not defending me in the direction I want my defense to go.

Respectfully,

Robert Pizarro

3H-1

**TRULINCS  69026054 - PIZARRO, ROBERT - Unit: NYM-G-S**

---------------------------------------------------------------------------

FROM: Free, Lou
TO: 69026054
SUBJECT: RE: MY CASE
DATE: 07/07/2018 06:36:08 PM

I am away for a few days with spotty interception where I am. We are not moving to be relieved. We are actively defending you by continuing to work on your case. On Mon we will ask to go before the court so you can state your complaints on the record. Elizabeth, Carla and I will confer on Mon and give you a more complete joint response after that.

ROBERT PIZARRO on 7/7/2018 3:37:39 PM wrote
Hello,

I would like to know what is currently going on with what you indicated in your last email to me?

Because honestly, there is work to be done on my case now. So I am not really sure what your intentions are now and I need to know if you are actively defending me at this time.

Assuming you are, because I haven't heard otherwise, there are some things I need done on my case. The improper joinder of charges on my current indictment need to be challenged or appealed if you already have a decision on that from the Judge. I would like to see copies of all motions filed on my case thus far and all decisions to those motions. This joinder issue is a constitutional issue and its impossible for me to have a fair trial due to this and a host of other reasons.

I am sure you realize this but my trial is approximately 8 weeks away and there is still so much I have been waiting to see happen. To be clear, I am not ready now nor have I ever been ready to agree to any continuances on my case. So let me ask you now, are you ready to go to trial on Sept 11? Have you had the opportunity to utilize the time the Judge offered to advance in my defense? The Judge offered additional funding to the defense if needed and I suggested to you that we should utilize that for experts to be brought on. Has anything been done on that front?

I still want:

1) the second confession
2) the video the AUSA says they have from 2016
3) a report indicating there are multiple prints on plastic bag and who they belong to

I'm also interested in knowing what we have done in regards to the face time video that was spoken about at the time of the crime. That video, to me , should speak volumes as to my innocence.

Please let me know that status of my defense and your representation.

Robert Pizarro

3 H-2



TRULINCS 69026054 - PIZARRO, ROBERT - Unit: NYM-G-S

--------------------------------------------------------------------------------

FROM: 69026054
TO: Free, Lou; Macedonio, Elisabeth; Sanderson, Carla
SUBJECT: my case
DATE: 07/10/2018 06:02:56 PM

Hello,

I received some legal mail yesterday (postmarked June 29th).  In it was a new Master Docket which I have a lot of questions about.  And also there was a copy of the 924(c) motion you filed on May 18th.  I'm not sure why you sent me that because you have already sent it to me previously.  Plus that 924(c) motion wasn't even based on Dimaya as I had wanted it to be based on. As of late, I have been asking you for a copy of the Motion to Dismiss that you have been telling me about in our most recent visits.  Its not the 924(c) motion.  Its the motion to dismiss the entire indictment based on all the Due Process violations I have been subjected to.

Now after receiving the Master Docket I notice that on May 24th there is a Motion to Dismiss for Due Process Violations that I never received.  Why haven't I received that?  I need a copy of that.

On May 23rd there are transcripts of my Arraignment from 2017 that were just now released.  Firstly, why was that released just now? And I need to have a copy of that.

On May 24th and May 31st there are "Letters" filed regarding requests for Brady material.  I've never seen those so I need a copy of that.

On June 12th there is a "Letter" - Response to Brady material filed by the AUSA.  I need to have  copy of that.

On June 13th there are Supplemental facts filed by the AUSA about bail.  I need to have a copy of that.

I have asked repeatedly to be provided all motions and documents pertaining to my case.  I again, reiterate that I want to be provided all documents filed on my case.

What is the current status of your investigations that were used as the basis for needing the latest four month adjournment (that I never consented to)?

Its also been a while since I've heard or have seen anything substantive.  There was all kinds of activity a few weeks ago regarding all the new material made available by the government.  There were renewed Motions to Dismiss that I was told were being filed as a direct result of that and now nothing more about any of that.

So whats going on now?  And is there still an Evidentiary Hearing?

On April 30 I'm seeing on the docket sheet that I was arraigned on the 4th Superseding Indictment.  That was one week prior to my being scheduled for trial on may 7th?  How was that even allowed to happen?  With a trial date a week away and a superseding indictment being filed put the case in a position to be postponed well before we went into court on May 7th.  The only other alternative, and the right one, would have been to file a Motion to Dismiss those charges at the moment that S4 Indictment was filed.  Now we are in a position to have to defend other charges that we never should have had to.

I am waiting to hear from you at your soonest opportunity to address this and the rest of the issues I've brought to your attention.  My trial is 8 weeks away and I'm not seeing that much has been done in the first two months of this adjournment that i have been subjected to.  So fill me in.

Robert Pizarro



3H-3

TRULINCS  69026054 - PIZARRO, ROBERT - Unit: NYM-G-S

---------------------------------------------------------------------------------------------------------

FROM: 69026054
TO: Free, Lou
SUBJECT: RE: RE: MY CASE
DATE: 05/10/2018 05:52:26 PM

ok so when you bring me the motion on Monday I want a filed copy of it....i don't want to wait for it to be filed after I see you. I'm surprised to hear there is more 3500 material considering trial was supposed to have started already on the 7th. That means they are holding things back! Lets have a Motion to Dismiss ready to go  considering this is another Brady/Giglio violation. O YEAH! I TELLING U, NOT ASKING U!

see you Monday!
-----Free, Lou on 5/10/2018 2:51 PM wrote:

>

As requested, I am working on the 924 c motion. I will bring it with me when I visit on Mon morning.
I will also be reviewing our defense strategy with you at that time. I will also bring with me any new 3500 that you haven't seen.
Did you receive the package that was dropped off? See you on Monday morning.

ROBERT PIZARRO on 5/6/2018 9:20:37 PM wrote
Hello Everyone,

   As trial begins tomorrow I was really hoping to have heard from you by now regarding my last email to you in which I outlined some serious and legitimate concerns of mine.  In absence of any response from you, I would like to reiterate my demand that you file a motion to dismiss the 924(c) charges relating to the Hobbs Act charges.  I realize in your letter that you stated case law doesnt always represent what ordinary people may think but I would like to mention to you that there several other inmates here at MCC that have Hobbs Act conspiracy cases with 924(c) charges and their Attorneys are rightfully challenging those based on the Johnson and Dimaya decisions.  I understand your reasoning for not doing it I just don't understand your logic behind not doing it.  Your argument that it falls within the force clause is the argument the AUSA may make but one we should be against.  Submit that motion as I have a right to have it submitted because its my life that is on the line here and this is an absolute legitimate motion to file.  If every other attorney was telling their clients the same thing you are telling me I would still ask you to file it but right now so many are filing these motions and so there is no reason why we aren't.

   Its really unfortunate that you are not responding to me about any of my concerns.  And seeing that none of you have come to see me before trial doesn't give me much confidence that you are taking this as serious as I am.  I seriously am disappointed that not only do you ignore my mails but you give me no chance to address last minute concerns with you before trial....at least not until we are sitting in the courtroom together tomorrow morning and by then how much time will we actually have to conduct a substantive conversation about all these issues?  I would imagine not very much.

With all this being said, I am looking forward to participating in my own defense as I have been since day one.  I really wish you would take that seriously rather than dismiss most of what I say as irrelevant.

Prepare that motion to submit tomorrow morning prior to Jury Selection as I have been telling you since that decision (Johnson and then later Dimaya)  has been made.

Come down to speak with me in the holding pens before I am called up into the courtroom so I know whats going on with what I'm telling you now. Because, honestly, how am I supposed to have trust and confidence in you all handling my defense when you refuse to do even a simple step such as filing a motion that I am telling you needs to be filed??!

Respectfully,

Robert Pizarro

3H-4



TRULINCS 69026054 - PIZARRO, ROBERT - Unit: NYM-G-S

----------------------------------------------------------------------------------------------------

FROM: 69026054
TO: Free, Lou; Macedonio, Elisabeth; Sanderson, Carla
SUBJECT: my case
DATE: 06/17/2018 12:33:39 PM

Hello,

Several days ago I inquired about making a complaint with the DOJ's Office of Professional Responsibility. You have not responded to me about that even after I have again mentioned it in subsequent emails. As I told you before, and as I thought you agreed with me on, these things don't go away. These aren't impulsive decisions made based on any one factor but instead they are an accumulation of everything that has been going on. For some reason you fail to see that. To me it isn't enough to have the Judge made aware of the AUSA's unprofessional and borderline illegal conduct. There are departments within the DOJ that are set up to address just these kinds of instances of unprofessional conduct carried out by employees of the DOJ. Unless you are in agreement with how the AUSA and the Southern Districts US Attorneys Office as a whole has conducted themselves in regard to this malicious prosecution then why aren't you assisting me in lodging this complaint? The same way you could answer a New York Times reporter's questions about what the AUSA has been doing in this case is the same types of things you refuse to complain about officially to the DOJ.

On to my Bail Application now. What, if any, response have you made to the AUSA's reply? Are oral arguments scheduled? Will they even be oral arguments? Things like this I ask about on a regular basis and also on a regular basis i receive no response to. So as it stands today, whats the status of it? I absolutely do not want to let the AUSA's reply be the last word the Judge has on my Bail Application. They keep introducing things that either have nothing to do with me personally or they are changing their story about what evidence they claim to have (i.e., plastic home depot bag and alleged prints, prints on receipt). In essence they first change the story about the bag around so many times and there are allegedly partial prints then prints then a new bag and now a receipt with a print...You arent fighting these points and by not doing so you are giving the Judge the impression that we have no defense to that when in fact we most definitely do! So attack every point that the AUSA makes because they are all garbage. One thing that is a huge factor in all this that I never see, hear or read you mentioning is the physical description that was given by the victims of this crime. The two victims who were allegedly tied up and put in trunks of different vehicles specifically say that the assilants were 6'2" and 6'0" dark skin males. Please ,please tell me why you are never attacking that point? Because neither of us fit that description at all. So why is that continually overlooked by you?? The fingerprints found on the zip tie of the deceased victim doesnt match to me , my codefendant or the victim (or anyone else the police claim) so why isnt that a huge part of my defense and not being mentioned in the Bail App? I know you might want to say that those are trial issues but then why are we allowing the AUSA to bring their so-called evidence into a Bail App? Fight back and fight back hard! Thats all Im telling you to do. If you would fight half as hard as im fighting for myself we wouldnt have allowed so much trickery to have happened to us thus far.

How is it possible that the AUSA is still releasing 3500 material when the case was scheduled for trial on May 7 & then May 17th and only continued to apparently give the defense time to investigate Brady material which was withheld by the AUSA? In other words there should be ZERO material that being provided by the prosecution now so why am I hearing that there still is and why aren't I hearing what it is? If you don't want to tell me through email what the AUSA is telling you (because you don't want the AUSA to read what they already told you) then come visit me and tell me. Because nothing that you are telling me and not telling me makes any sense to me and im not the one who passed the BAR.

So when do you plan to visit?

Please answer what i asked in this mail and the others as I am waiting for your reply today.

I sit here on Fathers Day wondering why my son is not spending the day with me as he should be and me with him. And its for that reason among so many more that I am fighting for my life here and will continue fighting and will never stop until I am released from these made up charges against me!

Respectfully,



Robert Pizarro

3 H-05

TRULINCS  69026054 - PIZARRO, ROBERT - Unit: NYM-G-S



--------------------------------------------------------------------------------

FROM: 69026054
TO: Free, Lou
SUBJECT: RE: RE: !Attorney Mail!
DATE: 07/05/2018 06:58:16 PM

If you think that its not ineffective to tell me you are going to file certain motions and then don't, tell me you will initiate complaints and don't, tell me that my bail was denied one week after the decision when I ask about it every day, consent to my detention over my objections not to, and so much more then if you schedule a hearing with the Judge then these are the issues I would like to have you address. Because when you tell me something, i actually believe it and now all of a sudden you are not liking the fact that I am calling you on all the things you said you would do yet never do.

So schedule any hearing if you like but I am not looking for you to be removed from the case. It seems like you are looking for a way to be removed from the case. So lets be clear before we go in front of the Judge and understand that I want attorneys who will do what they say and not lie to me and not keep important decisions from me and be honest with me. Now if the Judge decides that I don't have a right to those things then we'll take it from there but I am not looking for any further extensions on this case and you know exactly what you are doing when you say you want to go in front of the Judge with these issues. Its creating a further delay in the proceedings. Make sure you inform the Judge of one important factor and thats regardless of whether you remain on the case or not then I refuse to have any extension of time that changes the Trial date of September 11, if this case actually ends up going to trial.

I have not asked you to remove yourselves. You are trying to remove yourselves and if this has been your way to do it by telling me things are going to happen when they aren't then thats really unfortunate.

This is how an innocent man fighting for his life acts.

Robert Pizarro

ps. If you plan to schedule a hearing in front of the Judge then give me the courtesy of knowing the date and time of that hearing,  otherwise if I am called to court without any advance knowledge I'm going to refuse.
-----Free, Lou on 7/5/2018 3:36 PM wrote:

>

We are in receipt of two emails sent the morning of 7/3. In it you state we are "fucking with you." While we understand your frustration, saying we are fucking with you is the equivalent of saying we are ineffective, particularly in the context of the whole of the two emails, and in conjunction with the apparent growing dissatisfaction with our representation expressed in prior emails. In light of these developments we agree that we should go before the Judge to give you the chance to state your complaints on the record.

ROBERT PIZARRO on 7/3/2018 10:21:45 AM wrote
Listen! I need my issues addressed immediately, not when you guys feel like it. I have been telling you to do so for months now.
I WANT THESE MOTIONS DONE NOW!
-----Free, Lou on 7/2/2018 11:36 PM wrote:

>

Elizabeth, Carla and I were on a conference call Fri evening and addressed each of your issues. Elizabeth emailed you our responses while we were still on the phone. Did you not receive this email from Elizabeth specifically stating it was from all three of us? If not I'll make sure you get it right away?

ROBERT PIZARRO on 7/2/2018 7:07:04 PM wrote
Hello,

So once again I wanted to bring up some mew issues but I'm still very concerned about all the previous issues that you haven't addressed.  It's really not fair to be completely ignoring these things and I am speaking of :

1) Lodging a complaint with the DOJ's Office of Professional Responsibility
2) Challenging the veracity of the information used as "probable cause" for various warrants
3) Filing a Motion to Dismiss



346

TRULINCS  69026054 - PIZARRO, ROBERT - Unit: NYM-G-S

--------------------------------------------------------------------------------

FROM: 69026054
TO: Free, Lou; Macedonio, Elisabeth; Sanderson, Carla
SUBJECT: Legal Mail - ACP
DATE: 08/14/2018 11:47:23 AM

Hello,

Can I just ask you all to take a look at the past few emails that you've sent me and also to recall the nature of our last conversation when you last visited me here at the MCC?

The reason I ask this is because you have been delaying and postponing and further delaying and on and on the entire process of putting in the Motion to Dismiss that you absolutely assured me on several occasions would already be filed.

So, I am at the point now where I want to file the Motion myself or at least submit it to the Judge to be filed on the docket. See, the thing is , and I still stand by this, I feel like its a really good motion. What I am unhappy about however is the fact that I believed you (once again) when you said (for weeks now) it is getting better and better and youre working on it and adding more case law, etc , etc. Because today I no longer believe that. So that's why I am thinking to submit the motion to the Judge myself and its so I can be assured that it actually gets filed on the docket. Because right now, I am not feeling confident at all that you are going to do it and I am fighting for my life here and have to fight with all that I have.

You're telling me now that the government filed a new motion to preclude certain law enforcement witness testimony and you had to basically stop everything ....all of the lawyers (mine and Rivera's) had to stop everything and address that. So out of about 5 of you no one is working on the original motion you've been telling me week after week is going to be filed. (This Monday, That Friday, This Thursday, etc etc) I'm considering filing it tomorrow so you all can concentrate even harder on the governments motion and leave all our other motions that were also to be filed, on the back burner. Doesn't that sound ridiculous for me to say? And even more ridiculous for me to do? I think it does to but you are leaving me no choice. There were supposed to be so many motions filed by now.

Incidentally, I never heard anything about that government motion. I never received any copy of it. When was it even filed that caused everything else to come to a standstill?

Frustration doesn't even begin to describe what or how I feel about this. Had you filed that motion already we would have been in a position to better address anything the government came at us with. What about all the other motions that you've said will be filed? This is why i always say and think you are working with "them" because everything you say to me about these motions since May 17th has not come to fruition. So , since May 17th , what motions have actually been filed? (Besides the government motions that you are telling me about?)

I just want to hear the truth for once. Can any of the three of you actually tell me something that will in fact be accurate as to what's going on? Is that so much to ask from my defense attorney's? Because that is all i am asking ...to be treated with dignity and respect so that when you tell me something and I count on it i am not let down time and time again as has been the case so far.

Robert Pizarro



Complaint# 2015-049-00434  Page 1 of 5

## New York City Police Department
### Omniform System - Complaints

| Report Cmd: 049 | Jurisdiction: N.Y. POLICE DEPT. | Record Status: Final, No Arrests | Complaint#: 2015-049-00434 |
|---|---|---|---|

**Occurrence INSIDE OF 1631**
**Location: STILLWELL AVENUE**
Name Of Premise: PROLINE AUTO SPECIALIST
Premises Type: COMMERCIAL BUILDING
Location Within Premise:
Visible By Patrol?: NO

**NYC Parks Dept. Property**
Did this offense occur on NYC Parks Dept. Property? NO
Command:
NYC Parks Dept. Property Name:

Precinct: 049
Sector: C
Boat: 7
Post: 12

**Occurrence From: 2015-01-24 19:18 SATURDAY**
Occurrence thru: 2015-01-24    20:00
Reported: 2015-01-24    20:03
Complaint Received: RADIO

0046B - 2015      FEB 24 2015

Aided #
Accident #
O.C.C.B. #

**Classification: ROBBERY**
Attempted/Completed: COMPLETED
Most Serious Offense Is: FELONY
PD Code: 399  ROBBERY,UNCLASSIFIED,COMMERCIA
PL Section: 16015
Keycode: 105  ROBBERY

**Case Status: OPEN**
Unit Referred To: P.D.U.
Clearance Code:
Log/Case #: 0
File #:
Prints Requested? NO

| Is This Related To Stop And Frisk Report NO | SQF Number: 0000-000-00000 | Was The Victim's Personal Information Taken Or Possessed? NO | Was The Victim's Personal Information Used To Commit A Crime? NO |
|---|---|---|---|

| Gang Related? NO | OCCB FOD Log #: | Name Of Gang: | Child Abuse Suspected? NO |
| DIR Required? NO | | Child In Common? NO | Intimate Relationship? NO |

| If Burglary: | Alarm: | If Arson: | Taxi Robbery: |
|---|---|---|---|
| Forced Entry? | Bypassed? | Structure: | Partition Present: |
| Structure: | Comp Responded?: | Occupied?: | Amber Stress Light Activated: |
| Entry Method: | Company Name/Phone: | Damage by: | Method of Conveyance: |
| Entry Location: | Crime Prevention Survey Requested?: | | Location of Pickup: |
| | Complaint/Reporter Present?: | | |

| Supervisor On Scene - Rank / Name / Command: LT BELLO 049 | Canvas Conducted: YES | Translator(If used): |
|---|---|---|

**NARRATIVE:**
AT T/P/O C/V STATES TWO UNKNOWN MALE PERPS ENTERED THE ESTABLISHMENT, ZIP TIEDHIS HANDS AND POINTED A BLACK HANDGUN, DEMANDED MONEY, FLED IN UNKNOWN DIRECTION. PERPS. DID REMOVE LISTED ITEMS. CANVASS CONDUCTED, NEGATIVE RESULTS. LT.BELLO ON SCENE, ALL NOTIFICATIONS MADE, NO WORKING CAMERAS IN ESTABLISHMENT. PROPERTY SHEET ATTACHED. ECT RESPONDED TO SCENE.

**No NYC TRANSIT Data for Complaint # 2015-049-00434**

| Total Victims: 1 | Total Witnesses: 2 | Total Reporters: 0 | Total Wanted: 2 |
|---|---|---|---|
| | Name: | | Complaint#: |

Complaint# 2015-049-00434  Page 17 of 43



| | **COMPLAINT - FOLLOW UP**<br>**INFORMATIONAL REPORT - ECT CONFERRAL** | **Crime/Condition**<br>ROBBERY | **Command**<br>049-49TH PRECINCT<br>**Date of This Report**<br>01/25/2015 |
|---|---|---|---|

| **Date of UF61**<br>01/24/2015 | **Date Case Assigned**<br>01/24/2015 | **Complaint No.**<br>2015-049-00434 | **Case No.**<br>2015 - 34 | **Unit Reporting**<br>BRAM | **Follow-Up No.**<br>10 |
|---|---|---|---|---|---|

| **Topic/Subject**<br>(ECT CONFERRAL) BRONX ECT CONFERRAL | **Activity Date**<br>01/25/2015 | **Activity Time**<br>17:20 |
|---|---|---|

**Details**

**Summary of Investigation:**

1. On January 25, 2015, at approximately 1720 hours the undersigned did confer with Bronx ECT.

2. Bronx ECT run # 15-295.
PO Sanchez tax/# ▓▓▓▓ did respond and did not process for prints as the perpetrators did wear gloves. A t shirt and bag may have been left behind by perpetrators were vouchered.

3. Case active.

**CONFERRED WITH**

| **Conferral Type**<br>ECT CONFERRAL | **NYPD MOS**<br>▓▓▓ VONNAVOWSK SANCHEZ,POF,183 | **On Scene (Yes/No)**<br>YES |
|---|---|---|

| **Reporting Officer:** | **Rank**<br>DT3 | **Name**<br>ERIC RIVERA | **Tax Reg. No.**<br>▓▓▓ | **Command**<br>259-49 DET SQUAD |
|---|---|---|---|---|
| **Reviewing Supervisor:** | **Manner of Closing** | **Date Reviewed**<br>01/28/2015 | **Date of Next Review** | **Name**<br>JAMES NONNON | **Supv. Tax No.**<br>▓▓▓ |





RFL# 99000131995

**REQUEST FOR LABORATORY
EXAMINATION REPORT**
PD 521-165(Rev.01-09)

7-DNA - ANALYSIS TO IDENTIFY THE SOURCE OF          TO AID IN INVESTIGATION                    PROBATIVE
THE BIOLOGICAL MATERIAL ON AN EVIDENCE
ITEM OR DNA TYPING OF A REFERENCE
SAMPLE,8-LATENT FINGER / PALM PRINT -
DEVELOPMENT

| Exact Location Where Evidence Was Collected/Recovered | Suspected Type Of Biological Evidence | Biological Bag No. |
|---|---|---|
| COLLECTED FROM PO INOA IN REGARDSTOAROBBERY AT 1631 STILLWELL AVENUE | SKIN CELLS | 1600111902 |

Field Processed?          ITEM NOT PROCESSED IN THE FIELD

Compare this item no. 3 to Inv. No.- Item :

Was DNA Evidence collected from a residential home/apartment owned/leased by any of the suspects/arrestees?   NO

Suspect/Arrestee : N/A

Was DNA Evidence collected from a motor vehicle owned/leased by the suspects/arrestees?   NO

Suspect/Arrestee : N/A   Year :   Make :   Model :   Color:

| Details |
|---|

01/24/2015 23:52 :          ON JANUARY 24, 2015 APPROXIMATELY 2050 HOURS PO SANCHEZ TAX▮▮▮▮AND PO
ANDERSON TAX#▮▮▮▮ASSIGNED TO PBBX ECT WERE REQUESTED  TO 1631 STILLWELL
AVENUE TO PROCESS THE SCENE OF A ROBBERY INSIDE THE LOCATION.  PO SANCHEZ DID
CONFER WITH DET RIVERA TAX▮▮▮▮ON SCENE.  PLACED ON THIS INVOICE ARE
COMINGLE ITEMS THAT WERE COLLECTED BY PO INOA TAX#▮▮▮▮DUCT TAPE, RECEIPT AND
A PLASTIC BA G. VOUCHER IS BEING SENT TO THE LAB AS DNA INVESTIGATORY IN ORDER
TO IDENTIFY THE UNKNOWN SUSPECTS.  NO DNA ELIMINATION SAMPLE UNAVA ILABLE. PDU
WILL COLLECT ON A LATER DATE.  DET RIVERA TAX#▮▮▮49 PDU ASSIGNED TO CASE.
SCENE PROCESSED AS ROUTINE.

01/24/2015 23:52 :          ON JANUARY 24, 2015 APPROXIMATELY 2050 HOURS PO SANCHEZ TAX ▮▮▮▮AND PO
ANDERSON TAX▮▮▮▮ASSIGNED TO PBBX ECT WERE REQUESTED  TO 1631 STILLWELL
AVENUE TO PROCESS THE SCENE OF A ROBBERY INSIDE THE LOCATION.  PO SANCHEZ DID
CONFER WITH DET RIVERA TAX▮▮▮▮ON SCENE.  PLACED ON THIS INVOICE ARE
COMINGLE ITEMS THAT WERE COLLECTED BY PO INOA TAX#▮▮▮▮DUCT TAPE, RECEIPT AND
A PLASTIC BA G. VOUCHER IS BEING SENT TO THE LAB AS DNA INVESTIGATORY IN ORDER
TO IDENTIFY THE UNKNOWN SUSPECTS.  NO DNA ELIMINATION SAMPLE UNAVA ILABLE. PDU
WILL COLLECT ON A LATER DATE.  DET RIVERA TAX# ▮▮▮9 PDU ASSIGNED TO CASE.
SCENE PROCESSED AS ROUTINE.

01/25/2015 00:27 :

01/25/2015 00:53 :

01/25/2015 01:13 :

**Lab Copy**
Printed: 01/25/2015 01:22
2015-0654C4

RFL# 99000131995





NYPD**PETS** PROPERTY and EVIDENCE TRACKING SYSTEM
**Property Clerk Invoice**
PD 521-141(Rev. 11/09)



Invoice No. **2000397038**

| | | | | |
|---|---|---|---|---|
| Invoicing Command | | | | Invoice Status |
| **49TH PCT.** | | | | **OPEN** |
| Invoice Date | | Property Type | | Property Category |
| **01/24/2015** | | **GENERAL PROPERTY** | | **DNA INVESTIGATORY** |

| Officers | Rank | Name | Tax No. | Command | | |
|---|---|---|---|---|---|---|
| Invoicing | POF | SANCHEZ, VONNAVOWSK | | PBBX ACU | OCME. EU No. | |
| Arresting | N/A | | | | OCME. FB No. | |
| Investigating | DT3 | RIVERA, ERIC | | 49TH DET SQUAD | Police Lab Evid. Ctrl. No. | |
| Det Squad Supervisor | N/A | | | | Det Sqd. Case No. | N/A |
| CSU/ECT Processing | POF | SANCHEZ, VONNAVOWSK | | PBBX ACU | CSU/ECT Run No. | 16/295 |

| Item | Total QTY | Article(s) | PETS No. | Pkg. QTY | Disposition |
|---|---|---|---|---|---|
| 1 | 1 | DUCT TAPE | 1600111903 | 1 | |
| | | COLOR: GRAY MAKE: UNK MODEL: UNK | | | |
| | | GRAY DUCT TAPE | | | |
| 2 | 1 | RECEIPT | 1600111901 | 1 | |
| | | DOCUMENT HOLDER'S NAME: UNK DOCUMENT NO.: UNK | | | |
| | | ONE HOME DEPOT RECEIPT | | | |
| 3 | 1 | PLASTIC BAG | 1600111902 | 1 | |
| | | COLOR: CLEAR MAKE: UNK MODEL: UBK | | | |
| | | ONE CLEAR PLASTIC BAG | | | |

REMARKS:
01/25/2015 00:00 : ON JANUARY 24, 2015 APPROXIMATELY 2050 HOURS PO SANCHEZ TAX ████ AND PO ANDERSON TAX# ████ ASSIGNED TO PBBX ECT WERE REQUESTED TO 1631 STILLWELL AVENUE TO PROCESS THE SCENE OF A ROBBERY INSIDE THE LOCATION. PO SANCHEZ DID CONFER WITH DET RIVERA TAX # ████ ON SCENE. PLACED ON THIS INVOICE ARE COMINGLE ITEMS THAT WERE COLLECTED BY PO INOA TAX# ████ DUCT TAPE, RECEIPT AND A PLASTIC BA G. VOUCHER IS BEING SENT TO THE LAB AS DNA INVESTIGATORY IN ORDER TO IDENTIFY THE UNKNOWN SUSPECTS. NO DNA ELIMINATION SAMPLE UNAVA ILABLE. PDU WILL COLLECT ON A LATER DATE. DET RIVERA TAX# ████9 PDU ASSIGNED TO CASE. SCENE PROCESSED AS ROUTINE.

01/25/2015 00:31 : ON JANUARY 24, 2015 APPROXIMATELY 2050 HOURS PO SANCHEZ TAX # ████ ND PO ANDERSON TAX# ████ ASSIGNED TO PBBX ECT WERE REQUESTED TO 1631 STILLWELL AVENUE TO PROCESS THE SCENE OF A ROBBERY INSIDE THE LOCATION. PO SANCHEZ DID CONFER WITH DET RIVERA TAX # 939314 ON SCENE. PLACED ON THIS INVOICE ARE COMMINGLED ITEMS THAT WERE COLLECTED BY PO INOA TAX# ████ DUCT TAPE, RECEIPT AND A PLASTIC BAG. VOUCHER IS BEING SENT TO THE LAB AS DNA INVESTIGATORY IN ORDER TO IDENTIFY THE UNKNOWN SUSPECTS. NO DNA ELIMINATION SAMPLE UNA VAILABLE. PDU WILL COLLECT ON A LATER DATE. DET RIVERA TAX# ████ 49 PDU ASSIGNED TO CASE. SCENE PROCESSED AS ROUTINE.

01/25/2015 01:03 : 01/25/2015 00:00 ON JANUARY 24, 2015 APPROXIMATELY 2050 HOURS PO SANCHEZ TAX # ████ AND PO ANDERSON TAX# ████ ASSIGNED TO PBBX ECT WERE REQUESTED TO 1631 STILLWELL AVENUE TO PROCESS THE SCENE OF A ROBBERY INSIDE THE LOCATION. PO SANCHEZ DID CONFER WITH DET RIVERA TAX # ████ ON SCENE. PLACED ON THIS INVOICE ARE COMMINGLED ITEMS THAT WERE COLLECTED BY PO INOA TAX# ████ UCT TAPE, RECEIPT AND A PLASTIC BA G. VOUCHER IS BEING SENT TO THE LAB AS DNA INVESTIGATORY IN ORDER TO IDENTIFY THE UNKNOWN SUSPECTS. NO DNA ELIMINATION SAMPLE UNAVA ILABLE. PDU WILL COLLECT ON A LATER DATE. DET RIVERA TAX#

2015-006544
CMD/AGCY:049



Invoice No. **2000397038**

PCD Storage No. --

printed: 01/25/2015 01:20

Page No. 1 of 2

2 0 1 5
4 F - 3



**REQUEST FOR LABORATORY**
**EXAMINATION REPORT**
PD 521-165(Rev.01-09)



RFL# 9 9 0 0 0 1 3 1 9 9 5

---

7-DNA - ANALYSIS TO IDENTIFY THE SOURCE OF     TO AID IN INVESTIGATION                    PROBATIVE
THE BIOLOGICAL MATERIAL ON AN EVIDENCE
ITEM OR DNA TYPING OF A REFERENCE
SAMPLE,8-LATENT FINGER / PALM PRINT -
DEVELOPMENT

| Exact Location Where Evidence Was Collected/Recovered | Suspected Type Of Biological Evidence | Biological Bag No. |
|---|---|---|
| COLLECTED FROM PO INOA IN REGARDS TO A ROBBERY AT 1631 STILLWELL AVENUE | SKIN CELLS | 1600111903 |

Field Processed?     ITEM NOT PROCESSED IN THE FIELD

Compare this item no. 1 to Inv. No. Item :

Was DNA Evidence collected from a residential home/apartment owned/leased by any of the suspects/arrestees?   NO

Suspect/Arrestee : N/A

Was DNA Evidence collected from a motor vehicle owned/leased by the suspects/arrestees?   NO

Suspect/Arrestee : N/A   Year :   Make :   Model :   Color:

Property Clerk

Invoice Item Number

| 2 | | |
|---|---|---|
| Description of Evidence | GENERAL PROPERTY \|FINANCIAL DOCUMENT  \|RECEIPT \|DOCUMENT HOLDER'S NAME:UNK \|DOCUMENT NO.:UNK \|NYSPIN ALARM:NO \| ONE HOME DEPOT RECEIPT | |

| Analysis Exam No. | Specific Reason For Requesting The Examination Analysis Or Comparison Be Performed | Probative Value |
|---|---|---|

---

7-DNA - ANALYSIS TO IDENTIFY THE SOURCE OF     TO AID IN INVESTIGATION                    PROBATIVE
THE BIOLOGICAL MATERIAL ON AN EVIDENCE
ITEM OR DNA TYPING OF A REFERENCE
SAMPLE,8-LATENT FINGER / PALM PRINT -
DEVELOPMENT

| Exact Location Where Evidence Was Collected/Recovered | Suspected Type Of Biological Evidence | Biological Bag No. |
|---|---|---|
| COLLECTED FROM PO INOA IN REGARDS TO A ROBBERY AT 1631 STILLWELL AVENUE | SKIN CELLS | 1600111901 |

Field Processed?     ITEM NOT PROCESSED IN THE FIELD

Compare this item no. 2 to Inv. No. Item :

Was DNA Evidence collected from a residential home/apartment owned/leased by any of the suspects/arrestees?   NO

Suspect/Arrestee : N/A

Was DNA Evidence collected from a motor vehicle owned/leased by the suspects/arrestees?   NO

Suspect/Arrestee : N/A   Year : Make :   Model :   Color:

Property Clerk

Invoice Item Number

| 3 | | |
|---|---|---|
| Description of Evidence | GENERAL PROPERTY \|CONTAINERS  \|PLASTIC BAG \|COLOR:CLEAR \|MAKE:UNK \|MODEL:UBK \|NYSPIN ALARM:NO \| ONE CLEAR PLASTIC BAG | |

| Analysis Exam No. | Specific Reason For Requesting The Examination Analysis Or Comparison Be Performed | Probative Value |
|---|---|---|

---

**Lab Copy**
Printed: 01/25/2015 01:22
2015 - 006544



RFL# 9 9 0 0 0 1 3 1 9 9 5

4G



**LABORATORY REPORT**

NEW YORK CITY POLICE DEPARTMENT
POLICE LABORATORY
CRIMINALISTICS SECTION

| | |
|---|---|
| LABORATORY # | 2015-006544 |
| LABORATORY REPORT # | 1 |
| COMPLAINT # | 2015-049-00434 |
| VOUCHER # | 2000397038 |

VOUCHERED BY:   POF VONNAVOWSK SANCHEZ Ta~~x~~
                Command: PBBX ACU

| | |
|---|---|
| DATE SUBMITTED: | 01/26/2015 |
| DATE ASSIGNED: | 01/28/2015 |
| DATE PREPARED: | 02/02/2015 |

DEFENDANT(S):

TYPE OF ANALYSIS: LATENT PRINT DEVELOPMENT

DESCRIPTION OF EVIDENCE

EVIDENCE PRESENT AS ITEMIZED ON VOUCHER:      [X] YES      [ ] NO   (SEE REMARKS)

| Voucher Item# | Lab Item # | Qty | Description |
|---|---|---|---|
| 1 | 1 | 1 | Bundle of grey duct tape with possible hairs and possible fibers. |
| 2 | 2 | 1 | White paper receipt from "THE HOME DEPOT" dated 1/10/15 from store number 6877 for a 10 pack of 48 inch heavy duty cable ties. |
| 3 | 3 | 1 | Clear plastic bag ripped open and empty for "Commercial Electric" brand 48 inch heavy duty ties, quantity of 10. |

RESULTS OF EXAMINATION/ANALYSIS

Latent print(s) of potential value were developed on the laboratory item(s) listed below.  These print(s) were digitally captured and digitally processed. Copies were sent to the Latent Print Section of this Department for further analysis.
Latent print(s) were recovered from the following:

<u>Item # 3</u>        Total # of prints: 6 (identified as CMP1-CMP6).
               CMP1-CMP3 on front exterior of bag.
               CMP4-CMP6 on back exterior of bag.

No latent prints/friction ridge detail suitable for capture/identification was observed on the following laboratory item(s): <u>1</u>.

No latent prints/friction ridge detail was observed on the following laboratory item(s): <u>2</u>.

THIS REPORT DOES NOT CONSTITUTE THE ENTIRE CASE FILE.  THE CASE FILE MAY BE COMPRISED OF WORKSHEETS, IMAGES, ANALYTICAL DATA AND OTHER DOCUMENTS.
THE DEFINITIONS OF TERMS USED IN THIS REPORT CAN BE LOCATED AT THE NEW YORK STATE DIVISION OF CRIMINAL JUSTICE SERVICES WEBSITE:
HTTP://WWW.CRIMINALJUSTICE.NY.GOV/FORENSIC/LABREPORTSTANDARDS.HTM
THE RESULTS ARE THE OPINIONS / INTERPRETATIONS / CONCLUSIONS OF THE UNDERSIGNED.
I HEREBY CERTIFY THAT I TESTED/EXAMINED/ANALYZED THE ABOVE DESCRIBED ITEM(S) AND THAT THIS REPORT IS AN ORIGINAL REPORT MADE BY ME.  FALSE STATEMENTS
MADE HEREIN ARE PUNISHABLE AS A CLASS "A" MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE NEW YORK STATE PENAL LAW.

| CRIM II | Cristina Pires | _Cristi..._ | | 02/02/2015 | 02/02/2015 |
|---|---|---|---|---|---|
| RANK/TITLE | ANALYST NAME | ANALYST SIGNATURE | TAX # | DATE PREPARED | DATE ISSUED |

POLICE LABORATORY FORM 01 (REVISION # 15-01, DATE EFFECTIVE: 01/02/2015, PAGE 1 OF 1, ISSUING AUTHORITY: DIRECTOR / DEPUTY DIRECTOR)      Page 1 of 2

2015      4G-2

Piris - got all 3 items
        receipt, duct tape, bag

    tried to get DNA from tape + bag
    not Receypt - no touch DNA per ACME
              from paper (not worth testing)

DNA swabs - do a new lab request.

    RDNV   budge detail no value
         - smudge, too small etc.
    PAV / pot. of value - over inclusive

      CA = mano
      ARS = alt 1+ source

    Ardrox dye stain - green yellow
    do no matter what   dye w/ UV
    can see more than
         just an superglue.

Item 2 - receipt paper is thermal
    need diff reagent
      diff solvent
      "Hot print system" is one option
              negative here
    1,2 - indanedione
            reacts w/ AAs from sweat
    3 days over reaction
            negative

4G-3

12.     A patrol officer who arrived at the Shop in response to Individual-1's 911 call ("Officer-1") was able to trace the BMW using its On Star location system to the Riverdale section of the Bronx.  The BMW was parked on the side of the road, and Robert Bishun was propped up in a seated position in the back seat, with a zip tie around his neck.  After knocking out the window of the BMW, Officer-1 was able to pull Bishun out.  Bishun was taken to Montefiore Hospital, where he was pronounced dead.

13.     The medical examiner who conducted the autopsy of Robert Bishun stated that Bishun died of strangulation, and that the wounds around his neck suggest that someone killed Bishun by applying pressure to Bishun's back while pulling at the zip tie around his neck.

14.     I have reviewed surveillance video from the vicinity of the Shop on or about September 20, 2016.  This video shows the Robbers arriving at the Shop in a black SUV, loitering on the street outside the Shop, then eventually entering the Shop.  The video further shows the Robbers leaving the Shop with Bishun some time later, and driving away in the black SUV and the BMW.

The 2015 Robbery

15.     I have reviewed NYPD reports of a robbery of the Shop on or about January 24, 2015.  Two black men entered the Shop, pointed a gun at Robert Bishun, attached Bishun's hands with the same zip ties used in the 2016 robbery, and demanded money.  The report states that the robbers stole approximately $15,000 cash.

16.     I have spoken with NYPD officers, who informed me that when officers canvassed the Shop shortly after the robbery, they found a Home Depot bag containing zip ties similar to those used by the robbers.  They were able to lift a fingerprint from the Home Depot

2016-09-26

US_000387



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

―――――――――――――――――――――――――――――――――――――――――

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 12, 2018

**BY EMAIL**

Elizabeth Edwards Macedonio, Esq.
Louis Freeman, Esq.
Carla Sanderson, Esq.

Bobbi Sternheim, Esq.
Jeremy Schneider, Esq.

Re: *United States v. Pizarro and Rivera*, S4 17 Cr. 151 (AJN)

Counsel:

The Government writes in response to your letter dated November 7, 2018 concerning the black shirt and zip ties recovered from the scene of the January 24, 2015 robbery at 1631 Stillwell Avenue in the Bronx, New York (the "2015 Robbery"). As you know from your review of the Government's pretrial productions in this case, you are already in possession of the following:

- NYPD documents concerning the photographing, collection, invoicing, and analysis of evidence recovered from the scene of the 2015 Robbery. *See* US_000327-353, US_000106-112, US_019836-854, US_034282-308, US_034357-60, US_034857, 3502-02, 3504-01, 3504-07, 3504-09, 3504-10, 3523-01, 3523-02, 3523-03, 3523-05.

- OCME documents concerning the analysis of evidence recovered from the scene of the 2015 Robbery. *See* US_000125-129, US_019827-867, 3507-05.

- Interview notes and police paperwork for officers who responded to the 2015 Robbery and were interviewed by the Government. *See* 3523-01, 3523-02, 3523-03, 3523-04, 3523-05, 3523-06, 3526-02, 3526-03, 3526-04, 3529-01, 3529-02, 3531-01, 3531-02.

4G-1A

We understand from the NYPD that the black shirt and zip ties recovered from the scene of the 2015 Robbery are currently in the custody of the NYPD property clerk, under the invoice for those objects that is in your possession. *See* US_019836-37, 3523-05.

Very truly yours,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____
Jessica Fender
Jared Lenow
Jason Swergold
Assistant United States Attorneys
(212) 637-2276 / 1068 / 1023

Complaint# 2015-049-00434

4b

Page 23 of 43



| | COMPLAINT - FOLLOW UP INFORMATIONAL REPORT - GENERAL INVESTIGATION | Crime/Condition ROBBERY | Command 049-49TH PRECINCT Date of This Report 02/06/2015 |
|---|---|---|---|

| Date of UF61 01/24/2015 | Date Case Assigned 01/24/2015 | Complaint No. 2015-049-00434 | Case No. 2015 - 34 | Unit Reporting BRAM | Follow-Up No. 16 |
|---|---|---|---|---|---|

| Complainant's Name BISHUN, ROBERT | Address 423 NORTH MAIN STREET SPRING VALLEY NY 10977 | Apt No. PH |
|---|---|---|

Nickname/Alias/Middle Name

| Sex MALE | Race ASIAN/PAC.ISL | Date of Birth 02/18/1980 | Age 34 | |
|---|---|---|---|---|
| Home Telephone | Business Telephone 718-684-4959 | Cell Phone 347-386-2756 | Beeper # | E-Mail Address |

| Activity Address Location OFFICE | | Street | City | State | Zip | Apt # |
|---|---|---|---|---|---|---|
| Cross Street | | | Intersection of and | | Premise Type | |

| Activity Date 02/06/2015 | Activity Time 17:45 |
|---|---|

Topic/Subject:
HOME DEPOT RECEIPT

Summary of Investigation:
1. On February 6, 2015, at approximately 1745 hours the undersigned states that there was a Home Depot receipt left at the scene of the robbery. The receipt has been vouchered by Bronx ECT. The receipt describes a purchase of a bag of zip ties purchased at a Home Depot on Bruckner Blvd in the Bronx.

2. Case active.

| Reporting Officer: | Rank DT3 | Name ERIC RIVERA | | Tax Reg. No. | Command 259-49 DET SQUAD |
|---|---|---|---|---|---|
| Reviewing Supervisor: | Manner of Closing - | Date Reviewed 02/07/2015 | Date of Next Review | Name JAMES NONNON | Supv. Tax No. |

4C



**COMPLAINT - FOLLOW UP**
**INFORMATIONAL REPORT - STILL IMAGES / PHOTO**
**COLLECTED**

| Crime/Condition | Command |
|---|---|
| ROBBERY | 049-49TH PRECINCT |

Date of This Report
02/06/2015

| Date of UF61 | Date Case Assigned | Complaint No. | Case No. | Unit Reporting | Follow-Up No. |
|---|---|---|---|---|---|
| 01/24/2015 | 01/24/2015 | 2015-049-00434 | 2015 - 34 | BRAM | 17 |

| Topic/Subject | Activity Date | Activity Time |
|---|---|---|
| (STILL IMAGES / PHOTO COLLECTED) HOME DEPOT STILL PHOTO | 02/06/2015 | 17:55 |

| Complainant's Name | Address | Apt No. |
|---|---|---|
| BISHUN, ROBERT | 423 NORTH MAIN STREET SPRING VALLEY NY 10977 | PH |

**Nickname/Alias/Middle Name**

| Sex | Race | Date of Birth | Age | |
|---|---|---|---|---|
| MALE | ASIAN/PAC.ISL | 02/18/1980 | 34 | |
| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address |
| | 718-684-4959 | 347-386-2756 | | |

| Person Interviewed Last Name, First M.I. | Address | Apt No. |
|---|---|---|
| | | |

**Nickname/Alias/Middle Name**

| Position/Relationship | Sex | Race | Date of Birth | Age |
|---|---|---|---|---|
| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address |

**Details**

**Summary of Investigation:**
1. On February 6, 2015, at approximately 1755 hours the undersigned did upload a still image from video surveillance from Home Depot. The individual in the photo is the person purchasing the zip ties.

2. Case active.

**ATTACHMENT**

| No | Attachment | Description |
|---|---|---|
| 1 | HOME DEPOT PHOTO   Printable Version | HOME DEPOT PHOTO |

| Reporting Officer: | Rank | Name | | Tax Reg. No. | Command |
|---|---|---|---|---|---|
| | DT3 | ERIC RIVERA | | | 259-49 DET SQUAD |
| Reviewing Supervisor: | Manner of Closing | Date Reviewed | Date of Next Review | Name | Supv. Tax No. |
| | | 02/07/2015 | | JAMES NONNON | |

Complaint# 2015-049-00434  Page 25 of 43



| | COMPLAINT - FOLLOW UP INFORMATIONAL REPORT - VIDEO COLLECTED | Crime/Condition ROBBERY | Command 049-49TH PRECINCT Date of This Report 02/06/2015 |
|---|---|---|---|

| Date of UF61 01/24/2015 | Date Case Assigned 01/24/2015 | Complaint No. 2015-049-00434 | Case No. 2015 - 34 | Unit Reporting BRAM | Follow-Up No. 18 |
|---|---|---|---|---|---|

| Topic/Subject (VIDEO COLLECTED) VIDEO FROM HOME DEPOT | | Activity Date 02/06/2015 | Activity Time 18:20 |
|---|---|---|---|

| Complainant's Name BISHUN, ROBERT | Address | Apt No. PH |
|---|---|---|

| Nickname/Alias/Middle Name | | | |
|---|---|---|---|
| Sex MALE | Race ASIAN/PAC.ISL | Date of Birth | Age 34 |
| Home Telephone | Business Telephone | Cell Phone | Beeper #   E-Mail Address |

| Person Interviewed Last Name, First M.I. | Address | Apt No. |
|---|---|---|
| Nickname/Alias/Middle Name | | |
| Position/Relationship | Sex | Race | Date of Birth | Age |
| Home Telephone | Business Telephone | Cell Phone | Beeper #   E-Mail Address |

**Details**

Summary of Investigation:

1. On February 6, 2015, at approximately 1820 hours the undersigned did collect video from Home Depot where an unknown male is purchasing a bag of zip ties.

2. Case active.

**ATTACHMENT**

| No | Attachment | Description |
|---|---|---|
| 1 | HOME DEPOT VIDEO | HOME DEPOT VIDEO |

Locations Of The Camera That Captured The Collected Video

Video Collected
YES

| 1 | Activity Address Location NYC | Street 2560 BRUCKNER BOULEVARD | City BRONX | State NY | Zip | Apt # |
|---|---|---|---|---|---|---|
| | Cross Street HUTCHINSON RIVER PARKWAY and BRUSH AVENUE | | Intersection of | | | Premise Type |

| Reporting Officer: | Rank DT3 | Name ERIC RIVERA | | Tax Reg. No. | Command 259-49 DET SQUAD |
|---|---|---|---|---|---|
| Reviewing Supervisor | Manner of Closing | Date Reviewed 02/07/2015 | Date of Next Review | Name JAMES NONNON | Supv. Tax No. |

Complaint# 2015-049-00434                    Page 33 of 43

| COMPLAINT - FOLLOW UP INFORMATIONAL REPORT - FINGERPRINT IDENTIFICATION RESULT | | Crime/Condition ROBBERY | Command 259-49 DET SQUAD Date of This Report 03/17/2015 |
|---|---|---|---|

| Date of UF61 01/24/2015 | Date Case Assigned 01/24/2015 | Complaint No. 2015-049-00434 | Case No. 2015 - 34 | Unit Reporting SYSTEM GENERATED | Follow-Up No. 24 |
|---|---|---|---|---|---|

| Topic/Subject (FINGERPRINT IDENTIFICATION RESULT) FINGERPRINT IDENTIFICATION RESULT | Activity Date 03/25/2015 | Activity Time 22:00 |
|---|---|---|

**Finger Print Results**

| Identification Date 03/11/2015 | OCME Number 46B-2015 |
|---|---|
| Complaint Number 2015-049-000434 | F Bio Number photo images 1,2,3,4 |
| Voucher Number | Voucher Item Number 0 |

Examiner
LESROY PARRY

Identification Date : 03/11/2015
Complaint Number : 2015-049-000434
Examiner : LESROY PARRY
Latent Case Number : 46B-2015
Lift Number : photo images 1,2,3,4

Results
OTHER

Additional Information
FINGER PRINTS ARE FOR ROBERT PIZARRO DOB: 01/27/1980 NYSID: 08400137N

| Perpetrator's Last Name, First M.I. PIZARRO, ROBERT | | | | Wanted/Arrested SUSPECT ONLY DND | | |
|---|---|---|---|---|---|---|
| Nickname/Alias/Middle Name | | | | | | |
| Address | | | | Apt No. | Res. Pct. | NYSID No. 08400137N |
| Position/Relationship | Sex | Race | Date of Birth | Age 35 | Height | Weight |
| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address | U.S. Citizen | State/Country of Birth |
| Description | | | | | | |
| Accent | Weapon | Describe Weapon (If firearm, give color, make, caliber, type, model, etc.) | | | Discharged | |
| Gang Affiliation | | Gang Name | | Gang Identifier | | |
| M.O. | | Transit M.O. | | | | |
| Action Toward Victim | | Special Characteristics | | New Burglary/Grand Larceny Specific M.O. | | |
| Mask: | | | Gloves: | | | |
| Clothing Description | | | | | | |
| Scars, Marks | | | | | | |
| Impersonation of | | | If other | | | |
| Frequents Areas in the Confines of the Precinct(s) | | | | | | |

| ATTACHMENT | | |
|---|---|---|
| No | Attachment | Description |

4D-4



### More saving.
### More doing.™

STORE# 6877 : BRONX - BRUCKNER BOULEVARD
STORE MANAGER: JOHN PAPA : 718-828-1071

6877  00008  69735    01/10/15  05:39 PM
CASHIER ERICA - EXD2387



4715409150244 CABLE TIE <A>         8.37
48" NATURAL HVY DUTY CABLE TIE 10PK

```
SUBTOTAL            8.37
SALES TAX           0.74
TOTAL              $9.11
CASH               10.15
     CHANGE DUE      1.04
```

6877 08 69735 01/10/2015 5509

RETURN POLICY DEFINITIONS
POLICY ID   DAYS   POLICY EXPIRES ON
A      1      90        04/10/2015
THE HOME DEPOT RESERVES THE RIGHT TO
LIMIT / DENY RETURNS  PLEASE SEE THE
RETURN POLICY SIGN IN STORES FOR
DETAILS.

BUY ONLINE PICK-UP IN STORE
AVAILABLE NOW ON HOMEDEPOT.COM.
CONVENIENT, EASY AND MOST ORDERS
READY IN LESS THAN 2 HOURS!
*****************************************

ENTER FOR A CHANCE
TO WIN A $5,000
HOME DEPOT GIFT
CARD!

Share Your Opinion With Us! Complete
the brief survey about your store visit
and enter for a chance to win at:

www.homedepot.com/opinion

COMPARTA SU OPINION EN UNA BREVE
ENCUESTA PARA LA OPORTUNIDAD DE GANAR.

User ID:
H86  146636  139767
Password:
15060  139759

Entries must be entered by 02/09/2015.
Entrants must be 18 or older to enter.
See complete rules on website. No
purchase necessary.

*Post-analysis*
*Front*
*Cap*

2015-006544  Item 2
Cap

4

4D-1



STORE# 6877 : BRONX - BRUCKNER BOULEVARD
STORE MANAGER LARRY SMITH: 718-828-1071

6877  00025  80597    07/15/20  03:10 PM
SALE CASHIER JAZZMYNE



713153293518 CABLE TIES <A>
CE 48" PLENUM CABLE TIES, 15PK

TRANSACTION SUSPENDED

|||||||||||||||||||||||||||||||||||||
RECALL #: 0002908059

********** INVALID RECEIPT **********

* * * * *  NO MONEY TAKEN  * * * * *



1806 EAST GUN HILL RD BRONX, NY 10469
HARLAN RIVAL STR MANAGER 718-862-9800

1221  00027  81805    07/15/20  04:25 PM
SALE CASHIER NIOMY

713153293518 CABLE TIES <A>           10.98
CE 48" PLENUM CABLE TIES, 15PK

TRANSACTION SUSPENDED

|||||||||||||||||||||||||||||||||||||
RECALL #: 0002708180

********** INVALID RECEIPT **********

4D-2



More saving.
More doing."

STORE# 6877 : BRONX   BRUCKNER BOULEVARD
STORE MANAGER:LARRY SMITH: 718-828-1071

6877  00025  80997    07/15/20  03:10 PM
SALF CASHIER JAZZMYNE

7131532938l8 CABLE TIES <A>
OF 48" PLENUM CABLE TIES, 15PK

TRANSACTION SUSPENDED

RECALL #: 0002908059

xxxxxxxxxx  INVALID RECEIPT  xxxxxxxxx

x x x x x x  NO MONEY TAKEN  x x x x x x

4D-3



**More saving.**
**More doing.™**

1806 EAST GUN HILL RD BRONX, NY 10469
HARLAN RIVAL STR MANAGER 718-862-0800

1221  00027  81805    07/15/20  04:25 PM
SALE CASHIER NIOMY

713153293518 CABLE TIES A:        10.98
CE 48" PLENUM CABLE TIES, 15PK

TRANSACTION SUSPENDED

RECALL #: 0002708180

*********** INVALID RECEIPT ***********

* * * * * *  NO MONEY TAKEN  * * * * * *

4D-4



## THE HOME DEPOT®

**More saving.
More doing.**

STORE# 6877 : BRONX - BRUCKNER BOULEVARD
STORE MANAGER: JOHN PAPA - 718-828-1071

6877  00008  69735    01/10/15  05:39 PM
CASHIER ERICA - EXD2387



4715409150244 CABLE TIE <A>        8.37
48" NATURAL HVY DUTY CABLE TIE 10PK

```
          SUBTOTAL          8.37
          SALES TAX         0.74
          TOTAL            $9.11
          CASH             10.15
               CHANGE DUE   1.04
```

RETURN POLICY DEFINITIONS
POLICY ID   DAYS   POLICY EXPIRES ON
A      1      9D        04/10/2015
THE HOME DEPOT RESERVES THE RIGHT TO
LIMIT / DENY RETURNS. PLEASE SEE THE
RETURN POLICY SIGN IN STORES FOR
DETAILS.

BUY ONLINE PICK-UP IN STORE
AVAILABLE NOW ON HOMEDEPOT.COM.
CONVENIENT, EASY AND MOST ORDERS
READY IN LESS THAN 2 HOURS!
*************************************

ENTER FOR A CHANCE
TO WIN A $5,000
HOME DEPOT GIFT
CARD!

Share Your Opinion With Us! Complete
the brief survey about your store visit
and enter for a chance to win at:

www.homedepot.com/opinion

COMPARTA SU OPINION EN UNA BREVE
ENCUESTA PARA LA OPORTUNIDAD DE GANAR.

User ID:
H86  146636  139767

Password:
15060  139759

Entries must be entered by 02/09/2015.
Entrants must be 18 or older to enter.
See complete rules on website. No
purchase necessary.

Post-analysis
Front
cut

2015-006544  Item 2
cut

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

        v.

ROBERT PIZARRO and
JUAN RIVERA,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**STIPULATION:**
**Home Depot Security Video**

S3 17 Cr. 151 (AJN)

IT IS HEREBY STIPULATED AND AGREED by and between the United States of America, by Geoffrey S. Berman, United States Attorney, Jessica Fender, Jared Lenow, and Jason Swergold, Assistant United States Attorneys; defendant Robert Pizarro, by and with the consent of his attorneys Elizabeth Macedonio, Esq., Louis Freeman, Esq. and Carla Sanderson, Esq., and defendant Juan Rivera, by and with the consent of his attorneys, Bobbi Sternheim, Esq., and Jeremy Schneider, Esq., that:

1.     Government Exhibit 80 is a CD that contains true and accurate video footage captured on January 10, 2015 by a security camera at the Home Depot store located at 2560 Bruckner Boulevard, Bronx, New York.

1

GOVERNMENT
EXHIBIT
1006
17 Cr. 151 (AJN)

4K

2.    Government Exhibit 80 and this Stipulation may be received as Government

Exhibits at trial.

Dated: New York, New York
        April 23, 2018

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By:  _____
     Jessica Fender
     Jared Lenow
     Jason Swergold
     Assistant United States Attorneys

     _____
     Elizabeth Macedonio, Esq.
     Louis Freeman, Esq.
     Carla Sanderson, Esq.
     Attorneys for defendant Robert Pizarro

     _____
     Bobbi Sternheim, Esq.
     Jeremy Schneider, Esq.
     Attorneys for defendant Juan Rivera

2

LIJ

GOVERNMENT
EXHIBIT
**1005**
17 Cr. 151 (AJN)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                      :

UNITED STATES OF AMERICA      :    **STIPULATION:**
                      :    **Fingerprint Collection**
        v.            :
                      :    S4 17 Cr. 151 (AJN)
ROBERT PIZARRO and        :
JUAN RIVERA,                :
                      :
           Defendants.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      IT IS HEREBY STIPULATED AND AGREED by and between the United States of America, by Geoffrey S. Berman, United States Attorney, Jessica Fender, Jared Lenow, and Jason Swergold, Assistant United States Attorneys; defendant Robert Pizarro, by and with the consent of his attorneys Elizabeth Macedonio, Esq., Louis Freeman, Esq. and Carla Sanderson, Esq., and defendant Juan Rivera, by and with the consent of his attorneys, Bobbi Sternheim, Esq., and Jeremy Schneider, Esq., that:

      1.    On June 9, 2007, the fingerprints and thumbprints of Robert Pizarro, the defendant, were properly and legitimately collected by a person authorized to do so. Those fingerprints and thumbprints were subsequently uploaded into the Automated Fingerprint Identification System, or "AFIS," an electronic database that is used to store, and analyze fingerprint and thumbprint data obtained from a variety of sources.

      2.    Government Exhibit 924 is a true and accurate copy of the fingerprint card associated with the fingerprint and thumbprint collection taken from Robert Pizarro, the defendant, on June 9, 2007.



spoken with law enforcement officers who have reviewed the data provided as a result of that order, and have learned the following:

        a.    Target Cellphone-1 was in the vicinity of the location where Robert Bishun's body was eventually discovered, shortly before the body's discovery by the NYPD. Additionally, Target Cellphone-1 frequently communicated with the 8892 Number in the months leading up to the 2016 Murder.

        b.    Target Cellphone-2 was in the vicinity of the Shop around the time of Bishon's kidnapping from the Shop. Additionally, Target Cellphone-2 was communicating with the 0220 Number at the time of Bishun's kidnapping.

        c.    Target Cellphone-3 communicated approximately five times with Target Cellphone-1 while Target Cellphone-1 was in the vicinity of the location where Robert Bishun's body was eventually discovered, shortly before the body's discovery by the NYPD.

21.    I therefore respectfully submit that there are reasonable grounds to believe that the information requested is material to the investigation into the murder of Robert Bishun.

22.    I have reviewed public databases, which confirm that AT&T and Sprint PCS are the providers for the Target Cellphones.

23.    When the Government obtains records or information under § 2703(d), it is not required to notify the subscriber or customer. 18 U.S.C. § 2703(c)(3). Additionally, the Government may obtain an order precluding the provider from notifying the subscriber or any other third-party of the order obtained, for such period as the Court deems appropriate, where there is reason to believe that such notification will result in endangering the life or physical safety of an individual, flight from prosecution, destruction of or tampering with evidence, or intimidation

7

US 000423

9A-1

4. **Target Cellphones, Subscribers, Target Subjects, and Service Provider(s).** The Target Cellphones referenced in this Affidavit are the cellphones assigned call numbers (917) 688-0220 ("Target Cellphone-1") and (347) 310-8360 ("Target Cellphone-2" and, together, the "Target Cellphones"). As further discussed below, Target Cellphone-1 is subscribed in the name "Boost Mobile, PO Box 15955, Lenexa, KS 66285" ("Subscriber-1"). Robert Pizarro is believed to use Target Cellphone-1 and is a Target Subject of this investigation. Target Cellphone-2 is subscribed to in the name of "Juan Rivera, 1835 Washington Ave Apt 2, Bronx, NY 10457" ("Subscriber-2"). Juan Rivera is believed to use Target Cellphone-2 and is a Target Subject of this investigation. Sprint Nextel Corporation is the Service Provider for both of the Target Cellphones.

5. **Precision Location Capability.** Cellphone service providers have technical capabilities that allow them to collect at least two kinds of information about the locations of the cellphones to which they provide service: (a) precision location information, also known as E-911 Phase II data, GPS data, or latitude-longitude data, and (b) cell site data, also known as "tower/face" or "tower/sector" information. Precision location information provides relatively precise location information about a cellphone, which a provider can typically collect either via GPS tracking technology built into the phone or by triangulating the device's signal as received by the provider's nearby cell towers. Cell site data, by contrast, reflects only the cell tower and sector thereof utilized in routing any communication to and from the cellphone, as well as the approximate range of the cellphone from the tower during the communication (sometimes referred to as "per-call measurement" ("PCM") or "round-trip time" ("RTT") data). Because cell towers are often a half-mile or more apart, even in urban areas, and can be ten or more miles apart in rural areas, cell site data is typically less precise than precision location information. Based on my training and experience, I know that the Service Provider has the technical ability to collect

3

US_000465

| Executed: 5/1/2018 12:32 | Executed by: NYPDFINEST \JOY930443 |

# New York City Police Department

| Source: | LPR | Date/Time: | 9/20/2016 22:56:51 | Asset: | FCU-77-F1 George Washington Bridge Lower Southbound |



| Vehicle | | Plate Number: A86GSJ | | Make: | | Model: | |
| | Color: | | Style: | | Year: | | State: NJ |
| | Ins Comp: | | VIN: | | Ins Policy: | | |

| DMV records (as of scan on 9/20/2016) |
| DMV records (as of 5/1/2018) |



US_035358

2F

U.S. Department of Justice
Drug Enforcement Administration

## REPORT OF INVESTIGATION

Page 1 of 2

| 1. Program Code | 2. Cross File | Related Files | 3. File No.<br>CT-16-0079 | 4. G-DEP Identifier<br>XGH1D |
|---|---|---|---|---|
| 5. By: Joseph D Mercurio, SA<br>At New York Joint TF | ☒ | CS-XX-XXXX | 6. File Title<br>GUILLEN, Gabriel et al. | |
| | ☐ | | | |
| | ☐ | | | |
| 7. ☐ Closed  ☐ Requested Action Completed<br>☐ Action Requested By: | ☐ | | 8. Date Prepared<br>10-04-2016 | |
| 9. Other Officers: GS Hector Pagan, SA Mike McGurk, SA Christian McNeal | | | | |
| 10. Report Re: CS Initial Debriefing of CS-XX-XXXX on October 4, 2016. | | | | |

### DRUG RELATED INFORMATION

1.   On September 4, 2016, SA Mercurio, GS Pagan, and SA McNeal conducted an initial debriefing of CS-XX-XXXXX, (hereafter referred to as CS) at the New York Division Office.  In sum and substance the CS stated that Gabriel **GUILLEN** a.k.a. El Toti, Joel **TAPIA** a.k.a. Emilio **VASQUEZ**, Carlos **PEREZ** a.k.a. Luis, Matthew **VASQUEZ** a.k.a. Matthew, and Jose **CALDERON**, are members of a violent Drug Trafficking Organization, (DTO) distributing cocaine and heroin throughout the New York/New Jersey/Rhode Island area.

### NONDRUG RELATED CRIMINAL INFORMATION

1.   The CS also stated that **GUILLEN** and the above members of his organization are involved in the homicide of Robert Bishun on September 20, 2016.   Bishun was strangled and murdered within the confines of the NYPD 50th Pct., Bronx, NY. (NYPD Complaint# 2016-049-006266-1).

### FINANCIAL INFORMATION

2.   The CS no financial information at this time.

### TERRORIST ACTIVITIES

3.   The CS has no information pertaining to terrorist activities at this time.

| 11. Distribution:<br>Division<br><br>District<br><br>Other   CS Coordinator | 12. Signature (Agent)<br><br>Joseph D Mercurio, SA | 13. Date<br>10-04-2016 |
|---|---|---|
| | 14. Approved (Name and Title)<br>/s/ Hector E Pagan, GS | 15. Date<br>10-06-2016 |

DEA Form      - 6
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

US_035342

2F-1

**U.S. Department of Justice**
Drug Enforcement Administration

| REPORT OF INVESTIGATION | | | | Page 1 of 1 |
|---|---|---|---|---|

| 1. Program Code | 2. Cross File | Related Files | 3. File No. CT-16-0079 | 4. G-DEP Identifier XGH1D |
|---|---|---|---|---|
| 5. By: Joseph D Mercurio, SA At: New York Joint TF | ☐ ☐ ☐ ☐ ☐ | | 6. File Title GUILLEN, Gabriel et al. | |
| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | | | 8. Date Prepared 10-04-2016 | |
| 9. Other Officers: SA Christian McNeal, Inv. Billy Ralat (SDNY), AUSA's Margaret Graham and Jessica Fender (SDNY) | | | | |
| 10. Report Re: Debriefing of a Source of Intelligence on October 4, 2016 | | | | |

**DETAILS**

1. Reference is made to all DEA-6 written to the above File Title and File Number.

2. On October 4, 2016, SA's Mercurio, McNeal, Inv. Ralat, AUSA Graham and AUSA Fender met with a Source of Intelligence, (hereafter referred to as an SOI), regarding the murder of Robert Bishun, and the **GUILLEN** Drug Trafficking Organization, at the New York Division Office.

3. Notes from the meeting were placed into the case file.

**INDEXING**

1. **GUILLEN**, Gabriel a.k.a. El Toti          -          Naddis# 7695684

| 11. Distribution: Division | 12. Signature (Agent) Joseph D Mercurio, SA | 13. Date 10-04-2016 |
|---|---|---|
| District | 14. Approved (Name and Title) /s/ Hector E Pagan, GS | 15. Date 10-17-2016 |
| Other   Sari | | |

DEA Form     - 6
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

US_035343

2 F-2

U.S. Department of Justice
Drug Enforcement Administration

# REPORT OF INVESTIGATION

Page 1 of 2

| 1. Program Code | 2. Cross File | Related Files | 3. File No. CT-16-0079 | 4. G-DEP Identifier XGH1D |
|---|---|---|---|---|
| 5. By: Joseph D Mercurio, SA At: New York Joint TF | ☐ ☐ ☐ ☐ | | 6. File Title GUILLEN, Gabriel et al. | |
| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | | | 8. Date Prepared 09-30-2016 | |
| 9. Other Officers: SA Christian McNeal | | | | |

10. Report Re: Intelligence Regarding murder of Robert Bishun from SOI on September 27, 2016.

## DETAILS

1. Reference is made to all DEA-6 written to the above File Title and File Number.

2. On September 27, 2016, at approximately 10:00PM, SA Mercurio spoke to a Source of Information, (hereafter referred to as SOI) via telephone.

3. At this time the SOI stated in sum and substance the following: earlier that day the SOI had run into Gabriel a.k.a. Gabriel GUILLEN while the SOI was riding on the subway. The SOI then went to GUILLEN's house located at 2032 E. 177th street, Apt.# 1C, 2nd floor, Bronx NY. At GUILLEN's house was Maria VASQUEZ (GUILLEN's mother) and Matthew VASQUEZ (GUILLEN's cousin). At approximately 1:00PM the SOI and GUILLEN left the apartment in GUILLEN's Gray Honda Accord to travel to Albert Einstein Monterfiore Hospital in the Bronx, NY., in order to visit a sick relative of the SOI. En route to the hospital GUILLEN drove to an industrial complex and pointed out an auto shop. GUILLEN stated that the owner of the auto shop had "met his judgement day". GUILLEN then told the SOI that "the guy", (Robert Bishun) that owned the auto shop was supposed to testify against a cop, (Merlin ALSTON) that knew GUILLEN's brother Jay a.k.a. Joel TAPIA. GUILLEN stated, ALSTON had been working for TAPIA delivering kilos of cocaine for $5,000.00 a kilo. ALSTON then told TAPIA to have him taken care of. TAPIA then contacted GUILLEN and told GUILLEN to have Bishun taken care of. GUILLEN then had Matthew VASQUEZ, Carlos PEREZ and 2 others carry out the kidnapping and murder of Bishun. GUILLEN

| 11. Distribution: Division | 12. Signature (Agent) Joseph D Mercurio, SA | 13. Date 09-30-2016 |
|---|---|---|
| District | 14. Approved (Name and Title) /s/ Hector E Pagan, GS | 15. Date 10-24-2016 |
| Other   Sari | | |

DEA Form    - 6
(Jul. 1996)

DEA SENSITIVE
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

2 F-3

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION | 1. File No. CT-16-0079 | 2. G-DEP Identifier XGH1D |
|---|---|---|
| (Continuation) | 3. File Title GUILLEN, Gabriel et al. | |
| 4. Page  2  of  2 | | |
| 5. Program Code | 6. Date Prepared 09-30-2016 | |

told the SOI that the crew went into the shop, tied up 2
workers, kidnapped Bishun, and then suffocated Bishun and left him in his
BMW.  **GUILLEN** stated that the he had been dealing with Bishun from
approximately 2007-2012.  In approximately 2011, **GUILLEN** says he gets
locked up with another guy going to Providence Rhode Island with a kilo or
two of coke, and that **GUILLEN** took the hit for the drugs.  When **GUILLEN**
gets out of jail he goes and sees Bishun who had been dealing with
**GUILLEN's** brother, **TAPIA**.  Bishun had sold **TAPIA** approximately 7 kilos of
coke that wasn't any good.  Bishun and **GUILLEN** had an altercation and
subsequently **GUILLEN** walked away.  **GUILLEN** also tells the SOI that Bishun
had gotten locked up for 2 kilos of heroin in 2011.

4. SA Mercurio told the SOI that he would set up a meeting in the near
future so that SA Mercurio could speak with him in person.

**INDEXING**

1. **GUILLEN**, Gabriel a.k.a. El Toti          –          Naddis# 7695684

2. **PEREZ**, Carlos a.k.a. Luis               –          Naddis# Pending

   FBI# 569875ED0

3. **TAPIA**, Joel a.k.a. Jay                  –          Naddis# 5322036

4. **VASQUEZ**, Matthew a.k.a. Matthew         –          Naddis# Pending

   FBI# 906247VC0

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

US_035347

2.F-4

U.S. Department of Justice
Drug Enforcement Administration

## REPORT OF INVESTIGATION

Page 1 of 2

| 1. Program Code | 2. Cross File | Related Files | 3. File No. CT-16-0079 | 4. G-DEP Identifier YGH1E |
|---|---|---|---|---|
| 5. By: Joseph D Mercurio, SA At: New York Joint TF | ☒ CS-17-154508 ☐ ☐ ☐ ☐ | | 6. File Title GUILLEN, Gabriel et al. | |
| 7. ☐ Closed  ☐ Requested Action Completed ☐ Action Requested By: | | | 8. Date Prepared 01-23-2017 | |
| 9. Other Officers: SA Christian McNeal, Inv. Raphael Torres | | | | |
| 10. Report Re: Acquisition of Exhibit# N-16 on January 23, 2017. | | | | |

## DETAILS

1. Reference is made to all DEA-6 written to the above File Title and File Number.

2. On January 23, 2017, SA Mercurio, downloaded a photograph of 2 text message sent to CS-17-154508, (hereafter referred to as CS) from Gabriel GUILLEN (Totii2 347-679-9614).

3. On or about November 3, 2016, SA Mercurio met with the CS and took a photo of 2 text message sent to the CS's phone by Gabriel GUILLEN, (347-679-9614).  The 1st text is dated October 24, 11:32AM.  The text message was in Spanish and read as follows:
   "Ahora cuando llehue lo Nuevo te tengo k dar 2 departe d Pineda eso biene esta semana".  Inv. Torres translated the above into English to read "Now, when the new arrives, I have to give you 2 parts of Pineda, that arrives this week.

4. The 2nd text dated October 28, 4:25PM, also in Spanish read as follows: "Olle lo del garaje murio ese muerto nunca van a saber k fue el policia k mando a matario asi k nunca volvamo hablar d eso".  Inv. Torres translated the text into English to read:  "Listen the thing about the garage is dead, that deceased, they are never going to know that the cop ordered the murder, so lets not ever talk about that".

| 11. Distribution: Division | 12. Signature (Agent)  Joseph D Mercurio, SA | 13. Date 01-24-2017 |
|---|---|---|
| District | 14. Approved (Name and Title) /s/ Hector E Pagan, GS | 15. Date 01-30-2017 |
| Other   Sari | | |

DEA Form    - 6
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

US_035348

ZF5

**U.S. Department of Justice**
Drug Enforcement Administration

| | | 1. File No.<br>CT-16-0079 | 2. G-DEP Identifier<br>YGH1E |
|---|---|---|---|
| **REPORT OF INVESTIGATION**<br>*(Continuation)* | | 3. File Title<br>GUILLEN, Gabriel et al. | |
| 4.<br>Page  2  of  2 | | | |
| 5. Program Code | | 6. Date Prepared<br>01-23-2017 | |

## CUSTODY OF EVIDENCE

1.  Exhibit N-16 is one (1) photograph of two (2) text messages sent to CS-17-154508's phone, from Gabriel **GUILLEN**, (347-679-9614), on October 24, 2016, and October 28, 2016, respectively. SA Joseph Mercurio photographed said Exhibit with SA Mercurio's cell phone and subsequently placed it in the case file pending labeling Exhibit# N-16. On January 23, 2017, SA Mercurio processed Exhibit# N-16, as witnessed by SA McNeal, and transferred custody of the Exhibit to GS Hector Pagan's authorized Mosler safe, as indicated in the log book. On January 27, 2017, SA Nicholas DeAmorin removed the Exhibit from the Mosler safe and subsequently submitted it to the NYD Non-Drug Evidence Custodian, as witnessed by SA Christian McNeal.

## INDEXING

1. **GUILLEN**, Gabriel a.k.a. El Toti          -          Naddis# 7695684

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

US_035349

2 F-6

**U.S. Department of Justice**
Drug Enforcement Administration

| **REPORT OF INVESTIGATION** | | | Page 1 of 2 |
|---|---|---|---|

| 1. Program Code | 2. Cross File | Related Files | 3. File No. CT-16-0079 | 4. G-DEP Identifier XGH1D |
|---|---|---|---|---|
| 5. By: Joseph D Mercurio, SA At: New York Joint TF | ☒ ☐ ☐ ☐ | CS-17-154508 | 6. File Title GUILLEN, Gabriel et al. | |
| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | ☐ ☐ | | 8. Date Prepared 10-26-2016 | |
| 9. Other Officers: Sgt. Chris Owen, Inv. Raphael Torres | | | | |
| 10. Report Re: Acquisition of Exhibit N-5 on October 24, 2016. | | | | |

## DETAILS

1. Reference is made to all DEA-6 written to the above File Title and File Number.

2. On October 24, 2016, at approximately 7:30PM SA Mercurio, met with CS-17-154508, (hereafter referred to as CS) at a predetermined location in the Bronx, NY.

3. At this time SA Mercurio took a photo of a text message sent to the CS's phone by Gabriel **GUILLEN**, (347-208-7201), at 12:01PM, on October 24, 2016. The text message was in Spanish and read as follows: "Como le hisimo al tipo del garaje asi le vamo aser al loco ese dago lo voy a secuestrar y darle lo del".

4. At approximately 8:15 PM, SA Mercurio showed the photo to Inv. Torres. Inv. Torres translated the text, in English to read as follows: "Just like we did to the guy from the garage. That's how we are going to do dago. I am going to kidnap him and give him his".

## CUSTODY OF EVIDENCE

1. Exhibit N-5 is one photograph of a text message sent to CS-17-154508's phone, from Gabriel **GUILLEN**, (347-208-7201), on October 24, 2016. SA

| 11. Distribution: Division | 12. Signature (Agent) Joseph D Mercurio, SA | 13. Date 10-26-2016 |
|---|---|---|
| District | 14. Approved (Name and Title) /s/ Hector E Pagan, GS | 15. Date 10-27-2016 |
| Other    CS Coordinator | | |

DEA Form    - 6
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

US_035350

2 F-1

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION | 1. File No. CT-16-0079 | 2. G-DEP Identifier XGH1D |
|---|---|---|
| (Continuation) | 3. File Title GUILLEN, Gabriel et al. | |
| 4. Page 2 of 2 | | |
| 5. Program Code | 6. Date Prepared 10-26-2016 | |

Mercurio photographed said Exhibit and then subsequently printed out the photograph. SA Mercurio maintained custody of said exhibit until processed, as witnessed by SA DeAmorin.  SA Mercurio transferred custody of Exhibit# N-5 to SA DeAmorin who subsequently turned custody over to the NYFD Non-Drug Evidence Custodian.

## INDEXING

1. **GUILLEN**, Gabriel a.k.a. El Toti          —          Naddis# 7695684

---

DEA Form     - 6a
(Jul. 1996)

**DEA SENSITIVE**
**Drug Enforcement Administration**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

US_035351

2 F-8



in a meeting, call you right back

11:22 AM

Como le hisimo al tipo del garaje así le vamo aser al loco ese Dago lo voy a secuestrar y darle lo del

12:01 PM

As ~~we~~ did to the guy in the garage, we will do the same to this crazy guy Dago. I'm going to kidnap and give it to him.

US_033268

2F-9



Ahora cuando llehue lo nuevo te tengo
k dar 2 departe d pineda eso biene esta
semana

Oct 24 11:32 AM

Oia lo del garaje murio ese muerto
nunca van a saber k fue el policia k
mando a matarlo asi k nunca volvamo
hablar d eso

Oct 28 4:25 PM

✳ When ~~the new~~ arrival comes I will give you
2 🌀 in behalf on Pineda which arrives
this week.

✳ what happend at the garage is dead.
They will never find out it was the cop
who 🌀 wanted to have him killed. So
lets not speak about it anymore.

US_033269

2E

Case: 2:12-cr-00176-DRH-GRB   As of: 08/25/2016 04:18 PM EDT   5 of 5

|  |  |  |
|---|---|---|
|  |  | (Entered: 06/01/2016) |
| 08/02/2016 | 129 | STANDING CRIMINAL ORDER REGARDING PROCEDURES TO PROTECT COOPERATION INFORMATION. So Ordered by Judge Denis R. Hurley on 8/2/2016. (Ortiz, Grisel) Modified on 8/17/2016 (Ortiz, Grisel). (Entered: 08/17/2016) |
| 08/03/2016 | 130 | ORDER as to Robert Bishun: IT IS HEREBY ORDERED that the implementation of Courts Standing Order Regarding Procedures to Protect Cooperation, dated July 22, 2016, is hereby stayed through and including January 9, 2017.Ordered by Judge Denis R. Hurley on 8/3/2016. (Tirado, Chelsea) (Entered: 08/04/2016) |

2E-1

2E-1

M Fail Cooperation reques   Patriot Stands Alarms No.   G Gikuka uchun mugono

Case 2:12-cr-00176-DRH-GRB   Document 130   Filed 08/03/16   Page 1 of 1 PageID #: 408

FILED
CLERK

8/3/2016 4:55 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X

ORDER STAYING
STANDING CRIMINAL ORDER REGARDING
PROCEDURES TO PROTECT COOPERATION
INFORMATION

-------------------------------------------------X

IT IS HEREBY ORDERED that the implementation of Court's Standing Order

Regarding Procedures to Protect Cooperation, dated July 22, 2016, is hereby stayed through and

including January 9, 2017.

Dated: Central Islip, New York
August 3, 2016

/s   Denis R. Hurley
DENIS R. HURLEY
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                :

UNITED STATES OF AMERICA       :     **STIPULATION:**

                                :     **BISHUN COOPERATION**

        v.                  :

                                :     S4 17 Cr. 151 (AJN)

ROBERT PIZARRO and         :
JUAN RIVERA,               :

                                :

            Defendants.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

      IT IS HEREBY STIPULATED AND AGREED by and between the United States of America, by Geoffrey S. Berman, United States Attorney, Jessica Fender, Jared Lenow, and Jason Swergold, Assistant United States Attorneys; defendant Robert Pizarro, by and with the consent of his attorneys Elizabeth Macedonio, Esq., Louis Freeman, Esq. and Carla Sanderson, Esq., and defendant Juan Rivera, by and with the consent of his attorneys, Bobbi Sternheim, Esq., Jeremy Schneider, Esq., and Alex Huot, Esq. that:

      1.     On or about December 5, 2014, the Office of the Special Narcotics Prosecutor for the City of New York ("SNC") issued a press release announcing the indictment of Merlin Alston on state narcotics and official misconduct charges (the "Press Release"). Defense Exhibit **H** is a true and correct copy of the Press Release. The "drug trafficker" and "cocaine supplier" referenced in the Press Release were not Robert Bishun. The "individual in the Bronx" referenced at the bottom of page 1 of the Press Release was Robert Bishun. The SNC case was ultimately transferred to the United States Attorney's Office and prosecuted in federal court, as referenced in Defense Exhibit **F**.

      2.     On or about August 2, 2016, the judge in Robert Bishun's federal case issued an

<div align="center">1</div>



JOINT DEFENSE
EXHIBIT
17 Cr. 151 (AJN)
G

2E-2a

4.    IT IS FURTHER STIPULATED AND AGREED that Defense Exhibits H, I, and

this Stipulation may be received into evidence at trial.

Dated: New York, New York
       September 27, 2018

                                   GEOFFREY S. BERMAN
                                   United States Attorney for the
                                   Southern District of New York

                        By:  _____
                                   Jessica Fender
                                   Jared Lenow
                                   Jason Swergold
                                   Assistant United States Attorneys


                             _____
                                   Elizabeth Macedonio, Esq.
                                   Louis Freeman, Esq.
                                   Carla Sanderson, Esq.
                                   Attorneys for defendant Robert Pizarro

                             _____
                                   Bobbi Sternheim, Esq.
                                   Jeremy Schneider, Esq.
                                   Alex Huot, Esq.
                                   Attorneys for defendant Juan Rivera

3

# Exhibit # 1

# Coercion of

# Mark Srikshun

(1)

As the record will reflect, witness Mark Srikshun was coerce by the government. Defendant Pizano writes to the District Court about several issues and concerns. At this point in time it was about the description given by Mark Srikshun the night of the murder, to detective

Unbeknown to defendant at the time, the court must present both parties with the letter. The description of the prepetrators are highlighted to not in any shape, form, or fashion resemble the defendant. One being it alleged to be "two black males". One defendant is light skin hispanic. Two, being the heights which was "both" males 6.0ft to 6.2ft. Defendant Pizano is 5'8 and Mr. Rivera 5'10. Mr. Srikshun is 6'0 ft. tall. As the evidence proves, Mr. Srikshun testified "he accurately was able to know the heights of the two males compared to himself.

Mark Srikshun was also coerce to testify under oath that allegely Mr. Bishun alleged he was a fedral informant in the middle of an armed robbery. The evidence proves that is fake. Just to be clear, the government has throughout the entire proceedings referred to defendant Pizano as "the robber in black".

Mr. Srikshun takes the stand and his proffer to the police and detective changes. One being that it is now alleged one of the prepetrators being 5'1 o-5'8's. Even though Mr. Srikshun is coerce he still makes several crucial mistakes, as the testimony evidence proves. See (Trial pg. 143 18-25) "Q. I'm going to ask you, if you could, to describe as much 'detail' as you recall about the appearance of both of these 'masked men' let's start with the one who came in second".

A "He was a lot heavier built than the first masked men that came in. He was a lot darker in complexion". (pg. 144. 1-3) Q "About how tall do you recall being him?"   A "6'0 ft, maybe a little taller." (allegely, his suppose to be describing defendant Pizano who is 5'8) Q "What about his clothes? What kind of clothing do you recall him wearing?"

(2)

A". He had a black sweater, black sweat pants, Nike AC.G boots, black hat, and a black bandana on his face".

Q". Was he wearing anything on his hands?"   A". Black gloves".

pg.145.1-4) Q". Now let's turn to the other man, describe him, if you could pleas

A" He was a lot slender. He had gray sweat pants. He had white sneaker on, a white t-shirt. He had a hat on and a red bandana on his face,"

Q". About how tall was he?" Your best estimate".   A". 5'7 or 5'8.
(Srikshon says the wrong person in 5'7 or 5'8, so they government ask twice)   Q". This is the man in white?"   A." Yes".   Q". The man in the light colored clothing?"   A." Yes" (They try to get him back on track but it fails)   (pg.146.1-6) Q". Give me a sense of his complexion".
(Defendant Pizarro is darker)   A". He was a lighter complexion, tan".

Q". Compared to who?" The other masked man?"   A." Yes"

Q". How can you see there skin in light of the 'clothing' they were wearing?"

A". I was able to see their eyes". (The government goes as far as trying to coerce him on the stand, so they lead him)   (pg.146.8-13) Q. Going forward and making it 'easier' so we can be clear' what we are talking about, is it all right with you if we refer the robber 'who came first', wearing the 'lighter' clothing, as the robber in white?"   A." Yes.

Q". Then the other men, who came in 'second' and was 'wearing all black', mostly black, as the robber in black?"   A." Yes" (The government prayers that if they break it down to elementary level, Mr. Srikshon can follow their leading)

The government is so frustrated that Srikshon messed up what he was coerce to say, that after trial in the government's Rule 29 and 33 opposal they argue this. See (May 15, 2019 ECF/Email to Judge Nath pg. 3-4) " Both victims described one robber wearing dark clothing and the other wearing light clothing, which the Government argued and the evidence proved were Pizarro and Rivera, respectively. Magda testified that the robber in dark clothing was approximately 6'0 tall, and

(3)

heavier and a darker complexion than the other robber, who was approximately 5'7 or 5'8. Both of their descriptions as to clothing and built were consistent with the 'appearance' of the two robbers on video captured by security cameras outside of Bishun's sp-sha

The government, victims, or video surveillance never identifie anyone. See (trial pg. 1590, 3-13) Q."What's happening up by the black suv?" A."The car doors open and it 'looks' like figures get out, people".     Q."Can you describe, generally, what the clothing 'looks' like on these two individuals?"    A."One 'looks' to be darker clothed than the other, and they are carrying bags."They seem to have something over their faces."     See (Trial pg. 1629, 2-10) Q."Could you tell if anyone who got into the black suv was black, hispanic or white?"     A."No".    Q."Could you see the faces on any of the people in 'any' of these videos?"     A."No".

The government changes their story again. See (May 15, 2019 document pg. 3-4) "It is 'clear' that Srikshun- who 'approximated' the heights while held up at gun point, bound with zip ties on the floor, dragged across the garage floor, and stuffed in a trunk. 'accurately' provided the 'approximate' heights of the robbers, but 'confused' the heights of the two men". (In the very next paragraph their story changes again) "The victims were not in a position to make a 'precise' assessment of the preperators heights. Therefore, the defend - ants argument on this point provides no basis".

The testimony evidence proves Srikshun knew the exact heights of the preperators compared to himself. See (trial pg. 154, 12-15) Srikshun."The 'two' of them picked me up off the floor and lifted me over that chassis straighter and then put me into the trunk. That's when I was able to 'identify' the actual size' of the 'robber compared to myself." ( Srikshun 6'0 )    See (Trial pg. 201, 8-15) (Cross of Srikshun) Q." You want to make sure that the information

(4)

you them, meaning the police and detectives would be complete, would be accurate, and would be truthful, right?" A."Yes".

Q". Is it fair to say that when you first spoke to the police that night (Sept. 20, 2016) you said 'both' robbers were each 6'0 ft. tall, isn't that right?" A."Yes". See. (Trial pg. 172. 10-13) Q". On direct examation a little while ago you said that the robber in 'black', that's how you described one of them to Mr. Lenow, the robber in black, was 6'0 ft tall, right?" A."Yes". See. (Trial pg. 199. 1-17) Q". You also describ on direct examination that the robber in white was between 5'7 and 5'8 Correct?" A."Yes". Q". And yourself, Sir, are 6'0 ft tall, right? A."Yes". Q". So you know that somebody 5'7 or 5'8 is shorter than you Correct?" A."Yes". Q". Someone 6'0 ft tall or 6'2, for example is your height or taller, correct?" A."Yes". Q". By the way, just so it's clear, you didn't grow a few inches between now and September. 20, 2016, did you?" A."No". Q". On September. 20, 2016, you were 6'0 ft tall back then, right?" A."Yes". See. (Trial pg. 201. 16-19) Q". When you spoke to the detective the next day, detectiv Sean Butler, on September. 21, 2016. You told him 'both' robbers were 6'2, isn't that right?" A". I don't recall". Q". Does that (report) help you remember, refresh your recollection of what you told detect-ive Butler about the heights on September. 21?" A."It doesn't refresh my memory exactly what I said. I don't remember exactly what I said that day". Q". This document does not help you remember?" A." No".

The facts are as the evidence from detective Butler's report is that on September 21, 2016, Mr. Srikshun proffered both males were 6'2 ft The way he knew was compared to himself. The coercion is also because the government allege defendant Pizarro was responable for the 2015 robbery of Mr. Bishun where both men were alleged to be 5'7.

(5)      Mark Srikshun story is in conflict with Ms. Magda's story how was present. See. (Trial pg. 50. 7-16) Srikshun. Q". When you crawled into the office, where was the robber in black and where was Bob? A". Rob was to the right where the chair is, and the robber in black was in front of the desk." Q". Could you see where Marlena was at that point?" A". She was sitting on the trunk of the car". Q". The trunk of the car where?" A". In the garage".

The government Coerce Mr. Srikshun to testify under oath, that Marlena Magda is in the garage sitting on the trunk of a car while Srikshun and Bishun are in the Office tied up on the floor. This is because they are going to have him testify that Bishun allegedly said he was a federal informant. With Marlena in the garage would be the reason she did not hear this.      See. (Trial pg. 151. 4-24)

Q". Once you were in the office, did you hear any of the robbers; either of them, speaking with Bob while he was tied up?" A". Bob was tellin' robber in black that he was a federal informant, and robber in black responded as, you're a fucking snitch". Q". What did the robber in black say?" A". He then told robber in white to hurry up and get Marlena in the trunk". Q". Did you have any specific concerns about Marlena at that point?" A". Yes". Q". What was that?" A". I thought she was going to scream". Q". Why did that give you conce(rn)

(pg 152.) A". Because she wasn't tied up yet, taped up on the mouth yet".

This is Marlena Magda's testimony. See (Trial pg. 84. 1-14)
Q". How did you get from your original location to that spot by the office?" A". 'We' had to go inside". Q". In the office?" A". Yes 'we' were instruc-ed to go inside". Q". When you into the office, what, if anything, did you see?" A". Bobert was on the floor, the first guy (robber in White) who walked in, he was by the desk". Q". How did Rob appea(r) on the floor?" A". He was tied up". Q". How was he tied up?"

(6) A" He had his hands behind and they were tied up, and his feet as well". (pg. 85. 20-25) Q" When you got into the office, what, if any thing happen to you?" A" They tied 'us' up". (Srikshun testified she was not in the office or tied up) "They told 'us' to put 'our' hands behind 'us', lay on the floor, and 'our' hands were tied with a ziptie and 'our' feet". Q" For about how long were you tied up on the floor

(pg. 86. 2-10) A" I'm not sure about 10 minutes or less". Q" During the time you we tied up on the floor, could you hear what anybody was saying in the office?" A" I wouldn't be able to make out the conversation, but something about 'jewerly and money'". Q" Did you stay on the floor of the 'office' the 'entire' time?" A" Yes, because 'we' were 'tied up'".

Marlena Magda was in the office the entire time and did not testify to hearing anything about Robert Bishun alleging to be a federal inform ant, or the robber in black getting very angry, and saying "y' our a fuck Snitch", and "hurry up and get her in the trunk".

Right after Srikshun testified Marlena was put into the trunk the government ask this question. See (Trial pg. 152. 3-8) Q" Was there any futher conversation between the robber in black and Rob that you recall?" A". They was talking about Rob having him looking for money. He said that he seen Rob on social media with all this jewerly, buying Champange in the clubs, that he had money, and knows that Rob has money and jewerly". (If Marlena was in the trunk allegely, How would she hear a conversation about money and jewerly)

The facts are Bishun never alleged to be a federal informant. Marlena was never not in the office, robber in black never got angry and said "hurry up and put her in the trunk", and she was never not tied up. She was on the floor in the office with Bishun and Srikshun the entire time, as her testimony evidence proves.

(7)    The government ask Marlena this question. See (Trial pg. 8
17-20) Q." How did you get to this car that was inside the Shop (garage)"
A." He had to pick me up because 'I was tied up'. I 'couldn't' do it myself."
Q." Where was the car located?"    A." Outside the office, inside the
Shop".

The facts and evidence proves that Mr. Srikshon was coerce about
the heights and Bishon alleging to be a federal informant. See (Trial
pg. 208. 2-25.) Q." The person (robber) who came in an spoke to you
Said, we are not here for you or her, you are at the wrong place
at the wrong time, Correct?"    A." Yes".   Q." And that's what you
told the police when you spoke to them on September. 20, 2016,
Correct?"  A." Yes". (pg. 208-09. 25, 1-24)   Q." Isn't it fair to say
one September. 20, 2016 when you spoke to detectives, you didn't say
one word about ever hearing Robert Bishon say, 'I'm a federal a Feder-
al informant', you didn't tell that to the police, did you?"   A." I
don't recall."   Q." Take a look at that document, please, the bottom
portion. Now that your recollection is refreshed, isn't it a fact
that you did not say one word about hearing Robert Bishon say
'I'm a federal informant'. You didn't tell them, did you?"   A." No."

Exhibit #2

Coercion of

N.Y.P.D.

John Baumeister

$

Brandon Reilly

(1)   N.Y.P.D Officers are coerce by the government as the evidence will prove. Defendant Pizarro writes the District Court as the record will reflect. This issue is about a fingerprint on a Zip tie from the 2016 ~~mod~~ Murder of Bishun. The reason being is because defense counsel continue to allude "that the government did not know who the print belonged to".

At this point in time defendant believes this Zip tie is in fact the murder weapon.(around the neck) Unbeknown to defendant at the time, this zip tie is not the murder weapon.

Again, the court has to present both parties with defendants letter. This accident is going to prove that the government did not investigate this capital case, and just went on the word of C.I's and Cooperators.

Long time veteran Detective John Baumiester is coerce to testify that in fact it is his alleged fingerprint on the Zip tie around the victims neck. The non-argumentive evidence proves his testimony is in fact false. It is very distrubing to see and know for a fact the crimes committed on this capital case by members of law enforcement along with the government.   See (Trial pg. 300, 9-16) Q." Where do you work?"  A." The 47th Detective Squad in the Bronx".  Q." How long have you been with the N.Y.P.D?" A." Twenty years". (pg. 301.5-15)  Q."I want to direct your attention to September, 20, 2016. Were you working that day?"  A." Yes I was".  Q." At some point during your tour did you get a call to assist in an investigation?"  A." Yes, I did".  Q." Around what time did you get that call?"  A." Approximately 9:15 p.m"

(pg. 302.9-25) Q." What, if any, information did you recieve from the Captain?"  A." Captain Natif had informed me that there had

(2)  been an abduction 'earlier' in the evening in the confine of the 49th precient and needed extra detectives to assist them in locating a vehicle that was used in the crime". Q" What, if anything, did you do after you got the call from Captain Natif?" A". He gave us the particulars as far as what the vehicle was, the description and where the 'GPS' on the the vehicle had been pinging or showing 'where' it had 'last' been". Q". After you obtain that information what did you do next?" A". We left the office in our vehicle to go to the 'last know' location". Q". What was that location?" A". It had pinged on Broadway right off the Deegan".

Detective Baumeister testified under oath, that he recieved the call at "approximately 9:15 p.m" on September. 20, 2016 Recieved all this information about Bishun being abducted and his car last pinging being on Broadway in the Bronx off the Deegan. This is why that is virtually impossible and defies all reality. See (Trial closing Summation pg. 27.1800.13-20) "Gov't. "That night, September. 20, 2016, BMW got a call from N.Y.P.D asking for help. 'We need to find that car'. BMW does what it can. They send a remote 'geolocation signal' out to that car 'three Separate times', at 9:58, at 10:05, and at 10:14 p.m. And each time that BMW seems to be location right there, 6071 Broadway, in the Bronx". See (Trial pg. 1238.1-25) Q".Mr. Trotta, do you see the same black suv and silver sedan now moving to the right side of the screen going South on Broadway?" A"Yes". Q". What is the time Stamp here?" (pg. 1239.1-25) A". September. 20, 2016 9:38 p.m". Q" What is the time and date that video starts?" A". Also September. 20, 2016 9:38 p.m. Q" See a vehicle pulling up on

(3)

the left side?"   A."Yes".   Q."What street is that?"
A."That's Broadway".   Q."What's is the general time stamp of
the arrival?"   A."September 20, 2016 9:39 p.m."

The BMW just arrived on Broadway at 9:39 p.m. The
first geolocation signal did not go out until 9:58 p.m. How is
it possible for Detective Baumeister to have all this information
reported to him by "approximately 9:15 p.m" if the police was not
aware of the situation yet? Let alone the last place the
BMW geolocation signal pinged at if it didn't arrive yet?

Just so it is abundantly clear, It is stipulated that BMW
did not record any data before 9:58 p.m. on September 20, 2016.
See. (Trial pg. 311, 7-15) Government exhibit 339.

Detective Baumeister testified he and his partner when
straight to 6011 Broadway after the alleged 9:15 p.m. call. See.
(Trial pg. 301 17-18); (pg. 303, 2-3); (pg. 303, 9-25) A." We get
off the exit, off the Deegan exit, made a right onto Broadway.
(This is a 10-15 minute drive tops.) We were traveling north along
the park. We observed two uniformed officers with flashlights
looking at a vehicle, and once we saw the vehicle, we realized
it fit the description of the vehicle we were looking for".

Q." The vehicle that the officers were looking into was the one that
matched the description you had recieved?"   A". Yes, it did".

Q". What did you do next?"   A". At that point myself and my partner
existed the vehicle. Once I got close enough to the vehicle. I asked
the officers what they had. They said there is a guy in the back
of the vehicle. I approached the vehicle from the drives side and
I observed that in the rear of the car was a male unconsc-
ious leaning more towards the passenger side of the rear

(4)

Seat of the vehicle. At that point I ran around the other (pg. 304, 1-25) side of the vehicle and yelled for one of the cops to break the window". Q. "Why did you ask one of the officers to break the window?" (pg. 305, 1-25) A. "Because I could clearly observe, there was a male seated in the back seat with his hands zip tied behind his back, plastic zip tie and there was also a zip tie around his throat". Q. "Why didn't you try opening the door?" A. "I'm sorry, I did attempt to open the door, but the doors were locked". Q. "After you asked the officer to break the window, what happen next?" A. "I leaned my upper body into the car and tried to slip my finger or I did slip my finger under the zip tie".

Detective Baumeister testified under oath, that he sliped his finger under the zip tie. To prove with evidence that this is knowingly false testimony, defendant is going to jump back and fourth with ~~expect~~ expert testimony. The fingerprint allegedly identified as to belonging to detective Baumeister, was the number 1 finger, which is the right thumb. See (~~attachment 6C+~~) Detective Baumeister's notes states that he sliped his left index finger under the zip tie. (See attachment 6C) But the fingerprint entered into evidence by the government was the number 6 finger, which is the left thumb. See (attachment 6C2) Defendant and the evidence will prove why this is done shortly.

Detective Connolly (fingerprint analyst) on the stand under oath. See (Trial pg. 569, 1-12) Q. Based on your reveiw of the material and your indepentent analysist, who was identified as the source of the fingerprints?" A. "First was No. 1 finger of John Baumeister, lift No. 4 was the 8 and 9 finger, which is the left middle and ring finger of Sean Butler". Q. Based on your analysis in this case and your review of the files, who is Sean Butler and who

(5)  Who is John Baumeister?"   A: "They are police officers, Detect
ives".

Just so that it is abundantly and perfectly clear, let's back up
a little bit on Detective Connolly's testimony. He is going to testify
about all the 2016 items that had finger print evidence on them.
See (Trial pg. 562, 10-25)  Q: "Which units did you recieve items
of evidence from?"   A: "Latent print development unit and crime scene
unit".   Q: "How many different sets of prints were submitted?"
A: "From the lab, latent print development unit, Six; and crime scene
five".   Q: "Were they photos or were they print cards?"
A: "So from the 'Crime Scene' latent 'print cards', and latent
development unit was photos". (pg. 563, 10-25)  Q: "Detective, let's
first talk about the items that came from the N.Y.P.D police lab,
the photographs of prints on a lock, a cell phone case, and 'a' zip tie
is that right?"   A: "that's correct".   Q: "How many prints were
submitted, did you say?"   A: "It was Six".   Q: "Upon doing the examination
how many of those six prints were considered to be suitable for futher
examination?" (pg. 564, 1-25)  A: "Five".

(The evidence proves five prints in all came from 3 items in the
2016 murder / Kidnapping, A lock, cell phone case, and 'a' zip tie. Also
Detective Baumeister never reported to 1631 Stillwell avenue.)

Q: "Let's walk through the items. For the finger prints that were identif
ied on a phone, who was identified as the Source of those prints?"
A: "It was one, Mark Srikshan. (see attachment 7A1, 7A2)  Q: "With resp
to the lock, who was identified as the Source of those prints, if anyon
A: "Bhutrint Mujaj".   Q: "Based on your further investigation, did you
have an opportunity to determine who Bhutrint Mujaj was?"
A: "He was a police officer".   Q: "Finally, with respect to 'a'

(6)

ziptie, who, if anyone, was identified as the source of the fingerprint on the ziptie?" (pg. 565, 1) A " Mark Srikshun".

The evidence proves, there was/is one fingerprint on one ziptie for the 2016 murder/kidnapping, which was/is the No.12 item in evidence. See (attachment 7A) this is the ziptie defendant wrote the District court about. At the point in time believing it to be the murder weapon. See (attachment 7A, 6B-5) which are all zipties entered into evidence.

After the government recieves defendant's letter, they have detective John Baumeister testify under oath at a capital federal trial, that he cut the & ziptie from the victims neck and that's how his alleged fingerprint got there. The government makes several crucial mistakes by doing this, as the evidence proves.

Ziptie No. 12 is actually the ziptie from 1631 Stillwell Avenue that Mark Srikshun's fingerprint is on. See (attachment 7A-5) identified as lift No. CMP6. See (attachment 7A) The alleged print identified as to being Detective Baumeister was the No. 1 finger (right thumb) The government changes the print of Baumeister's to the No.6 finger, which was the same finger identified on the No.12 ziptie belonging to Mark Srikshun.

The government provides defendant with finger-print evidence picture, or LPS identification bearing the name of John Baumeister. the No.6 finger being the source of identification. See (attachment 6G-2) But they redact the name on the photo. See (attachment 7A-5) which is the ziptie.

The government still makes a huge mistake, because they don't redact the lift number, which is CMP6. They provide another LPS identication ion, redacting the name of the person identified. See (attachment 7A-4)

(7)

But does not redact the photo lift number, which is CMP6. The Same as the No. 12 ziptie. See (attachment 7A) Bearing the No. 6 finger. Of course, inferring that it is Detective Baumeister's No. 6 finger print. See (attachment 6C-2)

If one looks at the photo of were where detective Baumeister's print came from, it definitley didn't come off of a Ziptie. See (attachment 6C-3) The finger is changed from the No. 1 finger to the No. 6, which is the left thumb, but his notes allege "he sliped his left index finger under the ziptie". See (attachment 6C)

Returning to Detective Connolly on the stand. See (trial pg. 566, 16-25) Q." Now, Detective, can you explain for us what image we are looking at here?" A." The left side is the No. 6 finger. Same Source as the one on the right, the live Scan. So the latent prints on the left side and No. 6 finger, which is the left thumb, right here, on the right side that's a live Scan print". Q." On the left-hand side, that thin item, what is that a photograph of?" (pg. 567, 4-24) A." That's the latent, that's where it came from." Q." What item is it on, that latent print?" A." That's the zip tie".

The evidence proves that Detective John Baumeister's prints are not on any items of evidence in this entire capital case. Just so it is abundantley clear, more evidence will be provided. See (trial pg. 568, 22-25) Q." How many prints in total were identified from these lifts, the lifts, that were suitable for cop comparison from the "crime scene"? A." There was two". (pg. 569, 1-25) Q." Based on your review of the materia

(8)

and your independent analysis, <u>who was identified as the source</u> <u>of the finger prints?"</u>  **A".** <u>The first 'lift' was the 'No. 1' finger</u> <u>of John Baumeister</u>, and also on lift No.4 was 8 and 9 fing which is the left middle and ring finger of Sean Butler."

Returning to <u>Detective John Baumeister on the stand</u> <u>under oath</u>, <u>in this capital case</u>, <u>where the mandatory</u> <u>minumum is life imprisonment.</u> See (Trial pg. 305, 1-25.) **A".** <u>I did</u> <u>slip my finger under the ziptie.</u> I was trying to see if I could alleviate some of the pressure. I didn't know if he was still alive at the time. <u>I yelled at one of the officers to give</u> <u>me a knife or something to cut it with.</u> At that time one of the officers leans across the car to me and <u>hands me medical</u> <u>scissors.</u> <u>I remember that because</u> <u>I thought it was odd that a</u> <u>cop had medical scissors on him.</u> <u>At that point I slid it</u> <u>underneath.</u> It was so tight that there was almost no room <u>I was able to slide it underneath and cut it".</u>

Baumeister's <u>notes are at odds with his testimony.</u> See (attachment 6C) "<u>I cut the ziptie with a 'knife' slowly</u>". The other thing about detective Baumeister's notes is that it is dated 4-9-18 which was less then a month before the orginally trial was sheduled for. Before the Brady violations.

Not only does the government have this N.Y.P.D Detective give knowingly false testimony to the court and jury. They have <u>Detective Reilly of the 50th Precinct corroborate his prejured</u> <u>testimony.</u> See (attachment 6C-1) The evidence proves the government also coerce Detective Reilly.

(9)

The government along with these N.Y.P.D Detectives, had a very convicing song and dance for the court and jury. The evidence proves it is/was all premeditated pre-jured testimon See (attachments 6A-6A2) States: "The officers were able to utilize GPS technology to track the vehicle to 6071 Broadway within the confines of the 50th precient. The victim was found to be in the rear passenger seat of a vehicle, vin# WBAYF8C59ED142075, with zipties around his neck and wrist. The victim was unconcious and unresponsive on the scene. EMS personal Acosta, Sheild 4036 Cut zipties on the victim at the scene".

Just so it is perfectly clear. The neck ziptie was the only ziptie cut at the scene. See (attachment 6B-6B4) 6B4: "invoice 2000581820 the quantity to be (1), found in (2) piece of ziptie".      6B3: Is a picture of the ziptie cut in two pieces on the street of 6071 Broadway right next to the victim car. One piece on the passenger side marked (2) and the other piece on the drivers side marked (1).      6B and 6B2 makes it clear that the zipties on the wrist were cut off at Montefiore Hospital by police officer Fernandez tax# 951776 of the 49th precient.

The government along with the N.Y.P.D continued to make a machination to the court and jury with no itegrity whatsoever for the very law and constitution they swore to uphold. See (Trial pg. 305, 22-25 ; pg. 306, 1-25 ; pg. 307, 1-25)

The government on this capital case, goes through all this criminal activity, just because defendant Pizarro alluded the

(10)

Wrong zip tie in his letter to the court. The evidence make it abundantly clear, that <u>NONE</u> of the <u>zip ties recovered off of Robert Bishun</u> <u>had/has</u> <u>ANY</u> <u>finger print evidence</u>. See (attachments 6B4-6B5) 6B4: "No latent prints/friction ridge detail suitable for/or identication on no Zipties". 6B5: "Plus sign indicates latent prints potentically of value, minus sign indicates no latent prints potentially of value". (All have minus signs) See (trial pg. 750.17-24) Laboratory officer Pires on the stand

Q: "Which items of physical evidence were tested in your first report that we were just discussing?" A: "It was four items of zipties". (Gov't Exhibit 416-419) (pg. 751. 2-7)

Q: "Did you examine items of zipties in that particular report for prints?" A: "Yes, I did". Q: "How many friction right ridge details were you able to find that were even potentially of value on those items, those zipties?"

A: "None".

Now, the only question is, <u>where did detective John Baumeister's finger prints come from?</u> It was testified under oath that his No. 1 finger was identified. In evidence it's the No. 6 finger, and in his notes it's the No. 7 finger.

Maybe Baumeister's print came from the alleged Home Depot Bag, that changed to the actual zip tie bag, containing Zipties, that was never collected into evidence, and within it a reciept from the alleged 2015 robbery.

(11)    Detective Baumeister testified that all he did was cut the zip tie and went back to the precient. See. (Trial pg. 308 4-25)   He also testified that when he arrived at the scene there was no physical damage to the vehicle, "every thing in tact". See. (Trial pg. 304, 19-24) Also, that the ESU team had to cut the rear driver's side door off, to get the victim out of the vehicle. See. (Trial pg. 835, 17-23)

The evidence proves that is knowingly false testimony. If one really pays attention to attachment GB3. Top first photo the vehicle is mangled. The driver's side rear door is ripped off and the trunk appears to be crashed, and unable to close. It is also pushed up against the rear window. This is allegetly after the ESU team gets Mr. Bishon out of the vehicle.

The second picture for from the top proves the passenger side door was open before any damage was done to the vehicle. Trunk still in tact. It was testified that none of the doors would open until the ESU team came and cut the driver's side rear door off. See. (Trial pg. 835, 14-16) Q." At any point while you were there was anybody able to open any of the car doors?"   A." No".

The really distrubing part of all this is after the government didn't ask Detective Baumeister if he wore gloves while alleging to "render aid", defense Counsel Louis Freeman asked one question on cross examine. See. (Trial pg. 309, 9-13) Q." I know you were working fast and trying to get into inside the car and

(12)

render aid, as you did. Were you using your hands with or without gloves when you were doing that?" **A**." Without gloves". Defense counsel states." Nothing further".

Baumeister alleged to do all this heroics without gloves, but allegely only one print of his was recovered. The fact and evidence proves the only items that had fingerprint evidence came from 1631 Stillwell Avenue. Where Baumeister never reported to.

The government also coerce N.Y.P.D Officer Brendan Reilly of the 50th precient, as the evidence proves. They have Reilly corroborate Baumeister's testimony, but his testimony is in great conflict with Baumeister's.

The government tries to keep Reilly on course, by asking a fleet of leading questions. See.(Trial pg. 830, 1-25) **Q**." I want to direct your attention to September. 20, 2016. Were you working that day?" **A**."Yes". **Q**." What unit were you in at that time?" **A**." The 50th precient Special operation. **Q**." What time did you start your tour of duty that day?" **A**." 3 p.m - 11:35 p.m." **Q**." Were you in a patrol car or on foot?" **A**." Patrol car". **Q**." Was it marked or unmarked?" **A**." Can I look at my memo book for that day?" (pg. 831, 1-25) **A**." The vehicle is redacted".

( Why would the vehicle be redacted in his memo book? It's redacted because the government had Baumeister testify that it was two uniformed officers on the scene when he arrived. Special operation's doesn't sound like uniformed officers.)

(13)

Q". At some point did you get a call from your sergent relate to a robbery in the 49th precinct?"   A. "Yes",   Q". What, if anything, did the sergent tell you to do?"   A. "The sergent advised us to canvass Broadway for a vehicle that was involved in a robbery in the 49th precinct".   Q". Do you remember the description of the vehicle?"   A". It was a four-door BMW".   Q". Was that call from your sergent the first time that you had heard about the BMW that evening?

A". No".   Q". What else had you heard about the BMW?"

A". There was a radio transmission earlier in the day regarding that same vehicle".   Q". When you say earlier in the day what time of day?"   A. "Some time after my tour 'started' when I have the radio on, so in the 'early afternoon', 4 pr-ish to anywhere from when (pg. 832, 1-25) I got there it was transmitted. I am not sure of the exact time".

(It's obvious that Reilly is really off with the time, so the attempt to keep him on track by leading, but it doesn't work)

Q". Let's just try to orient a little bit. Around what time were you out looking for the BMW? If you need to look at your note pad to refresh your recollection".   A". 2300, so 11 p.m. around look-ing".

   Detective Reilly is the officer Baumeister testified to being on the scene when he arrived at 6011 Broadway. Baumeister testified he got the call at 9:15 p.m. approximately. Reilly is not out looking for the BMW until 11 p.m. It is impossible and defies all reality that Reilly was on the scene before

(14)   Baumeister. The 47ᵗʰ precient is 10 to 15 minutes away, tops. That's an hour and 45 minutes difference. And Reilly is not even there at 11 p.m, his out looking.

(pg. 832. 1-25) Q". What, if anything, did you do in response to the call from your sergent?"  A". We went to the designa area on Broadway, Canvassing for the vehicle, looking".

Q". Was there a particular area on Broadway that you were focusing on?"  A". Yes", There was an address given to us"

Q". What, if anything, happened when you got to that area?"

A". I observed the vehicle parked on Broadway". (pg. 833. 1-25)

Q". As you approached but before you got to the vehicle could you see anything about the car?"  A". You could see a figure in the back seat".   Q". How, if at all, were you able to see that figur'n

A". It was like a silhoutte of a person just in the back seat through the rear window pane".   Q". Did you eventually mak your way up to the car that you were approaching?"  A". Yes'

Q". What side of the car did you approach on?"  A". The passenger side".   Q". Did you look inside?"  A". Yes".   Q". What, if anything, did you see?" (pg. 834, 1-25) A". Male unconcious in the back seat"

Q". Did you notice anything about his body?"  A". His arms were behin his back".   Q". Could you see anything else?"  A". You could see something around his neck".   Q". What did you do next?"

A". Tried to open the car door. It didn't open. I used my ASP to break the window of the car".

(The government realizes Reilly is going to far in his story without Baumeister allegedly being there, so they start leading)

(15)   (pg. 834. 9-25) Q". As you were doing this, were you the only officers there or were there other officers around?"

A". Officer Best was there transmitting for assistance. <u>At the 'same time' that the glass was breaking a detective arrived, also".</u>

Baumeister testified that he was in fact the one to tell Reilly to break the window. See (pg. 303. 15-25; pg. 304. 1-25) Baumeister states: " <u>Once I observed that the male in the back seat</u> was leaning more towards the opposite side of the car, I ran around the rear of the vehicle to <u>that window".</u>   Q". At that point what was the condition of all the doors on the vehicle?"   A". <u>The car was intact, 'no damage', No 'visible' damage".</u>

Reilly's testimony. (pg. 834. 14-25) Q". A detective arrived at the same time, you said?"   A". Yes".   Q". Where you able to break it on one shot or did it take a little while?"   A". No. It took a couple of shots". (The government then leads Reilly about the alleged acts of Baumeister)   Q". <u>After you broke the window what, if anything, did you see that detective do?</u>   A". <u>He attempted to render aid. He cut the zip tie off the person's neck",</u>   Q". <u>What happened to that Zip tie?"</u>   A". <u>It was given to me".</u>   Q". <u>What did you do wit it?"</u> (pg. 835. 1) A". <u>I gave it to officers from the 49th precient".</u>

(Reilly testified under oath, that the zip tie around the victims neck was cut and given to him by Baumeister which he gave to officers of the 49th precient.) The evidence proves that that testimony is in fact false. See (attachment 6B3, 6A) 6A: <u>"White plastic Zip ties was recovered</u> <u>F/O 6011 Broadway on the street next to driver side rear door and the</u> <u>other piece on the passenger side of the vehicle".</u> <u>6B3 is the photo</u> <u>of the Zip ties on the street.</u>

(16)   The government (unbeknown to the court and jury at the time, until one really reads and goes over the transcripts) knows these two detectives really messed up their coerce testimony, so they try their very best to clean things up at the very end of Reilly's testimony. But, the evidence proves it's to late, and things just don't add up.

See. (Trial pg 835, 23-25) Q". Was the victim eventually removed from the car?" A". Yes". (Affidavits state that the officer removed the victim through the broken window. See. Attachment 4G-3) Q". What happened next to the victim?" (pg. 836, 1-25) A". He was transported to the Hospital". (the government really starts leadn now) Q". Were you involved in that process?" A". Yes". I rode in the ambulance". Q". While you were in the ambulance did you collect any additional evidence?" A". There is zipties collected from around his hands". Q". Who removed those zipties?" A". EMS removed them and gave them to me". (Their trying to clean up the zip tie evidence collect)

The evidence proves that the zipties around the wrist was removed at Montefiore Hospital. See. (attachment 6A-6A2)

Q". What did you do with the zipties after they were given to you?"

A". They were given to officers from the 49th precient". Q". What, if anything, did you do when you got to the hospital?" A". I waited for officers from the 49th precient to come". Q". What was your role at the hospital until those officers arrived?"

A". Safeguarding the victim". Q". Where did you go after the hospital?" A". I returned to the scene". Q". Why?" A". Just in case anyone needed anything". Q". Where you asked to do anythin at the scene that night?" A". No". Q". What did you do next?"

A". I went back to the precient and ended the tour".

(17)    The victim is dead at the scene. Why would Reilly have to ride in the ambulance to the hospital, to safeguard a lifeless body?

See (Trial closing Summation pg. 28, 1803. 10-14) "What you can't see on the video is Rob's body in the back seat, because no one 'knew' that Rob was there 'dead' waiting to be discovered".

See (Closing Summation pg. 29, 1804, 17-25) "As soon as Detective Baumeister cut the ziptie, Rob's head fell forward. The Detective checked for vitals to see if he could find a heart beat but there was none. No pulse. No heartbeat. No sign of life. Rob was dead" "When the EMS workers arrived, they, too, did what they could but it was 'no use'. And no one could get Rob's body out of the car. It had those special doors that won't unlock unless the key fob is there. So the NYPD had to call Emergency Serves unit again." Again, attachment '4G-3 states:' "The victim was pulled through the 'window' by officer 1".

Bishun is definitely dead at the scene. The evidence proves that Baumeister did NOT cut the ziptie from the victims neck. His finger print is definitely no on ANY crime scene evidence, let alone the ziptie. The testimony of Reilly is at great odds with Baumeister's. The Times does not add up in ANY shape, form, or fashion. The window breaking doesn't add up. And last but not least, Reilly definitely did not see Baumeister cut the ziptie from Bishun's neck, because the evidence proves he didn't.

The facts are that the government on this capital case, broke every single constitutional rights of the defendants, and also the law. This made up, inaccurate, prejured, malious, fabricated, illegal, fraudelent, and falsified evidence and testimony is a prosecution by any means, to cause gravely harm to defendants intentionally.

(18)  With all the facts and evidence provided within this motion, the only just thing to be done is for defendants to be immediately released and conviction overturned and dismissed with prejudice. And not doing so would be a misscarriage of justice.

Respectfully,
Robert Pizarro

Robert Pizarro

4 G-3

12.     A patrol officer who arrived at the Shop in response to Individual-1's 911 call ("Officer-1") was able to trace the BMW using its On Star location system to the Riverdale section of the Bronx.  The BMW was parked on the side of the road, and Robert Bishun was propped up in a seated position in the back seat, with a zip tie around his neck.  After knocking out the window of the BMW, Officer-1 was able to pull Bishun out.  Bishun was taken to Montefiore Hospital, where he was pronounced dead.

13.     The medical examiner who conducted the autopsy of Robert Bishun stated that Bishun died of strangulation, and that the wounds around his neck suggest that someone killed Bishun by applying pressure to Bishun's back while pulling at the zip tie around his neck.

14.     I have reviewed surveillance video from the vicinity of the Shop on or about September 20, 2016.  This video shows the Robbers arriving at the Shop in a black SUV, loitering on the street outside the Shop, then eventually entering the Shop.  The video further shows the Robbers leaving the Shop with Bishun some time later, and driving away in the black SUV and the BMW.

The 2015 Robbery

15.     I have reviewed NYPD reports of a robbery of the Shop on or about January 24, 2015.  Two black men entered the Shop, pointed a gun at Robert Bishun, attached Bishun's hands with the same zip ties used in the 2016 robbery, and demanded money.  The report states that the robbers stole approximately $15,000 cash.

16.     I have spoken with NYPD officers, who informed me that when officers canvassed the Shop shortly after the robbery, they found a Home Depot bag containing zip ties similar to those used by the robbers.  They were able to lift a fingerprint from the Home Depot

5

2016-09-26

US_000387



**Search Details**
A systematic and methodical zone search of the crime scene was conducted by CSU personnel in an effort to recover, collect and document any/all evidence and biological evidence in regards to this investigation. A visual search of the street, sidewalks and building facades on Stillwell Avenue between Rhinelander Ave and Pelham Parkway South was conducted yielding negative results. A visual search of the street, sidewalks of Broadway between Manhattan College Parkway and west 251 Street was conducted yielding positive results.

**TOOLS UTILIZED**

| 1 | Tool Utilized | If Other |
|---|---|---|
| | OTHER | LEICA 3D SCANNER #3 |

**Incident Summary (Detail the facts of the case; summarize what occurred)**
On September 21, 2016 at approximately 1230 hours Sergeant Nonnon assigned to the 49 Precinct Detective Squad requested that the Crime Scene Unit respond to I/O 1631 Stillwell Avenue and F/O 6071 Broadway to aid in a Homicide Investigation in which an male victim was found unconscious in the rear passenger seat of a parked vehicle with zip ties around the neck and wrists. The investigation is ongoing by the 49 Precinct Detective Squad. At approximately 0245 hours the undersigned along with Det. Mathew arrived at the scene of 1631 Stillwell Avenue. The scene was safeguarded by multiple uniformed Police Officers and secured with yellow crime scene tape. The address of 1631 Stillwell Avenue is a commercial establishment, Supreme Collision Corp, within the confines of the 49 Precinct. A conferral was conducted with Detective Revans assigned to the 49 Precinct Detective Squad. A preliminary investigation revealed that at approximately 2050 hours the victim and two customers were inside of the commercial store at the above location when two male blacks entered the establishment wearing bandanas covering their faces and displaying firearms. The unknown perpetrators then zip tied the two customers and placed them in the trunk of a vehicle parked at the store. The victim and the perpetrators then began to argue inside the establishment. Subsequently, the two customers were able to free themselves and fled the location while calling 911. As the responding officers arrived at the scene, the customers explained that the victim and his vehicle were no longer at the scene. The officers were able to utilize GPS technology to track the victim and his vehicle to 6071 Broadway within the confines of the 50 precinct. The victim was found to be in the rear passenger seat of a vehicle, vin # WBAYF8C59ED142075, with zip ties around his neck and wrists. The victim was unconscious and unresponsive on the scene. EMS personnel Acosta, Shield 4036, cut the zip ties on the victim at the scene. The victim was further removed to Montefiore Hospital pronounced dead at 0008 hours. Stillwell Avenue between Rhinelander Ave and Pelham Parkway South is a two-way street which traffic travels north and south. There is a parking lot on the east side of the street and single story commercial buildings on the west side of the street. There were vehicles parked along the east and west curbs. Surveillance cameras are located at 1631 Stillwell Avenue. Broadway between west 251 street and Manhattan College Parkway is a two-way street which traffic travels north and south. There is a park, Van Cortlandt Park, on the east side of the street and a school, Horace Mann, on the west side of the street. There were vehicles parked along the east and west curbs. Surveillance cameras were not located at 6071 Broadway.

**Investigative Process (Summarize the steps taken to document and process the scene)**
A conferral was conducted with the 049 Precinct Detective Squad to ascertain the facts as known and the focus of the search. The scene at the two locations was documented in photographs. The scene was laser scanned utilizing the Leica 3D Laser Scanner #3. In addition, a body diagram sheet was prepared indicating the victim s injuries. Probative evidence was identified, documented and recovered. An attempt was made to process the silver BMW 750LI for Latent Prints using conventional black and white powder and feather brushes but due to unforeseen misting fog, CSU personnel was unable to process request. The recovered evidence was turned over to Police Officer Tineo at the 49 Precinct Detective Squad and is to be vouchered and forwarded to its proper location.

**Evidence Summary (Summarize the evidence and explain its probative value to the case. Include info that may assist an examiner to further the investigation)**
MN1 (01) White Plastic Zip tie - was recovered F/O 6071 Broadway on the street next to driver side rear door of vehicle. The item was handled and used on victim by suspect. Item to be forwarded to the Police laboratory for DNA Analysis and Latent Print Examination. MN2 (01) White Plastic Zip tie - was recovered F/O 6071 Broadway on the street adjacent to passenger side rear door of vehicle. The item was handled and used on victim by suspect. Item to be forwarded to the Police laboratory for DNA Analysis and Latent Print Examination. MN3 (01) White Plastic Zip tie - was recovered from Police Officer Fernandez, 049 precinct, at Montefiore Hospital. The item was handled and used on victim by suspect. Item to be forwarded to the Police laboratory for DNA Analysis and Latent Print Examination. MN4 (01) White Plastic Zip tie - was recovered from Police Officer Fernandez, 049 precinct, at Montefiore Hospital. The item was handled and used on victim by suspect. Item to be forwarded to the Police laboratory for DNA Analysis and Latent Print Examination.

conferral was conducted with Detective Revans assigned to the 49 Precinct Detective Squad. A preliminary investigation revealed that at approximately 2050 hours the victim and two customers were inside of the commercial store at the above location when two male blacks entered the establishment wearing bandanas covering their faces and displaying firearms. The unknown perpetrators then zip tied the two customers and placed them in the trunk of a vehicle parked at the store. The victim and the perpetrators then began to argue inside the establishment. Subsequently, the two customers were able to free themselves and fled the location while calling 911. As the responding officers arrived at the scene, the customers explained that the victim and his vehicle were no longer at the scene. The officers were able to utilize GPS technology to track the victim and his vehicle to 6071 Broadway within the confines of the 50 precinct. The victim was found to be in the rear passenger seat of a vehicle, vin # WBAYF8C59ED142075, with zip ties around his neck and wrists. The victim was unconscious and unresponsive on the scene. EMS personnel Acosta, Shield 4036, cut the zip ties on the victim at the scene. The victim was further removed to Montefiore Hospital pronounced dead at 0008 hours.

Stillwell Avenue between Rhinelander Avenue and Pelham Parkway South is a two-way street which traffic travels north and south. There is a parking lot on the east side of the street and single story commercial buildings on the west side of the street. There were vehicles parked along the east and west curbs. Surveillance cameras are located at 1631 Stillwell Avenue.

Broadway between west 251 street and Manhattan College Parkway is a two-way street which traffic travels north and south. There is a park, Van Cortlandt Park, on the east side of the street and a school, Horace Mann, on the west side of the street. There were vehicles parked along the east and west curbs. Surveillance cameras were not located at 6071 Broadway.

**Investigative Process (Summarize the steps taken to document and process the scene)**
A conferral was conducted with the 049 Precinct Detective Squad to ascertain the facts as known and the focus of the search. The scene at the two locations was documented in photographs. The scene was laser scanned utilizing the Leica 3D Laser Scanner #3. In addition, a body diagram sheet was prepared indicating the victim s injuries. Probative evidence was identified, documented and recovered. An attempt was made to process the silver BMW 750LI for Latent Prints using conventional black and white powder and feather brushes but due to unforeseen misting fog, CSU personnel was unable to process request.

The recovered evidence was turned over to Police Officer Tineo at the 49 Precinct Detective Squad and is to be vouchered and forwarded to its proper location.

**Evidence Summary (Summarize the evidence and explain its probative value to the case. Include info that may assist an examiner to further the investigation)**
MN1 (01) White Plastic Zip tie - was recovered F/O 6071 Broadway on the street next to driver side rear door of vehicle. The item was handled and used on victim by suspect. Item to be forwarded to the Police laboratory for DNA Analysis and Latent Print Examination.

MN2 (01) White Plastic Zip tie - was recovered F/O 6071 Broadway on the street adjacent to passenger side rear door of vehicle. The item was handled and used on victim by suspect. Item to be forwarded to the Police laboratory for DNA Analysis and Latent Print Examination.

MN3 (01) White Plastic Zip tie - was recovered from Police Officer Fernandez, 049 precinct, at Montefiore Hospital. The item was handled and used on victim by suspect. Item to be forwarded to the Police laboratory for DNA Analysis and Latent Print Examination.

MN4 (01) White Plastic Zip tie - was recovered from Police Officer Fernandez, 049 precinct, at Montefiore Hospital. The item was handled and used on victim by suspect. Item to be forwarded to the Police laboratory for DNA Analysis and Latent Print Examination.

| EVIDENCE | | | | | | |
|---|---|---|---|---|---|---|

**Criminalistics, DNA     Total Items Collected: 4**

| Voucher No | Voucher Desc | Qty | Finger Prints Recoverd | Caliber | Sent to Lab | Test Requested |
|---|---|---|---|---|---|---|
| Voucher No 2000581820 | Voucher Desc WHITE PLASTIC ZIP TIE | Qty 1 | Finger Prints Recoverd No | Caliber | Sent to Lab Yes | Test Requested 07. DNA - Analysis to identify the source of the biologi..., 08. Latent Finger/Palm Print - development |
| Voucher No 2000581820 | Voucher Desc WHITE PLASTIC ZIP TIE | Qty 1 | Finger Prints Recoverd No | Caliber | Sent to Lab Yes | Test Requested 07. DNA - Analysis to identify the source of the biologi..., 08. Latent Finger/Palm Print - development |
| Voucher | Voucher Desc | Qty | Finger | Caliber | Sent | Test Requested |

6A-1

| No 2000581820 | WHITE PLASTIC ZIP TIE | 1 | Prints Recoverd No | | to Lab Yes | 07. DNA - Analysis to identify the source of the biologi..., 08. Latent Finger/Palm Print - development |
|---|---|---|---|---|---|---|
| Voucher No 2000581820 | Voucher Desc WHITE PLASTIC ZIP TIE | Qty 1 | Finger Prints Recoverd No | Caliber | Sent to Lab Yes | Test Requested 07. DNA - Analysis to identify the source of the biologi..., 08. Latent Finger/Palm Print - development |

| Latent Prints | Total Prints: 0 | Finger Print Elimination: 0 | DNA Elimination: 0 |
|---|---|---|---|

| Total Number of Photographs Taken: 47 |
|---|

Thursday, February 16, 2017

6A-2

**REQUEST FOR LABORATORY
EXAMINATION REPORT-
FIRST SHEET**
PD 521-165 (Rev. 09-08)

REQUEST FOR LABORATORY EXAMINATION REPORT - SECOND SHEET(PD 521-165A)
MUST BE PREPARED WITH THIS REPORT. YOU MAY NEED TO PREPARE REQUEST FOR
LABORATORY EXAMINATION REPORT - THIRD SHEET(PD 521-165B)
Page _1_ of _2_

| Prop Clk Inv. No. | Date of Invoice | Date of This Report | Del. Case No. |
|---|---|---|---|
| 2000581820 | 09/21/2016 | 09/21/2016 | 1913 |

**Type of Evidence:** (You May Check More Than One Box)
[X] DNA   [ ] Firearms/Firearms Related   [X] Criminalistics   [ ] Other (Specify)

**Priority Designation:** [ ] Low Priority   [ ] Routine   [X] Priority   [ ] High Priority (Specify)

| Investigating Officer (Print Rank, Name) DT3 DAVID REVANS | Tax. No. | Command 259-49 DET SQUAD |
|---|---|---|
| Responding Investigator If Different (Print Rank, Name) DT3 DAVID REVANS | Tax. No. | Command 259-49 DET SQUAD |
| Arresting Officer (Print Rank, Name) | Tax. No. | Command |

| Investigating Officer's Email Address | Det. Supv's Email Address | Inv. Officer's Cmd Tel. No. | Inv. Officer's Team or RDOs |
|---|---|---|---|

| Medical Examiner No. N/A | Offenses(s) MURDER UNCLASSIFIED | | Complaint No. (Year-Pct.-No.) 2016-049-06266 |
|---|---|---|---|
| Name of Complainant/Victim ROBERT BISHUN, | Date of Birth | Date and Time of Occurrence 09/20/2016 22:14:00 | |
| Address of Occurrence 1631 STILLWELL AVENUE BRONX | | | Type of Premises STREET |

| ECT Run [ ] No. | Officer Collecting Evidence (Rank, Name Printed) POM MATTHEW NOFTSIER | Tax No. | Command 568-CRIME SCENE UNIT |
|---|---|---|---|
| CSU Run [X] No. 2016-578 | | | |

| No. of Persons Arrested: 0 | No. of Suspects. Unknown | LIST ALL ARRESTEES AND SUSPECTS BELOW. USE ADDITIONAL REQUEST FOR LABORATORY EXAMINATION REPORT - FIRST SHEET IF NECESSARY. |
|---|---|---|

| [ ]Suspect   Name | Date of Birth | Arrest No. | Pct. | NYSID No. |
|---|---|---|---|---|
| [ ]Arrestee | | | | |

**PHYSICAL CONTACT**

| Was There Physical Contact Between The Victim and the Suspect? [ ]Yes [ ]No [X]Unk | Was There Physical Contact Between The Victim and the Arrestee? [ ]Yes [ ]No [X]Unk |
|---|---|
| Was The Victim Bleeding? If Yes How Many? [ ]Yes [X]No [ ]Unk | Was The Suspect Bleeding? If Yes How Many? [ ]Yes [ ]No [X]Unk | Was The Arrestee Bleeding? If Yes How Many? [ ]Yes [ ]No [X]Unk |

List ALL Persons That May Have Been Bleeding Below. Use Additional Request For Laboratory Examination Report - First Sheet If Necessary.

| Full Name Of Person Bleeding | Date of Birth | [ ]Victim [ ]Suspect |
|---|---|---|
| | | [ ]Arrestee |

**DNA ELIMINATION SAMPLES**

| How Many Persons May Have Legitimate Access To The Evidence Including Victims? 1 | How Many Persons Provided Elimination Samples Including Victims? 0 | How Many Persons Refused To Provide a DNA Elimination Sample Including Victims? 0 |
|---|---|---|
| If DNA Elimination/Victim Samples Are Not Collected, Explain: OCME | | |

**DETAILS (See reverse side of this form for instructions to prepare "Details" section)**

Use Additional Request For Laboratory Examination Report - First Sheet If Necessary.

On September 21, 2016 at approximately 1230 hours Sergeant Nonnon assigned to the 49 Precinct Detective Squad requested that the Crime Scene Unit respond to I/O 1631 Stillwell Avenue and F/O 6071 Broadway to aid in a Homicide Investigation in which a male victim was found unconscious in the rear passenger seat of a parked vehicle with zip ties around the neck and wrists. The investigation is ongoing by the 49 Precinct Detective Squad. At approximately 0245 hours the undersigned along with Det. Matthew arrived at the scene of 1631 Stillwell Avenue. The scene was safeguarded by multiple uniformed Police Officers and secured with yellow crime scene tape. The address of 1631 Stillwell Avenue is a commercial establishment, Supreme Collision Corp, within the confines of the 49 Precinct. A conferral was conducted with Detective Revans assigned to the 49 Precinct Detective Squad. A preliminary investigation revealed that at approximately 2050 hours the victim and two customers were inside of the commercial store at the above location when two male blacks entered the establishment wearing bandanas covering their faces and displaying firearms. The unknown perpetrators then zip tied the two customers and placed them in the trunk of a vehicle parked at the store. The victim and the perpetrators then began to argue inside the establishment. Subsequently, the two customers were able to free themselves and fled the location while calling 911. As the responding officers arrived at the scene, the customers explained that the victim and his vehicle were no longer at the scene. The officers were able to utilize GPS technology to track the victim and his vehicle to 6071 Broadway within the confines of the 50 precinct. The victim was found to be in the rear passenger seat of a vehicle, vin # WBAYF8C59ED142075, with zip ties around his neck and wrists. The victim was unconscious and unresponsive on the scene. EMS personnel Acosta, Shield 4036, cut the zip ties on the victim at the scene. The victim was further removed to Montefiore Hospital pronounced dead at 0008 hours.

Stillwell Avenue between Rhinelander Avenue and Pelham Parkway South is a two-way street which traffic travels north and south. There is a parking lot on the east side of the street and single story commercial buildings on the west side of the street. There were vehicles parked along the east and west curbs. Surveillance cameras are located at 1631 Stillwell Avenue.

Broadway between west 251 street and Manhattan College Parkway is a two-way street which traffic travels north and south. There is a park, Van Cortland Park, on the east side of the street and a school, Horace Mann, on the west side of the street. There were vehicles parked along the east and west curbs. Surveillance cameras were not located at 6071 Broadway.

MN1 (01) White Plastic Zip tie - was recovered F/O 6071 Broadway on the street next to driver side rear door of vehicle. The item was handled and used on victim by suspect. Item to be forwarded to the Police laboratory for DNA Analysis and Latent Print Examination.
MN2 (01) White Plastic Zip tie - was recovered F/O 6071 Broadway on the street adjacent to passenger side rear door of vehicle. The item was handled and used on victim by suspect. Item to be forwarded to the Police laboratory for DNA Analysis and Latent Print Examination.
MN3 (01) White Plastic Zip tie - was recovered from Police Officer Fernandez, 049 precinct, at Montefiore Hospital. The item was handled and used on victim by suspect. Item to be forwarded to the Police laboratory for DNA Analysis and Latent Print Examination.
MN4 (01) White Plastic Zip tie - was recovered from Police Officer Fernandez, 049 precinct, at Montefiore Hospital. The item was handled and used on victim by suspect. Item to be forwarded to the Police laboratory for DNA Analysis and Latent Print Examination.

| Officer Preparing Report (Rank, Name Printed) POM MATTHEW NOFTSIER | Preparing Officer's Signature | Tax No. | Command 568-CRIME SCENE UNIT | | Date |
|---|---|---|---|---|---|
| Supervisor (Rank, Name Printed) ADRIENNE RODRIGUEZ | Supv. Signature | Tax No. | Command 568 | | Date 10/12/2016 |
| FOR LABORATORY USE ONLY | OCME-EU No. | | Police Laboratory No. | | |

Noftsier

3503-09

NOTE: Acceptance of this request by the laboratory does not constitute a contract to provide services. Requests for testing will be fulfilled based upon available resources, the need to meet investigative and/or legal requirements and laboratory policy.

**6B**

# NYPD CRIME SCENE UNIT

| CSU RUN# | DATE | PCT | CRIME |
|---|---|---|---|
| 10/5-8 | 09/21/10 | 43 pct | Homicide |

MN #1  White zip tie
Rec: F/O 6071 Broadway, on street

*Bag# 1600194216
MN #2  white zip tie
Rec: F/O 6071 Broadway on Street

*Bag# 1600194217
MN #3  White zip tie
*Rec: At Montefiore Hospital by P.O. Fernandez Tax 951736 43pct

*Bag# 1600194218
MN #4  White Zip tie
*Rec: At Montefiore Hospital by P.O. Fernandez Tax# 951736 43pct

Bag# 1600194270

6B-7

 

**CRIME SCENE UNIT**
**Evidence List**

| Case Number 2016-578 | UF61 Number 2016-049-06266 | Report Date 09/21/2016 | Activity Date 09/21/2016 | Activity Time 02:45 | Topic PCI: 2000581820 - ZIP TIES ( DNA & LATENTS ) |
|---|---|---|---|---|---|

**Evidence**

| Unique ID No. MN # 01 | Item Type Criminalistics , DNA | | Probative Value PROBATIVE | Caliber |
|---|---|---|---|---|
| Unique Item Number MN # 01 | Item Description WHITE PLASTIC ZIP TIE | | | |

| Specific Locations + Measurements F/O 6071 BROADWAY ON STREET | | | |
|---|---|---|---|

| Packaged In PAPER BAG | If Other | | Finger Prints Recovered No |
|---|---|---|---|

| Type of Bio Evid Skin Cells, | If Other | | Bio Bag No. 1600194216 |
|---|---|---|---|

| Item Processed In Field No | Process Type | If Other | |
|---|---|---|---|

| Received From CSU RECOVERED | | | |
|---|---|---|---|
| Property Clerk Invoice No. 2000581820 | CSU Voucher Name 2000581820 | Property Clerk Item No. 1 | Property Clerk Invoice Type DNA INVESTIGATORY |
| Property Clerk Invoice Qty 1 | Property Clerk Description WHITE PLASTIC ZIP TIE | | |
| Cash Value .00 | Peddler Seal No. | | SEC/NARCO Envelope No. |

| Test Requested 07. DNA - Analysis to identify the source of the biologi... | Specific Reason TO IDENTIFY UNKNOWN PERP WHO TIED VICTIM WITH ZIPTIE |
|---|---|
| Test Requested 08. Latent Finger/Palm Print - development | Specific Reason TO IDENTIFY UNKNOWN PERP WHO TIED VICTIM WITH ZIPTIE |
| Comparison Property Clerk Invoice No. | Comparison Property Clerk Item No. |

**Evidence**

| Unique ID No. MN # 02 | Item Type Criminalistics , DNA | | Probative Value PROBATIVE | Caliber |
|---|---|---|---|---|
| Unique Item Number MN# 02 | Item Description WHITE PLASTIC ZIP TIE | | | |

| Specific Locations + Measurements F/O 6071 BROADWAY ON STREET | | | |
|---|---|---|---|

| Packaged In PAPER BAG | If Other | | Finger Prints Recovered No |
|---|---|---|---|

| Type of Bio Evid Skin Cells, | If Other | | Bio Bag No. 1600194217 |
|---|---|---|---|

| Item Processed In Field No | Process Type | If Other | |
|---|---|---|---|

| Received From | | | |
|---|---|---|---|



| CSU RECOVERED | | | |
|---|---|---|---|
| Property Clerk Invoice No.<br>2000581820 | CSU Voucher Name<br>2000581820 | Property Clerk Item No.<br>2 | Property Clerk Invoice Type<br>DNA INVESTIGATORY |
| Property Clerk Invoice Qty<br>1 | Property Clerk Description<br>WHITE PLASTIC ZIP TIE | | |
| Cash Value<br>.00 | Peddler Seal No. | | SEC/NARCO Envelope No. |
| Test Requested<br>07. DNA - Analysis to identify the source of the biologi... | | Specific Reason<br>TO IDENTIFY UNKNOWN PERP WHO TIED VICTIM WITH ZIPTIE | |
| Test Requested<br>08. Latent Finger/Palm Print - development | | Specific Reason<br>TO IDENTIFY UNKNOWN PERP WHO TIED VICTIM WITH ZIPTIE | |
| Comparison Property Clerk Invoice No. | | Comparison Property Clerk Item No. | |

| Evidence | | | | |
|---|---|---|---|---|
| Unique ID No.<br>MN # 03 | Item Type<br>Criminalistics , DNA | | Probative Value<br>PROBATIVE | Caliber |
| Unique Item Number<br>MN # 03 | Item Description<br>WHITE ZIP TIE | | | |
| Specific Locations + Measurements<br>AT MONTAFIORE HOSPITAL FROM PO FERNANDEZ TAX # 951726 49 PCT | | | | |
| Packaged In<br>PAPER BAG | If Other | | Finger Prints Recovered<br>No | |
| Type of Bio Evid<br>Skin Cells, | If Other | | Bio Bag No.<br>1600194218 | |
| Item Processed In Field<br>No | Process Type | If Other | | |
| Received From | Tax ID<br>951726 | Name<br>MICHELLE FERNANDEZ | Rank<br>POF | Command<br>049 |
| Property Clerk Invoice No.<br>2000581820 | CSU Voucher Name<br>2000581820 | Property Clerk Item No.<br>3 | Property Clerk Invoice Type<br>DNA INVESTIGATORY | |
| Property Clerk Invoice Qty<br>1 | Property Clerk Description<br>WHITE PLASTIC ZIP TIE | | | |
| Cash Value<br>.00 | Peddler Seal No. | | SEC/NARCO Envelope No. | |
| Test Requested<br>07. DNA - Analysis to identify the source of the biologi... | | Specific Reason<br>TO IDENTIFY UNKNOWN PERP WHO TIED VICTIM WITH ZIPTIE | | |
| Test Requested<br>08. Latent Finger/Palm Print - development | | Specific Reason<br>TO IDENTIFY UNKNOWN PERP WHO TIED VICTIM WITH ZIPTIE | | |
| Comparison Property Clerk Invoice No. | | Comparison Property Clerk Item No. | | |

| Evidence | | | | |
|---|---|---|---|---|
| Unique ID No.<br>MN # 04 | Item Type<br>Criminalistics , DNA | | Probative Value<br>PROBATIVE | Caliber |
| Unique Item Number<br>MN # 04 | Item Description<br>WHITE ZIP TIE | | | |
| Specific Locations + Measurements<br>AT MONTEFIORE HOSPITAL BY PO FERNANDEZ TAX # ▮▮▮▮ 49 PCT | | | | |
| Packaged In | If Other | | Finger Prints Recovered | |

68-83

| | unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited. |

**Photo No:** 40
**Photo Type:** MIDRANGE
**Camera Direction:** SOUTHWEST
**Description:** TOWARDS MN#1
**Examination Quality:** No

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 Description



1474452551335_dsc_8264.jpg    Printable Version

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

**Photo No:** 41
**Photo Type:** MIDRANGE
**Camera Direction:** SOUTHEAST
**Description:** TOWARDS MN#2
**Examination Quality:** No

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 0 Description



1474452550391_dsc_8265.jpg    Printable Version

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

**Photo No:** 42
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** TOWARDS MN#1 W/SCALE
**Examination Quality:** No

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 1 Description




1474452549427_dsc_8266.jpg    Printable Version

This digital image is a confidential investigative record. Any unauthorized access, viewing, disclosure or dissemination of this image is strictly prohibited.

**Photo No:** 43
**Photo Type:** CLOSEUP
**Camera Direction:** NOT APPLICABLE
**Description:** TOWARDS MN#2 W/SCALE
**Examination Quality:** No

**Person**
**Last Name: First Name: Race: Sex: DOB: Age:**

**Item**
**Voucher: Item No:** 2 Description




1474452548392_dsc_8267.jpg    Printable Version

This digital image is a confidential investigative record. Any

6 B-4



NEW YORK CITY POLICE DEPARTMENT
POLICE LABORATORY
CRIMINALISTICS SECTION

**LABORATORY REPORT**

| | |
|---|---|
| LABORATORY # | 2016-085996 |
| LABORATORY REPORT # | 1 |
| COMPLAINT # | 2016-049-06266 |
| INVOICE # | 2000581820 |

INVOICED BY:   POM VLADIMIR DELGADO Tax#~~~~~~Command: 049
Precinct

DATE SUBMITTED:   09/22/2016

DATE ASSIGNED:   09/22/2016
DATE PREPARED:   09/23/2016

DEFENDANT(S):

TYPE OF ANALYSIS: LATENT PRINT DEVELOPMENT

## DESCRIPTION OF EVIDENCE

EVIDENCE PRESENT AS ITEMIZED ON INVOICE:   ☐ YES   ☒ NO   (SEE REMARKS)

| Invoice item # | Laboratory item # | Qty | Description |
|---|---|---|---|
| 1 | 1 | 1 | White, plastic, partial zip tie with possible blood |
| 2 | 2 | 1 | White, plastic, partial zip tie (missing locking head) with possible blood |
| 3 | 3 | 1 | White, plastic zip tie consisting of two attached pieces |
| 4 | 4 | 2 | Partial pieces of white plastic zip tie (one piece with locking head and one piece without) |

## RESULTS OF EXAMINATION/ANALYSIS

No latent prints/friction ridge detail suitable for capture/identification was observed on the following laboratory item #(s): 2, 3, 4.

No latent prints/friction ridge detail was observed on the following laboratory item #(s): 1.

## REMARKS

Possible DNA and/or hand-picked trace evidence was collected from the evidence listed on the above invoice and will be forwarded to the Evidence Control Section pending further disposition.  These items were invoiced under Laboratory Supplemental Invoice #(s) Z014293. DNA and/or serological examinations are conducted by the Department of Forensic Biology at the Office of Chief Medical Examiner.

Item # 1.1       One swab from textured side of zip tie
Item # 1.2       One swab of possible blood from locking head
Item # 2.1       One swab from textured side of zip tie
Item # 2.2       One swab of possible blood from textured part of zip tie
Item # 3.1       One swab from textured side of zip tie
Item # 4.1       One swab from textured side of zip tie

The evidence listed above was processed using one or more of the following methods: Visual, ALS, Cyanoacrylate and RAM.

Invoice 2000581820 states the quantity to be (1), found (2) pieces of zip tie.

The above listed evidence will be forwarded to the Evidence Control Section for triage by the Office of the Chief Medical Examiner Liaison Unit.

THIS REPORT DOES NOT CONSTITUTE THE ENTIRE CASE FILE.  THE CASE FILE MAY BE COMPRISED OF WORKSHEETS, IMAGES, ANALYTICAL DATA AND OTHER DOCUMENTS.
THE DEFINITIONS OF TERMS USED IN THIS REPORT CAN BE LOCATED AT THE NEW YORK STATE DIVISION OF CRIMINAL JUSTICE SERVICES WEBSITE:
HTTP://WWW.CRIMINALJUSTICE.NY.GOV/FORENSICLABREPORTSTANDARDS.HTM
THE RESULTS ARE THE OPINIONS / INTERPRETATIONS / CONCLUSIONS OF THE UNDERSIGNED.
I HEREBY CERTIFY THAT I TESTED/EXAMINED/ANALYZED THE ABOVE DESCRIBED ITEM(S) AND THAT THIS REPORT IS AN ORIGINAL REPORT MADE BY ME.  FALSE STATEMENTS
MADE HEREIN ARE PUNISHABLE AS A CLASS "A" MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE NEW YORK STATE PENAL LAW.

| CRIM III | Cristina Pires | _Cristina Pires_ | | 09/23/2016 | 09/23/2016 |
|---|---|---|---|---|---|
| RANK/TITLE | ANALYST NAME | ANALYST SIGNATURE | TAX # | DATE PREPARED | DATE ISSUED |

POLICE LABORATORY FORM 01 (REVISION # 16-01, DATE EFFECTIVE, 05/02/10, PAGE 1 OF 1, ISSUING AUTHORITY: DIRECTOR / DEPUTY DIRECTOR)

Page 1 of 1

Baumeister — 4/9/18                                    2 of 2
  rear driver window

~~spits to cop~~

— cop breaks the rear driver window — (W) yelling @
  cop to pop the lock several times, but the cars b/c car
  doesnt have this feature

— yell to another cop to break rear pass window, he does

— go through window, try to put Ayva b/w neck +
  zipties. he no space at all, zip the zipty thru ~~pass~~ vic's
  neck, zip too tight also artery (W) cumberbun in Ayva

— Ask for a knife, get one Ayva on (left side Ayva) +
  vic knife in slowly cut zip tie w/o hitting vic's
  artery, cutting own fingers @ the time

— leaning through window, feet off the ground

— finally zip the props, take pulse, feel chest +
  skin, could tell vic was dead — no pulse, body cold

— told officers to back away, b/c crime scene, ESU arrives

— told case was going to 49, @ other Vicectomy arrival, @ (W)
  left back to precinct, no more involvement

— believe vic's hands also ziptied behind his back

— think ESU used some tool to pop the door

6C-1



( Po Reilly 50 Pct. )

1115 C ocurs ~~#161~~

- Zip tied
(1) Each hand

    Rear cuffed

( (1) around the neck
JB cut ziptie
from neck
- feet were not bound )

Upon 1084, saw c/v in
rear seat (passenger).
Broke front passenger window
& tried to open doors. Could
not open doors. Broke rear
passenger window (Asp). JB
(Skinny Det) cut zip tie
around neck.

REILLY
3509-05

6C-2

# LPS IDENTIFICATION

CRIMINAL IDENTIFICATION ☐                    ELIMINATION IDENTIFICATION ☒

LATENT PRINT CASE #  __0348C__          YEAR __2016__          PAGE __1__     OF __1__

SUBJECT IDENTIFIED   John Baumeister          NYSID # OR OTHER INDENTIFIER  ▮▮▮▮▮

| FINGER IDENTIFIED | 6 | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| PALM IDENTIFIED | | | | | | | | |
| LIFT # | 1 | | | | | | | |
| PHOTO # | | | | | | | | |

EXAMINER _Det Edward Schnabrin_     TAX # ▮▮▮ ▮▮     DATE _9/29/16_

VERIFIER _Det R.L._     TAX # ▮▮▮     DATE _10/3/16_

TECHNICALLY REVIEWED
(CRIMINAL IDENTIFICATIONS) _____     TAX # _____     DATE _____

---

### FINGER/PALM LEGEND

RIGHT THUMB = 1     RIGHT INDEX = 2     RIGHT MIDDLE = 3     RIGHT RING = 4     RIGHT LITTLE = 5

LEFT THUMB = 6     LEFT INDEX = 7     LEFT MIDDLE = 8     LEFT RING = 9     LEFT LITTLE = 10

RIGHT PALM = R     LEFT PALM = L

---

ADDITIONAL INFORMATION:

LPS Identification
Approval Date: June 1, 2013
Approved By: Latent Print Section Director

Page 1 of 1
Revision Date: Jan 1, 2013
LPS-000 Ver...0



7A

## LABORATORY REPORT

NEW YORK CITY POLICE DEPARTMENT
POLICE LABORATORY
CRIMINALISTICS SECTION

| | |
|---|---|
| LABORATORY # | 2016-085996 |
| LABORATORY REPORT # | 3 |
| COMPLAINT # | 2016-049-06266 |
| INVOICE # | 2000582112 |

INVOICED BY:   POF MICHELLE FERNANDEZ Tax# ████ Command:
049 Precinct

DATE SUBMITTED:   09/22/2016

DEFENDANT(S):

DATE ASSIGNED:   09/26/2016
DATE PREPARED:   09/26/2016

TYPE OF ANALYSIS: LATENT PRINT DEVELOPMENT

DESCRIPTION OF EVIDENCE

EVIDENCE PRESENT AS ITEMIZED ON INVOICE:   [X] YES   [ ] NO  (SEE REMARKS)

| Invoice item # | Laboratory item # | Qty | Description |
|---|---|---|---|
| 1 | 7 | 1 | White plastic zip-tie consisting of two cut pieces, attached (1600194222) |
| 2 | 8 | 1 | White plastic zip-tie consisting of two cut pieces, attached (1600194223) |
| 3 | 9 | 1 | White plastic zip-tie consisting of two cut pieces, attached, with possible blood |
| 4 | 10 | 1 | White plastic zip-tie consisting of two cut pieces, attached (1600194225) |
| 5 | 11 | 1 | White plastic zip-tie consisting of two cut pieces, attached (1600194236) |
| 6 | 12 | 1 | White plastic zip-tie (1600194237) |
| 7 | 13 | 1 | White plastic zip-tie (1600194230) |
| 8 | 14 | 1 | White plastic zip-tie, missing locking head |

RESULTS OF EXAMINATION/ANALYSIS

Latent print(s) of potential value for further examination were developed on the laboratory item #(s) listed below. These print(s) were digitally captured and digitally processed. These digital images were made available to the Latent Print Section of this Department for further examination. Latent print(s) were recovered from the following:

Item # 12       Total # of prints: 1 (identified as CMP6) CMP6 on zip-tie.

No latent prints/friction ridge detail suitable for capture/identification was observed on the following laboratory item #(s): 7, 8, 9, 10, 11, 13, and 14.

SEP 27 2016

054DC 2016

THIS REPORT DOES NOT CONSTITUTE THE ENTIRE CASE FILE. THE CASE FILE MAY BE COMPRISED OF WORKSHEETS, IMAGES, ANALYTICAL DATA AND OTHER DOCUMENTS.
THE DEFINITIONS OF TERMS USED IN THIS REPORT CAN BE LOCATED AT THE NEW YORK STATE DIVISION OF CRIMINAL JUSTICE SERVICES WEBSITE:
HTTP://WWW.CRIMINALJUSTICE.NY.GOV/FORENSIC/ABRFPORTSTANDARDS.HTM
THE RESULTS ARE THE OPINIONS / INTERPRETATIONS / CONCLUSIONS OF THE UNDERSIGNED.
I HEREBY CERTIFY THAT I TESTED/EXAMINED/ANALYZED THE ABOVE DESCRIBED ITEM(S) AND THAT THIS REPORT IS AN ORIGINAL REPORT MADE BY ME. FALSE STATEMENTS
MADE HEREIN ARE PUNISHABLE AS A CLASS "A" MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE NEW YORK STATE PENAL LAW

| CRIM III | Cristina Pires | | | 09/26/2016 | 09/27/2016 |
|---|---|---|---|---|---|
| RANK/TITLE | ANALYST NAME | ANALYST SIGNATURE | TAX # | DATE PREPARED | DATE ISSUED |

POLICE LABORATORY FORM 01 (REVISION # 16-01, DATE EFFECTIVE: 05/02/16, PAGE 1 OF 1, ISSUING AUTHORITY: DIRECTOR / DEPUTY DIRECTOR)

7A-7

## LPS IDENTIFICATION

CRIMINAL IDENTIFICATION ☐         ELIMINATION IDENTIFICATION ☒

LATENT PRINT CASE # 0348C          YEAR 2016          PAGE 1      OF 1

SUBJECT IDENTIFIED Srikishun, Mark A          NYSID # OR OTHER INDENTIFIER

| FINGER IDENTIFIED | 7 | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| PALM IDENTIFIED | | | | | | | | |
| LIFT # | | | | | | | | |
| PHOTO # | CMP4A | | | | | | | |

EXAMINER _Det. Robard Charatia_   TAX # ▓▓▓   DATE 9/24/16

VERIFIER _Det. A.B._   TAX # ▓▓▓   DATE 9/24/16

TECHNICALLY REVIEWED
(CRIMINAL IDENTIFICATIONS) _____   TAX # _____   DATE _____

---

### FINGER/PALM LEGEND

RIGHT THUMB = 1    RIGHT INDEX = 2    RIGHT MIDDLE = 3    RIGHT RING = 4    RIGHT LITTLE= 5

LEFT THUMB = 6    LEFT INDEX = 7    LEFT MIDDLE = 8    LEFT RING = 9    LEFT LITTLE = 10

RIGHT PALM = R    LEFT PALM = L

---

ADDITIONAL INFORMATION:



FD # 7   Physical Photo   CMP4A

Det. B2   5/24/16

7A4

# LPS IDENTIFICATION

CRIMINAL IDENTIFICATION ☐          ELIMINATION IDENTIFICATION ☒

LATENT PRINT CASE # __0348C__          YEAR __2016__          PAGE __1__    OF __1__

SUBJECT IDENTIFIED          NYSID # OR OTHER INDENTIFIER

| FINGER IDENTIFIED | #6 | | | | | | | |
| PALM IDENTIFIED | | | | | | | | |
| LIFT # | | | | | | | | |
| PHOTO # | Cmr6 | | | | | | | |

EXAMINER __N/A__          TAX # _____          DATE _____

VERIFIER __Dei Dz__          TAX # _____          DATE __9/27/16__

TECHNICALLY REVIEWED
(CRIMINAL IDENTIFICATIONS) __N/A__          TAX # _____          DATE _____

---

## FINGER/PALM LEGEND

RIGHT THUMB = 1    RIGHT INDEX = 2    RIGHT MIDDLE = 3    RIGHT RING = 4    RIGHT LITTLE= 5

LEFT THUMB = 6    LEFT INDEX = 7    LEFT MIDDLE = 8    LEFT RING = 9    LEFT LITTLE = 10

RIGHT PALM = R    LEFT PALM = L

---

ADDITIONAL INFORMATION: